UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-MC-24887-PAS

IN RE APPLICATION OF
HORNBEAM CORPORATION

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782
_____/

**PROPOSED INTERVENORS' MOTION TO STAY PROCEEDINGS
PENDING APPEAL TO THE ELEVENTH CIRCUIT COURT OF
APPEALS AND ACCOMPANYING MEMORANDUM OF LAW IN SUPPORT**

Proposed intervenors Panikos Symeou ("Symeou") and Halliwel Assets, Inc. ("Halliwel") (collectively, "Movants") move to stay this action and the February 11, 2015 Order (the "Order"), (ECF 12), which granted the 28 U.S.C. §1782 application of Hornbeam Corp. ("Hornbeam") (the "Application"), (ECF 1), and authorized subpoenas on 14 companies and one individual, pending: (1) resolution of a potentially dispositive appeal before the Eleventh Circuit Court of Appeals involving Movants and Hornbeam; and (2) Hornbeam paying an $846,526 British Virgin Islands ("BVI") judgment which is required before a BVI court will permit it to prosecute new BVI proceedings, the basis for its Application. This motion should be granted for the reasons set forth in the Memorandum of Law below. All subpoena recipients agree to a stay of this action.

**MEMORANDUM OF LAW**

Applicant Hornbeam has filed four §1782 applications across the country in purported support of a new action it purports to file in the BVI, where its claims already were dismissed with prejudice with a costs judgment entered. Movants have appealed the denial of a motion to vacate a §1782 order entered in the Northern District of Alabama to the Eleventh Circuit Court of Appeals (the "Eleventh Circuit Appeal"). There, Movants have raised the same issues that they will raise in seeking to vacate the Order here, including that the future BVI actions are not reasonably contemplated for purposes of §1782 because Hornbeam has failed to pay the $846,526 BVI

1

judgment. Notably, the Eleventh Circuit stayed all § 1782 discovery in the Northern District of Alabama pending the Appeal.

The limited stay here will conserve judicial and party resources as the Eleventh Circuit Appeal involves identical parties and likely will be dispositive of, or otherwise moot, issues which will be litigated in the instant action. The appeal is briefed and was scheduled for oral argument during the week of June 6, 2016, but will now be reassigned at a later date.[1] The requested stay, which will be of limited duration, will not prejudice Hornbeam, which did not serve the subpoenas until March 3, 2016, almost thirteen months after entry of the Order, and which has not paid the $846,526 BVI judgment which it must pay before a BVI court will permit it to prosecute the action for which it claims it needs the instant §1782 discovery.

## PRELIMINARY STATEMENT

In August 2014, Hornbeam, a shareholder of Movant Halliwel, a BVI company, filed "unfair prejudice" (shareholder abuse) claims against Movants and Marigold Trust Asset Management ("Marigold") in the BVI related to the management of Halliwel's wholly owned subsidiary, Warren Steel Holdings, LLC ("Warren Steel"), a Delaware company that owns a since-closed steel plant in Warren, Ohio. Hornbeam's *ex parte* Memorandum of Law In Support of Its Application, ("Memorandum") (ECF 4), failed to disclose, *inter alia,* that: (1) in October 2014, its BVI proceedings were dismissed as "an abuse"; (2) in December 2014, the BVI court ordered Hornbeam to pay $846,526 in costs and attorneys' fees by February 2, 2015; and (3) Hornbeam *must* pay the still unpaid BVI judgment before it can prosecute new BVI proceedings on these issues.

---

[1] The Eleventh Circuit Appeal is styled *Halliwel Assets, Inc., et al v. Bracha Foundation*, Case No, 15-14913. On April 5, 2016, the Eleventh Circuit issued a notice removing the case from Calendar Number 22, noting it would be reassigned at a later date. We will advise the Court when the date is set.

Despite this BVI decision, beginning in December 2014, Hornbeam and related party Bracha Foundation ("Bracha") filed *ex parte* applications pursuant to 28 U.S.C. § 1782 in this and four other federal districts across the country, to obtain discovery purportedly to support new "unfair prejudice" claims in the BVI.   Yet, belying the notion that Hornbeam intended to sue in the BVI where it would be required to pay the BVI judgment, in June 2015, Bracha and its purported beneficiary Vadim Shulman ("Shulman") filed a suit that Hornbeam later joined in Ohio state court (the "Ohio Action") which asserted the *same* claims (under Ohio labels) for the *same* damages against the *same* defendants that Bracha and Hornbeam told this and four other federal district courts would be brought in the BVI.  On October 22, 2015, the Ohio trial court dismissed these claims.  On November 23, 2015, Hornbeam appealed (the "Ohio Appeal").  Oral argument is scheduled for May 18, 2016.

Meanwhile, in September 2015, in the midst of the Ohio Action, Bracha served a subpoena on Regions Bank in Alabama to obtain, *inter alia,* Warren Steel's bank records which had been authorized by an Alabama federal court on May 9, 2015, based on a §1782 application filed on May 1, 2015 that had been concealed from Movants.  In October 2015, the Alabama court permitted Movants to intervene and substantially narrowed the discovery but did not vacate its order allowing the discovery.   In November 2015, Movants appealed, and the Eleventh Circuit Court of Appeals stayed discovery pending appeal.  Hornbeam later obtained an order from expediting the Eleventh Circuit Appeal.  As noted, oral argument is scheduled for the week of June 6, 2016.

 Hornbeam has refused Movants' request to stay this proceeding pending resolution of the Eleventh Circuit Appeal and payment of the BVI judgment, necessitating this motion, which should be granted:

*First*, this action should be stayed pending the Eleventh Circuit Appeal.  Movants and

3

Hornbeam are parties to the Eleventh Circuit Appeal, and the Eleventh Circuit's decision may be dispositive of or otherwise moot this proceeding or issues that will need to be litigated here. A stay will promote judicial economy and prevent unnecessary expenditure of resources by the parties and the fifteen subpoena recipients.

*Second*, this action should be stayed until Hornbeam pays the $846,526 BVI judgment which a BVI court would require before permitting Hornbeam to prosecute new BVI proceedings. It would be unfair to subject Movants and the 13 subpoena recipients to the time, effort, and expense of discovery for Hornbeam to purportedly use to sue in the BVI, until Hornbeam pays the BVI judgment -- which is entirely within Hornbeam's control and need not implicate any delay whatsoever.

*Third*, a stay will not prejudice Hornbeam because the Eleventh Circuit stayed the Alabama discovery, which Hornbeam has represented is necessary before filing the same new BVI proceedings that underlie this §1782 discovery action. In any case, Hornbeam cannot claim prejudice where it waited almost thirteen months to serve the subpoenas authorized in February 2015. In addition, the alleged "reasonably contemplated" litigation by Shulman, or "one of his entities to which he is the ultimate beneficial owner" in jurisdictions "currently unknown," referenced in the Memorandum, (ECF 4 at 1-2), does not alter the analysis because Hornbeam lacks standing to seek discovery for Shulman or his entities, such as Bracha, who should file their own §1782 applications if they wish to bring claims, which Movants will oppose in due course.[2]

---

[2] *See RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 751 (2d Cir. 2013) (affirming denial of a §1782 application because the applicant "ha[d] not shown that it enjoy[ed] significant participation rights, but instead that its sister corporations d[id]."); *Fortress Inv. Grp.*, 2014 U.S. Dist. LEXIS 95578, *7 (S.D.N.Y. July 9, 2014) (denying discovery) ("[P]etitioners are not interested. . . . [because they] do not have any existing role in those proceedings and have failed to demonstrate that they have a right to submit evidence to the foreign tribunals in question.")

4

## RELEVANT FACTS AND BACKGROUND[3]

In 2001, entities of Ukrainian Shulman purchased a closed steel factory in Warren, Ohio (the "Plant"). Shulman Dec. ¶ 12-15, ECF 4-1 at 6. In November 2007, ownership of the Plant was transferred to Warren Steel, a Delaware limited liability company. Shulman Dec. ¶ 14-15, ECF 4-1 at 6. In April 2008, Warren Steel's ownership was transferred to Halliwel, a BVI company. Halliwel is Warren Steel's sole member. Shulman Dec. ¶21, ECF 4-1 at 7. Halliwel's three equal registered shareholders are Hornbeam, a Panamanian company now in dissolution (for Bracha, a Lichtenstein trust, and/or Shulman, its beneficiary), Symeou, a Cyprus attorney (for Ukrainian Igor Kolomoisky), and Marigold, a Jersey, Channel Islands trust (for Ukrainian Gennady Bogolubov). Campanile Dec. ¶61, ECF 4-2. Symeou is Halliwel's sole director. Campanile Dec. ¶59, ECF 4-2.

### A.   Operation of the Plant

In 2006, a Kolomoisky-controlled entity opened a $90 million line of credit for the benefit of Warren Steel. Shulman Dec. ¶ 16-17, ECF 4-1 at 6-7. In 2007, Mordecai Korf ("Korf"), a Florida resident, was appointed president of Warren Steel. Korf Aff. ¶1, ECF 4-4 at 41. From 2008, companies associated with Kolomoisky, Bogolubov and/or Korf provided over $106 million of additional financing. Campanile Dec. ¶ 9-10, ECF 4-2. Shulman knew of this and never complained. Shulman's consultants were permitted to review Warren Steel's books and records in 2012, 2013 and 2014, and were provided over 20,000 pages of detailed backup in 2014. Shulman Aff. ¶19, ECF 4-3 at 44; Campanile Dec. ¶79-88, 101, ECF 4-2.

### B.   The 2014 Loans

Due to deteriorating finances, the Plant closed in March 2014. Korf oversaw negotiations

---

[3] "**Ex.** []" are exhibits to the Bruce S. Marks Declaration, "Ex. N-[]" are exhibits to the BVI legal expert Robert Nader Declaration, and "Ex. W-[]" are exhibits to the BVI legal expert Andrew Willins Declaration.

5

to restart the Plant. Twenty-five million dollars of new financing was required. Once again, companies related to Kolomoisky, Bogolubov, and/or Korf provided the new financing and prior loans because no third party would lend. Korf Aff. ¶5.4, ECF 4-4 at 43. Symeou approved new financing as Halliwel's sole director on August 1, 2014. Korf Aff. ¶6, 6.1 ECF 4-4 at 46; Symeou Aff. ¶8, ECF 4-4 at 36. Although not legally required, it was determined that Halliwel's shareholders should approve the new financing through an extraordinary general meeting ("EGM"). Shulman was notified of the EGM on August 1, 2015. His agents requested that it be postponed several times. Campanile Dec. ¶100, 104, ECF 4-2.

## HORNBEAM'S FAILED BVI PROCEEDINGS

On August 29, 2014, Hornbeam filed an *ex parte* application to enjoin the EGM. An injunction was granted and continued to October 13, 2014. On September 15, 2014, Hornbeam filed its statement of claims for "unfair prejudice" under §184I of the BVI Business Companies Act, 2004 (the "BVI Act"). Claim, **Ex.** 10. On October 10, 2014, Hornbeam filed applications to appoint a provisional liquidator and to liquidate Halliwel. Fay Dec. ¶8f-h, ECF 4-1 at 14. Contrary to the Memorandum, ECF 4 at 9, Hornbeam did not withdraw the BVI proceedings because of "inadequate disclosure." At the October 13, 2014, hearing, Hornbeam abandoned its injunction, and the BVI court rejected the provisional liquidator application *on the merits*, holding that:

> ***. . . this is an abuse of winding up procedure designed to supplant the control, which the majority shareholders are currently exercising over this company's affairs***, that's my view. And ***I don't think that's a legitimate use of the Court's equitable jurisdiction to wind up companies which are in distress.***

Transcript, pp.172-73, **Ex.** 1 (emphasis added).

By orders dated November 4, 2014, the BVI court memorialized its oral decisions dismissing the injunction application, §184I statement of claim, and provisional liquidator application. BVI Orders, **Ex.** 2. By order dated November 27, 2014, the liquidator application was withdrawn. BVI Order, **Ex.** 3. On December 18, 2015, the BVI court ordered Hornbeam to

6

pay $846,526 in costs and attorneys' fees to Halliwel, Symeou, and Marigold by February 2, 2015. BVI Judgment, **Ex.** 4.

## BVI EXECUTION PROCEEDINGS

In December 2014, Hornbeam purported to transfer its Halliwel shares to Bracha (even though Hornbeam remained Halliwel's registered shareholder), and filed for dissolution in Panama. Dissolution, **Ex.** 30. In March 2015, Halliwel, Symeou, and Marigold brought execution proceedings to enforce the $846,526 judgment against Hornbeam's Halliwel shares. On August 14, 2015, the BVI court placed a provisional charge (*i.e.*, lien) on them. Bracha intervened. Bracha and Hornbeam served objections contesting the provisional charge. If their objections are denied, the BVI court will put Hornbeam's shares to sale. If Hornbeam ceases to be a registered shareholder of Halliwel, it will no longer have standing to bring §184I claims. Nader Dec. ¶¶42-43.

## HORNBEAM'S CONCEALED §1782 PROCEEDINGS

Beginning in December 2014, despite purporting to transfer its shares, Hornbeam filed applications pursuant to 28 U.S.C. §1782 in Delaware, Florida, New York, and Ohio purportedly to obtain discovery "for use" in future proceedings in the BVI against Halliwel, Symeou, Marigold, Kolomoisky, and Bogolubov. DE, NY, Ohio Applications, **Ex.** 22, 23, 5; Del, NY, Ohio Orders, **Exs.** 6, 8, 11. Hornbeam did not serve its applications and the orders granting them on the parties with which it had been litigating. Their existence was discovered only by happenstance by Attorney Bruce S. Marks in May 2015. Marks Dec. ¶ 4.

**New York**: On June 8, 2015, in response to a letter from Symeou's counsel, Hornbeam's attorney (James H. Power) disclosed that subpoenas had been served secretly and discovery obtained from numerous banks in New York, although subpoenas authorized in other districts had not been served. Power Letter, **Ex.** 12. On July 17, 2015, Symeou moved to intervene and vacate

the §1782 order in the New York court. Marks Dec. ¶6. On September 17, 2015, the New York court found that Hornbeam had violated Rule 45 by secretly serving the subpoenas and receiving discovery without notice, but did not vacate the Order. NY Opinion at 9, 12, **Ex**. 9. No appeal has been taken because Symeou's Rule 60(b) motion for relief from the September 17, 2015 order is pending. Marks Dec. ¶6.

**Ohio:** On January 6, 2015, the Ohio court granted Hornbeam's *ex parte* application. Order, **Ex.** 6. Hornbeam did not serve the authorized subpoenas on Warren Steel until February and March 2016. Marks Dec. ¶12. Hornbeam has not served the other authorized subpoenas. Marks Dec. ¶13. On March 17, 2016, the Court granted Movants' unopposed motion to intervene. On March 28, 2016, Movants moved to stay the Ohio proceedings pending resolution of the Ohio Appeal and payment of the BVI judgment. Ohio Stay Motion, **Ex**. 31. Movants also moved to vacate the Ohio order. Ohio Motion to Vacate, **Ex**. 32.

**Delaware:** On May 4, 2015, the Delaware court granted Hornbeam's *ex parte* application. Order, **Ex.** 6. To Movants' knowledge, Hornbeam has not served the authorized subpoenas. Marks Dec.¶15.

**THE OHIO ACTION**

On June 15, 2015, Bracha and Shulman (alleged beneficiaries of Hornbeam's interest in Halliwel) filed suit against Halliwel, Symeou, Warren Steel, Korf, Bogolubov, and Kolomoisky in Ohio state court, using information obtained from the New York §1782 proceeding.[4] Bracha and Shulman alleged the *same* shareholder abuse claims against the *same* defendants for the *same* damages that their *five* §1782 applications said would be filed in the BVI. *See* Complaint, **Ex.** 13.

---

[4] *See* Bracha/Shulman attorney Campanile Ohio Aff. dated June 11, 2015 at 164 ("other than the existence of Warren Steel bank accounts not previously identified by Symeou no information whatsoever received [form the New York §172 discovery] will be used in this [Ohio] Proceeding in support of the accounting and injunction.") **Ex.** 20.

8

Bracha and Shulman amended their complaint to add Hornbeam as a plaintiff, *see* Amended Complaint, **Ex.** 17, and Hornbeam filed an identical companion complaint. *See* Hornbeam Complaint, **Ex**. 18.

On October 22, 2015, the Ohio Court dismissed the cases (the "Ohio Decision"), **Ex.** 28, concluding that the "internal affairs doctrine" required dismissal of all claims. The Ohio Court found that "[u]nder the internal affairs doctrine, the law of the jurisdiction in which the corporation was incorporated governs whether a claim is 'derivative' or 'direct.'" Ohio Decision, at 6. The Ohio Court applied BVI law and found Bracha and Shulman lacked standing to sue under BVI law because they were not registered shareholders of Halliwel, affirming the earlier Magistrate Judge's decision, **Ex**. 14. Ohio Decision at 3. The Ohio Court then found the claims to be derivative in nature under BVI law because they sought damages to Warren Steel for alleged self-dealing. The Ohio Court observed that, under BVI law, a derivative claim may be commenced only after obtaining the BVI High Court's pre-approval. Alternatively, to the extent the allegations could be considered direct "unfair prejudice" claims under BVI law, its laws requires that they be brought in the BVI High Court. Ohio Decision, at 6-8. The Ohio Court dismissed the damages claims because the plaintiffs had not obtained the BVI Court's permission to bring the derivative action, and therefore lacked standing, or had brought them in the wrong court. *Id*. at 8. The Ohio Court also dismissed for *forum non conveniens* to the BVI. *Id.* at 12-14. Hornbeam appealed, and oral argument is scheduled for May 18, 2016. Marks Dec. ¶15.

## BRACHA'S ALABAMA §1782 PROCEEDING

On May 1, 2015, Bracha filed an *ex parte* application to serve a subpoena on Regions Bank to obtain discovery of bank records of Warren Steel and records related to the instant subpoena recipients. Ala. Application, **Ex.** 24. The court granted it on May 9, 2015. Order, **Ex**. 25. On September 8, 2015, Bracha's Alabama counsel served a copy of the subpoena on Ohio counsel for

9

Halliwel and Symeou. Letter, **Ex.** 19. This was the first disclosure of the Alabama action to Movants.[5] After Halliwel and Symeou intervened and moved to vacate; Hornbeam intervened as well and adopted Bracha's application, recognizing Bracha lacked standing to sue in the BVI based on the Ohio Magistrate's Decision, **Ex.** 14 (which the Ohio Court later adopted in full). The Alabama court found that Hornbeam "would first have to pay the large BVI cost judgment" before proceeding there, but noted that because of "the extraordinary wealth of Shulman" the judgment could be paid. *Id*. at *11. The Alabama court substantially limited the authorized discovery to bank records of Warren Steel only, but did not vacate the order. Ala. Opinion at 10, **Ex**. 26.

After Movants appealed, the Eleventh Circuit stayed the order authorizing discovery, pending appeal. Stay Order, **Ex.** 27. At Hornbeam's request, the Eleventh Circuit expedited consideration of the appeal and oral argument is scheduled for the week of June 6, 2016. Marks Dec. ¶9. The discovery stay remains in effect. The Alabama Appeal includes arguments that the order should have been vacated and §1782 application denied because (1) future BVI proceedings are not within reasonable contemplation— in part because the BVI judgment remains unpaid; (2) §1782 and the Federal Rules of Civil Procedure do not permit the type of broad pre-filing discovery that the Alabama court permitted, and (3) the internal affairs doctrine and international comity preclude such discovery. *See* Alabama Opening Brief, **Ex.** 33. Movants will advance similar arguments in their anticipated motion to vacate the Order and deny the Application.

## THE INSTANT §1782 PROCEEDING

In December 2014, along with its other applications, Hornbeam filed its *ex parte* application in this Court to obtain discovery ostensibly for use in future "unfair prejudice"

---

[5] In July 2015, Attorney Marks asked Hornbeam's attorney (Power) whether there were "any other §1782 applications [other than New York, Alabama, and Ohio] which Hornbeam (or any related entity such as Bracha Foundation or Vadim Shulman) has filed … and any orders obtained pursuant to such applications." Letter, **Ex.** 15. Attorney Power's response concealed the Alabama action's existence. Email, **Ex.** 21.

10

litigation in the BVI against, *inter alia,* Movants, Marigold, Kolomoisky, and Bogolubov. *See* ECF 4. An *ex parte* hearing was held on February 10, 2015, but the court reporter refuses to provide the transcript to Movants because the hearing was deemed sealed and the Movants are not yet parties. Thus, Movants are not aware of what Hornbeam told the Court. The Court granted Hornbeam's application on February 11, 2015, authorizing it to serve subpoenas on fifteen persons and entities. *See* ECF 12.

Hornbeam did not serve the subpoenas until March 3, 2016 – almost thirteen months later, Ex. 34. The 13 served document subpoenas seek a vast number of documents, most without any time limitation, and the one that is "limited" in time seeks a decade's worth of documents from January 1, 2006 to date, including communications, corporate, financial and accounting records concerning Warren Steel. The 13 served deposition subpoenas seek depositions of Korf and Rule 30(b)(6) designees of 12 entities on a broad array of topics, from January 1, 2006 to date, including:

1. The subpoena recipient's corporate structure;

2. The subpoena recipient's financial records concerning Warren Steel;

3. The subpoena recipient's business transactions with Warren Steel, including the source of each loan's origination and the account from which each loan was made;

4. Warren Steel's document retention policies; and

5. The subpoena recipient's communications and relationships with 12 "Related Party

11

Lenders," [6] 33 "Related Entities," [7] and 12 "Related Individuals." [8]

## ARGUMENT

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936). *See Advanced Bodycare Solutions, LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1241 (11th Cir. 2008) ("[D]istrict courts have inherent, discretionary authority to issue stays in many circumstances").[9]  As this Court has explained, "[t]he broad authority to grant a stay extends to 28 U.S.C. § 1782

---

[6] The 12 Related Party Lenders are: Divot Enterprises Limited; 5251 36th Street LLC; CC Metal and Alloys LLC; Felman Trading, Inc.; Mordechai Korf, a/k/a Motti Korf; Optima Acquisitions, LLC; Optima Fixed Income LLC; Optima Group LLC; Optima International of Miami, Inc.; Optima Ventures, LLC; Querella Holdings Limited; and Felman Production, LLC.

[7] The 33 Related Entities are: Kentucky Electric Steel; Felman Trading Inc.; Felman Production Inc.; Raytrans Management LLC; CC Metals & Alloys LLC; Optima Ventures LLC; Optima Acquisitions LLC; Optima International of Miami, Inc.; Optima Group LLC; Optima Fixed Income LLC; Querella Holdings Limited; Optima Industrial Management LLC; Optima Highland LLC; Georgian American Alloys Inc.; Optima Specialty Steel, Inc.; Divot Enterprises Limited; Marigold Trust Company Limited; Divot Enterprises Limited; 5251 36th Street LLC; Hornbeam Corporation; Tectum Trust Management Establishment; Instrad Limited; Plama Limited; Bracha Foundation; Marigold Trust Company Limited; Divot Enterprises Limited; Intertrading a/k/a ZAO Privat Intertrading; Privat Group; Haftseek Investments Ltd.; GM Georgian Manganese Holdings Ltd.; Georgian Manganese, LLC; Optima Industrial Management, LLC; and Vartsikhe 2005, LLC.

[8]  The 12 Related Individuals are: Vadim Shulman; Verena Ernst; Ronny Pifko; Fabrizio Campanile; Neophistos Savvides; Mordechai Korf; Panikos Symeou; Artemis Mildoni; Christou Thanos; Timur Novikov; Igor Kolomoisky; and Genady Bogolubov.

[9]  *Accord Velarde v. HSBC Private Bank Int'l*, No. 13-22031-CIV, 2013 WL 5534305, at *7 (S.D. Fla. Oct. 7, 2013) ("A district court is empowered to stay its own proceedings."); *Republic of Venez. v. Philip Morris Cos., Inc.*, No. 99-0586-Civ, 1999 WL 33911677, at *1 (S.D. Fla. April 28, 1999) (court's discretion to stay its proceedings "is derived from and incidental to a court's inherent power to control the disposition of cases on its docket and ensure a 'fair and efficient' adjudication of matters.")

proceedings." *In re Alves Braga*, 789 F. Supp. 2d 1294, 1307-08 (S.D. Fla. 2011) (citations omitted); *accord In re Noboa*, Misc. Nos. M18-302, M19-111, 1995 WL 581713, at *3 (S.D.N.Y. Oct. 4, 1995) (staying the "taking of . . . depositions" under § 1782).

"A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." *Ortega Trujillo v. Conover & Co. Comms., Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). As this Court recently recognized, "[s]tays of proceedings can also promote judicial economy, reduce confusion and prejudice, and prevent possibly inconsistent resolutions." *Lopez v. Miami-Dade Cnty.*, No. 15-CIV-22943, 2015 WL 7202905, at *1 (S.D. Fla. Nov. 6, 2015). In assessing the propriety of a stay, courts look at various factors depending upon the reason for the stay.

"Stays may be used to further the foundational principle of avoiding duplicative litigation." *Campbell v. Citibank, NA*, 2014 U.S. Dist. LEXIS 92540 (N.D. Ohio July 8, 2014) (granting stay, citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1088 (6th Cir. 1996)). As *Am Med.* court stated, "[t]he waste of judicial resources due to duplicative proceedings is plain and not correctable on appeal." *Id.* at 1088. Stays are also appropriate based on "the potentiality of another case having a dispositive effect on the case to be stayed" and implicate "the judicial economy to be saved by waiting on a dispositive decision, the public welfare, and the hardship/prejudice to the party opposing the stay, given its duration." *Schartel v. OneSource Tech., LLC*, 2015 U.S. Dist. LEXIS 155967 (N.D. Ohio Nov. 17, 2015) (granting stay). This Court often has granted stays of §1782 proceedings, considering "(1) international comity; (2) fairness to litigants; and (3) judicial efficiency." *In re Pinchuk*, 2014 U.S. Dist. LEXIS 43686 (S.D. Fla. Mar. 31, 2014) (stay pending rulings in Cyprus proceedings) *citing In re Braga,* 789 F. Supp. 2d at 1307-08 (stay pending resolution of Brazil and Cayman Islands proceedings).

This Court should stay this proceeding pending resolution of the Eleventh Circuit Appeal,

13

and, further, until Hornbeam pays the $846,526 BVI judgment.

I. **THE PROCEEDING AND ORDER SHOULD BE STAYED PENDING THE ELEVENTH CIRCUIT APPEAL**

A. **The Eleventh Circuit Appeal May Have a Dispositive Effect on This Action**

Stays may be granted when the result of another action may be "directly relevant" to the pending action. *See Schartel*, *supra,* 2015 U.S. Dist. LEXIS 155967, *4 (granting stay, applying "directly relevant" standard). When a decision in another case "has the potential to be completely dispositive, [this] factor weighs quite heavily in favor of a stay." *Michael v. Ghee,* 325 F.Supp.2d 829, 832 (N.D. Ohio 2004).

In light of the Eleventh Circuit Appeal, which has been expedited and scheduled for oral argument in June 2016, a stay will promote judicial economy, fairness, and avoid potentially inconsistent results because dispositive issues in this case— whether Hornbeam reasonably contemplates future proceedings in the BVI, whether it is entitled to the broad pre-filing discovery it seeks under § 1782 and the Federal Rules of Civil Procedure (especially when it was used without permission in the Ohio domestic proceeding), and whether the internal affairs doctrine or comity considerations limit the Court's exercise of jurisdiction— are before the Eleventh Circuit. The decision on the first issue may control the outcome here, since it would determine whether §1782 even is available to Hornbeam. If Hornbeam prevails on that issue, the decision on the second and third issues likely would provide guidance to this Court as to the appropriate scope of the §1782 discovery that Hornbeam seeks and the Court's jurisdiction to entertain the Application.

Importantly, when the Eleventh Circuit evaluated Halliwel's motion for a stay pending the Eleventh Circuit Appeal, it considered "(1) whether the stay applicant . . . made a strong showing that he is likely to succeed on the merits; (2) whether the applicant [would] be irreparably injured absent a stay; (3) whether issuance of the stay [would] substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418,

432 (2009). By granting the motion to stay, the Eleventh Circuit appears to have concluded that Movants likely were to succeed on the merits. Thus, it is reasonable to believe that the Eleventh Circuit Appeal may be dispositive of, or at least greatly affect, this §1782 action.

### B. Judicial Economy and Efficiency Favor A Stay

Judicial economy and efficiency both favor a stay because if the Eleventh Circuit rules in Movants' favor, as explained above, this may "negate the need for this Court to delve into the vast majority of the legal issues presented in those filings. It makes little sense to undertake the herculean task of plodding through the motions when one decision … could invalidate the entire case." *Michael*, 325 F.Supp.2d at 833. As in *Michael,* "this factor weighs heavily in favor of a stay." *Id.* Even if the Eleventh Circuit fails to rule in Movants' favor, it may be dispositive of the same issues here. Either way, it makes little sense for this Court to address these issues now as the Eleventh Circuit Appeal is about to be heard.

### C. Fairness to Litigants Favors a Stay[10]

#### 1. A Stay Is Fair To Movants and the Subpoena Recipients

*First*, substantial and time-consuming document production and deposition may be unwarranted if the Eleventh Circuit Appeal either forecloses or restricts §1782 discovery. This

---

[10] While the public interest is not listed as a factor in considering stays in this Circuit, the public interest also favors a stay here because litigants should be discouraged from filing duplicative proceedings and forum-shopping. *See Am. Med,* 75 F.3d at 1069*; Higgins v. BAC Home Loans Servicing, LP*, 2012 U.S. Dist. LEXIS 154628 (E.D. Ky. 2012) (granting stay, "[t]he public interest is served by conserving judicial time and resources in the face of duplicative proceedings"); *In re Kreke Immobilien*, 2013 WL 5966916, at 6 (S.D.N.Y. Nov. 8, 2013) ("[W]e are loath[e] to sanction forum shopping under the guise of § 1782."). Although Hornbeam filed this Florida discovery action before the Alabama federal and Ohio state court proceedings, it proceeded to decisions in those cases before even serving the Florida subpoenas on March 3, 2016. Hornbeam is hedging its bets, waiting to serve subpoenas in this action until after the Eleventh Circuit stayed the Alabama discovery, and five months after the Ohio Action was dismissed, while prosecuting its Ohio Appeal. The public interest is not served by Hornbeam consuming judicial resources in Alabama, Delaware, Florida, New York, and Ohio federal and state courts, and imposing the burden of six proceedings on Movants, of which the five §1782 proceedings may be mooted if Movants prevail in the Eleventh Circuit Appeal.

15

Court should not require Movants to face the significant and potentially unnecessary time and expense of participating in discovery before the Eleventh Circuit Appeal is decided. This Court should also consider the "special protection against the time and expense of complying with subpoenas" on the non-party subpoena recipients whose time consuming production may be mooted. *Beinin v. Ctr. for Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. 2007).[11]

***Second***, if the Eleventh Circuit determines that litigation in the BVI is not reasonably contemplated or that Hornbeam is not entitled to the pre-filing discovery it seeks, there will be no effective way to remedy the costs of compliance. Nor, will the subpoena recipients have any effective remedy for the disclosure of sensitive or confidential information other than a stay of discovery pending appeal. "[I]rreparable harm. . . lies in the fact that [o]nce the documents are surrendered pursuant to the lower court's order, confidentiality will be lost for all time. The status quo could never be restored." *Ctr. for Int'l Envtl. Law v. Office of U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (granting stay pending appeal and quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)).

***Finally***, given the stay in the Eleventh Circuit Appeal, it appears that the Circuit concluded discovery would irreparably harm Movants because of the difficulty of undoing it. This applies instantly as well.

### 2. A Stay Will Impose No Prejudice on Hornbeam

***First,*** Hornbeam made clear in Alabama that it only "plans to initiate [litigation in the BVI] after obtaining sufficient discovery to support its claims," and that the discovery it seeks in

---

[11] *See also Englar v. 41B Dist. Ct.*, No. 04-CV-73977, 2009 U.S. Dist. LEXIS 100949, at *16 (E.D. Mich. Oct. 29, 2009) (status as a non-party weighs in favor of a finding of undue burden); *Whitlow v. Martin*, No. 04-CV-3211, 2009 WL 3381013, *4 (C.D. Ill. 2009) ("Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.").

Alabama "is both relevant and crucial . . . prior to initiating further litigation in the BVI or elsewhere." *See* Bracha's § 1782 Application, **Ex.** 7 (Hornbeam asserted in its Alabama Motion to Intervene that it should be treated "interchangeably" with Bracha thereby adopting Bracha's § 1782 Application.) In short, Hornbeam represented that it cannot (or will not) file a new suit in the BVI until it receives discovery in Alabama. Because the Eleventh Circuit has stayed that discovery, Hornbeam cannot be prejudiced by a stay here, given it is judicially estopped from changing the position it took to justify discovery in Alabama.

***Second,*** Hornbeam cannot argue that a delay would be prejudicial, given that it waited for more than one year to serve any subpoenas, despite being authorized to do so in in February 2015. Oral argument is scheduled in June 2016 in the Eleventh Circuit, and decision can be expected promptly thereafter. Hornbeam surely can wait a short while longer for a decision in the Eleventh Circuit Appeal. *Cf. Michael*, 325 F.Supp.2d at 833 (finding no prejudice exists when "delay from a stay will be, in all likelihood, less than a year").

***Third,*** Hornbeam cannot argue prejudice because it has not paid the $846,526 BVI judgment, a prerequisite to prosecuting new BVI claims, which is within its sole control and can be paid at any time without further delay.

***Finally***, given the stay in the Eleventh Circuit Appeal, it appears that the Circuit concluded a stay would not harm Bracha or Hornbeam. This applies instantly as well.

## II.  THE PROCEEDING AND ORDER SHOULD BE STAYED UNTIL HORNBEAM PAYS THE $846,526 BVI JUDGMENT

Courts addressing §1782 stays consider "(1) international comity; (2) fairness to litigants; and (3) judicial efficiency." *Pinchuk*, *supra*, 2014 U.S. Dist. LEXIS 43686, *8. Each factor strongly supports a stay until Hornbeam pays the BVI judgment.

### A.  International Comity Favors a Stay

The BVI court ordered Hornbeam to pay the $846,526 judgment by February 2, 2015, but

17

Hornbeam still has not done so – more than a year later, requiring Halliwel, Symeou, and Marigold to initiate execution proceedings in the BVI. *See* Nader Dec., ¶33. In the New York and Alabama §1782 proceedings, Hornbeam did not dispute that it cannot prosecute new BVI law §184I "unfair prejudice" claims until after it pays the $846,526 judgment. *See* Alabama Decision at 8-9 (Hornbeam "would first have to pay the large BVI cost judgment" before proceeding); Nader Dec. ¶56-59. Recognizing the BVI's policy that its judgments should be paid would further international comity and respect for foreign tribunals. *See Kahrs v. Rio Verde Energy Corp.,* 604 F. Supp. 877 (S.D. Ohio 1985) (granting full faith and credit based on comity principles to United Kingdom money decree). Imposing the burden of discovery on Movants and the thirteen subpoena recipients before Hornbeam pays that judgment turns notions of comity on their head, given that Hornbeam cannot use §1782 discovery in the BVI until after it pays what it owes.

      **B.**    **Fairness to Litigants Favors a Stay**

Fairness to Movants and the subpoena recipients also dictates Hornbeam pay its judgment before imposing new expense on the Movants and burden and expenses on the third-party subpoena targets. Hornbeam would not suffer prejudice if this proceeding is stayed pending its payment of the BVI judgment, because all Hornbeam need do is pay the BVI judgment that it owes and that it must pay if it wishes to use the §1782 discovery in the BVI. The payment of that judgment is entirely within its control and can occur immediately. Similarly, Hornbeam cannot be heard to complain about prejudice in connection with actions which may be filed by Shulman or Bracha in jurisdictions that Hornbeam admits are "currently unknown." If Shulman or Bracha wish discovery, they should file their own applications.

      **C.**    **Judicial Efficiency Favors a Stay**

Judicial efficiency favors a stay because there is no reason for this Court to expend its time and resources if, in the end, Hornbeam never pays the BVI judgment and therefore cannot use any

discovery it obtains in new BVI proceedings.  This would place the cart before the horse.

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to S.D. Fla. L.R. 7.1(a)(3), counsel for Movants certifies that it conferred with Hornbeam in a good faith effort to stay this matter, but Hornbeam objected.  All subpoena recipients agree to a stay.


Dated:  April 6, 2016

Respectfully submitted,
**ASTIGARRAGA DAVIS MULLINS & GROSSMAN, P.A.**
*Attorneys for Halliwel Assets, Inc. and Panikos Symeou*
1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Tel.: (305)372-8282

*/s/ Arnoldo B. Lacayo*
Edward M. Mullins
Fla. Bar No. 863920
Email: emullins@astidavis.com
Arnoldo B. Lacayo
Fla. Bar No. 675482
Email: alacayo@astidavis.com

**MARKS & SOKOLOV, LLC**
*Attorneys for Halliwel Assets, Inc. and Panikos Symeou*
1835 Market Street, 17th Floor
Philadelphia, PA 19103
215-569-8901
215-569-8912 *(facsimile)*
Bruce S. Marks (Pro Hac Vice)
Email: marks@mslegal.com
Thomas C. Sullivan (Pro Hac Vice)
Email: Tsullivan@mslegal.com

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via electronic filing using the CM/ECF filing system with the Clerk of the Court, which sent email notification of such filing to all CM/ECF participants in this case listed on the Service List on April 6, 2016.

                                         */s/ Arnoldo B. Lacayo*
                                         Arnoldo B. Lacayo
                                         Florida Bar No. 675482

## SERVICE LIST

Adolfo E. Jiménez
Brian A. Briz
Holland & Knight
701 Brickell Avenue
Suite 3300
Miami, Florida 33131
Telephone: 305-374-8500
Facsimile: 305-789-7799
Email: adolfo.jimenez@hklaw.com
Email: brian.briz@hklaw.com

James H. Power
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3494
Facsimile: (212) 385-9010
Email: james.power@hklaw.com

William K. Hill
Jorge D. Guttman
Gunster
600 Brickell Avenue
Suite 3500
Miami, Florida 33131
Telephone:  305-376-6054
Facsimile:  305- 376-6010
Email:  whill@gunster.com
Email:  jguttman@gunster.com