UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE APPLICATION OF<br>HORNBEAM CORPORATION | )   CASE NO. 4:14-mc-00091-PAG<br>)<br>)   JUDGE PATRICIA A. GAUGHAN<br>)<br>)   <u>MOTION TO VACATE JANUARY 6,</u><br>)   <u>2015, ORDER AND DENY 28 U.S.C.</u><br>)   <u>§1782 APPLICATION</u><br>) |

Intervenors Panikos Symeou and Halliwel Assets, Inc., by and through counsel, respectfully move this Court for an Order vacating its prior Order, which granted an *ex parte* application filed by Hornbeam Corp. under 28 U.S.C. §1782, and denying that application. The reasons for this Motion are set forth in the *Memorandum in Support of Motion to Vacate January 6, 2015, Order and Deny 28 U.S.C. §1782 Application*, which is attached to and incorporated in this Motion by reference.

Respectfully Submitted,

*/s/ Richard M. Bain*
RICHARD M. BAIN (0016525)
bain@buckleyking.com
JEFFREY C. TOOLE (0064688)
toole@buckleyking.com
JUSTIN W. WHELAN (0088085)
whelan@buckleyking.com
BUCKLEY KING LPA
1400 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio 44114-2652
(216) 363-1400
(216) 579-1020 (*facsimile*)

and

Bruce S. Marks
MARKS & SOKOLOV, LLC
1835 Market Street, 17th Floor
Philadelphia, PA 19103
215-569-8901
215-569-8912 *(facsimile)*

Attorneys for Intervenors Panikos Symeou
and Halliwel Assets, Inc.

# TABLE OF CONTENTS

Memorandum in Support of Motion to Vacate .................................................................1

Statement of Issues .......................................................................................................1

Summary of Argument ..................................................................................................1

Relevant Facts ...............................................................................................................2

      A. Background .....................................................................................................2

      B. Operation of the Plant ....................................................................................3

      C. The 2014 Loans .............................................................................................3

      D. Hornbeam's Failed BVI Proceedings ...........................................................4

      E. BVI Execution Proceedings ...........................................................................5

      F. Hornbeam's Concealed §1782 Proceedings .................................................5

      G. The Ohio State Court Action .........................................................................7

      H. The Instant §1782 Application and Order .....................................................8

Argument ......................................................................................................................8

  I. The Application Should Be Denied Because the Discovery Interferes With a Foreign Corporation's Internal Affairs .....................................................................9

  II. Hornbeam Does Not Satisfy §1782's Statutory Requirements .............................11

    A. Future BVI Proceedings Are Not Within "Reasonable Contemplation" .........11

    B. Section 1782 Does Not Permit Broad Pre-Filing Document Discovery ..........13

    C. Hornbeam Does Not Satisfy the Requirements for Pre-Filing Depositions ....14

    D. Hornbeam Is an Interested Person Only as to Its Own Claims ........................15

  III. Section 1782's Discretionary Factors Disfavor Discovery ..................................15

    A. Discovery Is Available Through the Parties in the BVI .................................15

    B. Hornbeam Is "Discovery Forum-Shopping" to Circumvent BVI Proof-Gathering Restrictions and Its Policy That Judgments Should Be Paid ..........17

    C. The BVI Court Would Not Be Receptive to the Discovery............................17

    D. Hornbeam's Requests Are Deliberately Unduly Burdensome and Oppressive, Weighing Against Discovery .......................................................18

IV. Section 1782 Applications Should Not Be Granted *Ex Parte* or in Violation of Ohio Rule Prof. Conduct 3.3(d) ........................................................18

    A. Section 1782 Applications Should Not Be Granted *Ex Parte*, Because This Violates Due Process and our Treaty Obligations ...................................18

    B. The Order Should Be Vacated and the Application Denied, Because Hornbeam Violated Its Duty of Candor and Disclosure ................................20

Conclusion ......................................................................................................................20

Certificate of Service ......................................................................................................21

## **TABLE OF AUTHORITIES**

**CASES**

*American Tobacco Co. v. Patterson*, 456 U.S. 63 (1982) ........................................................ 15

*Ash v. Cort*, 512 F.2d 909 (3d Cir. 1975) ...................................................................................... 14

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113 (2d Cir. 2015) ..... 12

*Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
    747 F.3d 1262 (11th Cir. 2014) ................................................................................................ 14

*CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69 (1987) ................................................... 10, 11

*Edgar v. MITE Corp.*, 457 U.S. 624, 102 S. Ct. 2629, 73 L.Ed.2d 269 (1982) ...................... 9, 11

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983).. 10, 11

*Fortress Inv. Grp.*, 2014 U.S. Dist. LEXIS 95578 (S.D.N.Y. July 9, 2014) .......................... 13, 15

*Granny Goose Inc. v. Teamsters*, 415 U.S. 423 (1974) .............................................................. 18

*In re Harbour Vict. Inv. Holdings Ltd.*, 2015 U.S. Dist. LEXIS 87912
    (S.D.N.Y. June 29, 2015)........................................................................................................ 13

*In re Kreke Immobilien*, 2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) .................................. 16, 17

*In re Merck & Co., Inc.*, 197 F.R.D. 267 (M.D.N.C. 2000) ..................................................... 18, 19

*In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006) ..................................................... 16

*In re OOO Promnefstroy*, 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009).............................. 16, 17

*In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*,
    848 F.2d 1151 (11th Cir. 1988) ............................................................................................... 12

*Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ............................................... passim

*Ishihara Chem. Co., Ltd.,* 121 F. Supp.2d 209 (E.D.N.Y. 2000) ................................................ 15

*Jiangsu S.S. Co. v. Success Superior Ltd.*, 2015 WL 3439220 (S.D.N.Y. Feb. 5, 2015) ............ 13

*Maine Audubon Soc. v. Purslow*, 907 F.2d 265 (1st Cir. 1990) .................................................. 20

*Matthews v. Eldridge*, 424 U.S. 319 (1976) ............................................................................... 18

*Pennsylvania v. Williams,* 294 U.S. 176 (1935) .................................................................... 10, 11

*PHP Liquidating, LLC v. Robbins*, 128 F. App'x 839 (3d Cir. 2005)......................................... 10

*Rogers v. Guaranty Trust Co.,* 288 U.S. 123 (1933) ......................................................... 9, 10, 11

*RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750 (2d Cir. 2013) .................................................. 15

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79 (2d Cir. 2004) .............................. 16

*Tolliver v. Northrop Corp.*, 786 F.2d 316 (7th Cir. 1986).......................................................... 20

iii

*United States v. Minker*, 350 U.S. 179 (1956) ............................................................................ 18

*VantagePoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108 (Del. 2005) .................... 10

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ........................................ 19

*Zuelsdorf v. Oiler*, 2014 U.S. Dist. LEXIS 65587 (S.D. Ohio May 13, 2014) ............................ 14

## OTHER AUTHORITIES

28 U.S.C. §1782 ......................................................................................................................... passim

§184I of the BVI Business Companies Act, 2004 ............................................................... 4, 5, 13

## RULES

Ohio Rule of Prof. Conduct 3.3(d) ................................................................................................ 24

Restatement 2d of Conflicts of Laws §302 ............................................................................... 8, 11

Fed. R. Civ. P. 27 ................................................................................................................... 16, 17

Fed. R. Civ. P. 45 ..................................................................................................................... passim

## MEMORANDUM IN SUPPORT OF MOTION TO VACATE

On January 6, 2015 (the "Order"), ECF 7, this Court granted an *ex parte* application (the "Application"), ECF 1, that Hornbeam Corp. ("Hornbeam") filed under 28 U.S.C. §1782, authorizing discovery from Warren Steel Holdings, LLC ("Warren Steel") for use in future "unfair prejudice" (shareholder oppression) proceedings in the British Virgin Islands ("BVI") against, *inter alia,* movants Panikos Symeou ("Symeou") and Halliwel Assets, Inc. ("Halliwel") (collectively, "Movants"). Hornbeam is a registered shareholder of Halliwel, a BVI company and Warren Steel's parent. The subpoenas authorized in January 2015 were not served until late February and early March, 2016. Movants seek to vacate the Order and deny the Application.

## STATEMENT OF ISSUES

Should the Order be vacated and the Application be denied because (I) this Court should not exercise its jurisdiction pursuant to the internal affairs doctrine; (II) Hornbeam does not satisfy §1782's statutory requirements; (III) §1782's discretionary factors disfavor discovery; and (IV) Hornbeam violated its duty of candor and disclosure owed in *ex parte* proceedings?

## SUMMARY OF ARGUMENT

***First,*** under the guise of §1782 discovery, Hornbeam seeks to interfere with the internal affairs of Halliwel and its subsidiary, Warren Steel. Instead of serving the authorized subpoenas in early 2015, beginning in June 2015 Bracha Foundation ("Bracha"), Vadim Shulman ("Shulman"), and then Hornbeam, brought the ***same*** claims for the ***same*** damages against the ***same*** defendants in Trumbull County Common Pleas Court (the "Ohio Court") that Hornbeam told this Court it would file in the BVI. In September 2015, the Ohio Court dismissed their claims under the internal affairs doctrine and *forum non conveniens*. Under the internal affairs doctrine, long recognized by the U.S. Supreme Court, this Court should follow the Ohio Court and reject this ploy.

**Second,** Hornbeam's Application failed to disclose that: (1) in October 2014, its BVI proceedings were dismissed as "an abuse"; (2) in December 2014, the BVI court ordered Hornbeam to pay $846,526 in costs and attorneys' fees by February 2, 2015 (which it still has not paid); and (3) Hornbeam **must** pay the BVI judgment before it can prosecute new BVI proceedings. Hornbeam does not satisfy §1782's statutory requirements: (A) Future BVI proceedings are not within "reasonable contemplation" because new BVI claims cannot proceed until Hornbeam pays the $846,526 judgment; and (B) §1782 does not permit broad pre-filing document discovery and depositions unnecessary for filing foreign proceedings.

**Third,** §1782's discretionary factors disfavor discovery. The Application did not disclose that: (A) Warren Steel's records are discoverable from Halliwel in the BVI; (B) Hornbeam is trying to circumvent BVI evidence-gathering procedures and policy by seeking Warren Steel's records here, instead of paying the $846,526 judgment and obtaining the records there; (C) BVI courts would not be receptive to the discovery because new claims would not proceed until the $846,526 judgment is paid; and (D) Hornbeam's requests are intentionally unduly burdensome and oppressive.

**Finally,** §1782 applications should not be granted *ex parte,* absent cause. Hornbeam's violation of disclosure imposed in *ex parte* proceedings alone justifies denying its Application.

## **RELEVANT FACTS**[1]

### **A.    Background**

In 2001, entities of Ukrainian Shulman purchased a closed steel factory in Warren, Ohio (the "Plant"). Shulman Dec. ¶ 12-15, ECF 2-1 at 4. In November 2007, ownership of the Plant

---

[1] "**Ex.** []" are exhibits to the Bruce S. Marks Declaration, "Ex. N-[]" are exhibits to the BVI legal expert Robert Nader Declaration, and "Ex. W-[]" are exhibits to the BVI legal expert Andrew Willins Declaration. These Declarations are being filed concurrently with this Motion.

was transferred to Warren Steel, a Delaware limited liability company. Shulman Dec. ¶ 14-15, ECF 2-1 at 4. In April 2008, Warren Steel's ownership was transferred to Halliwel, a BVI company. Halliwel is Warren Steel's sole member. Shulman Dec. ¶21, ECF 2-1 at 5. Halliwel's three equal registered shareholders are Hornbeam, a Panamanian company now in dissolution (for Bracha, a Lichtenstein trust, and/or Shulman, its beneficiary), Symeou, a Cyprus attorney (for Ukrainian Igor Kolomoisky), and Marigold Trust Asset Management ("Marigold"), a Jersey, Channel Islands trust (for Ukrainian Gennady Bogolubov). Campanile Dec. ¶61, ECF 3 at 12. Symeou is Halliwel's sole director. Campanile Dec. ¶59, ECF 3 at 12.

### B.  Operation of the Plant

In 2006, a Kolomoisky-controlled entity opened a $90 million line of credit for the benefit of Warren Steel. Shulman Dec. ¶ 16-17, ECF 2-1at 4-5. In 2007, Mordecai Korf ("Korf"), a Florida resident, was appointed president of Warren Steel. Korf Aff. ¶1, ECF 3-1 at 138. From 2008, companies associated with Kolomoisky, Bogolubov and/or Korf provided over $106 million of additional financing. Campanile Dec. ¶ 9-10, ECF 3 at 4. Shulman knew and never complained about this. Shulman's consultants were permitted to review Warren Steel's books and records in 2012, 2013 and 2014, and were provided over 20,000 pages of detailed backup in 2014. Shulman Aff. ¶19, ECF 3-1 at 44; Campanile Dec. ¶79-88, 101, ECF 3 at 16-18.

### C.  The 2014 Loans

Due to deteriorating finances, the Plant closed in March 2014. Korf oversaw negotiations to restart the Plant. Twenty-five million dollars of new financing was required. Once again, companies related to Kolomoisky, Bogolubov, and/or Korf provided the new financing and prior loans because no third party would lend. Korf Aff. ¶5.4, ECF 3-1 at 140. Symeou approved

new financing as Halliwel's sole director on August 1, 2014. Korf Aff. ¶6, 6.1 ECF 3-1 at 143; Symeou Aff. ¶8, ECF 3-1 at 133. Although not legally required, it was determined that Halliwel's shareholders should approve the new financing through an extraordinary general meeting ("EGM"). Shulman was notified of the EGM on August 1, 2015. His agents requested that it be postponed several times because of their holiday schedule. Campanile Dec. ¶100, 104, ECF 3 at 21-22.

### D. Hornbeam's Failed BVI Proceedings

On August 29, 2014, Hornbeam filed an *ex parte* application to enjoin the EGM. An injunction was granted and continued to October 13, 2014. On September 15, 2014, Hornbeam filed its statement of claims for "unfair prejudice" under §184I of the BVI Business Companies Act, 2004 (the "BVI Act"). Claim, **Ex. 10.** On October 10, 2014, Hornbeam filed applications to appoint a provisional liquidator and to liquidate Halliwel. Fay Dec. ¶8f-h, ECF 2-1 at 12. Contrary to the Application, Hornbeam did not withdraw the BVI proceedings because of "inadequate disclosure." At the October 13, 2014, hearing, Hornbeam abandoned its injunction, and the BVI court rejected the provisional liquidator application *on the merits*, holding that:

> *. . . this is an abuse of winding up procedure designed to supplant the control, which the majority shareholders are currently exercising over this company's affairs*, that's my view. And *I don't think that's a legitimate use of the Court's equitable jurisdiction to wind up companies which are in distress.*

Transcript, pp.172-73, **Ex.** 1 (emphasis added).

By orders dated November 4, 2014, the BVI court memorialized its oral decisions dismissing the injunction application, §184I statement of claim, and provisional liquidator application. BVI Orders, **Ex.** 2. By order dated November 27, 2014, the liquidator application was withdrawn. BVI Order, **Ex.** 3. On December 18, 2015, the BVI court ordered Hornbeam to pay $846,526 in costs and attorneys' fees to Halliwel, Symeou, and Marigold by February 2,

2015. BVI Judgment, **Ex.** 4. In December 2014, Hornbeam purported to transfer its Halliwel shares to Bracha (even though Hornbeam remained Halliwel's registered shareholder) and filed for dissolution in Panama. Hornbeam Dissolution, **Ex.** 30. Hornbeam is free to file new "unfair prejudice" claims in the BVI, which does not require evidence to be submitted until disclosure (discovery) is completed. Nader Dec. ¶68, 69.

### E. BVI Execution Proceedings

In March 2015, Halliwel, Symeou, and Marigold brought execution proceedings to enforce the $846,526 judgment against Hornbeam's Halliwel shares. On August 14, 2015, the BVI court placed a provisional charge (lien) on them. Bracha intervened. Bracha and Hornbeam served objections contesting the provisional charge. If their objections are denied, the BVI court will put Hornbeam's shares to sale. If Hornbeam ceases to be a registered shareholder of Halliwel, it will no longer have standing to bring §184I claims. Nader Dec. ¶42-43.

### F. Hornbeam's Concealed §1782 Proceedings

Beginning in December 2014, despite purporting to transfer its shares, Hornbeam filed applications pursuant to 28 U.S.C. §1782 in Delaware, Florida, New York, and Ohio purportedly to obtain discovery "for use" in future proceedings in the BVI against Halliwel, Symeou, Marigold, Kolomoisky, and Bogolubov. Del., Fl., NY Applications, **Ex.** 22, 23, 5; Del, Fla, NY Orders, **Ex.** 6, 7, 11. Hornbeam did not serve its applications and the orders granting them. Their existence was only discovered by happenstance by Attorney Bruce S. Marks in May 2015. Marks Dec. ¶ 4.

**New York**: On June 8, 2015, in response to a letter from Symeou's counsel, Hornbeam's attorney (James H. Power) disclosed that subpoenas had been secretly served and discovery obtained from numerous banks in New York, although subpoenas authorized in other districts

had not been served.   Power Letter, **Ex.** 12.  On July 17, 2015, Symeou moved to intervene and vacate the §1782 order in the New York court.  Marks Dec. ¶7.  The New York court found that Hornbeam had violated Rule 45 by secretly serving the subpoenas and receiving discovery without notice, but did not vacate the Order.  NY Opinion at 12, **Ex.** 9.  No appeal has been taken because Symeou's Rule 60(b) motion to vacate the §1782 order is pending. Marks Dec. ¶8.

**Alabama**:   On May 1, 2015, Bracha filed its *ex parte* application to serve a subpoena on Regions Bank.  Ala. Application, **Ex.** 24.   It was granted on May 9, 2015. Order, **Ex.** 25.  On September 8, 2015, Bracha's Alabama counsel served a copy of the subpoena on Ohio counsel for Halliwel and Symeou.  Letter, **Ex.** 19. This was the first disclosure of the Alabama action.[2] After Halliwel and Symeou intervened and moved to vacate, the Alabama court substantially limited the authorized discovery to Warren Steel's bank records.  Ala. Opinion at 10, **Ex**. 26. Although the Alabama court found that Hornbeam "would first have to pay the large BVI cost judgment" before proceeding there, it noted that because of "the extraordinary wealth of Shulman" the judgment could be paid.  *Id*. at *11.   Thereafter, the Eleventh Circuit Court of Appeals stayed the order authorizing discovery, pending appeal.  Stay Order, **Ex.** 27.

**Florida:**   On February 11, 2015, the Florida court granted Hornbeam's *ex parte* application.  Order, **Ex**. 7.  Hornbeam just served subpoenas on March 3, 2016.  Marks. Dec. ¶6. Movants have moved to intervene and intend to move to stay and/or vacate the Florida order.

**Delaware:**   On May 4, 2015, the Delaware court granted Hornbeam's *ex parte* application.  Order, **Ex.** 6.  To Movants' knowledge, Hornbeam has not served the authorized subpoenas.

---

[2] In July 2015, Attorney Marks asked Hornbeam's attorney (Power) whether there were "any other §1782 applications which Hornbeam (or any related entity such as Bracha Foundation or Vadim Shulman) has filed  … and any orders obtained pursuant to such applications."  Letter, **Ex.** 15.  Attorney Power's response concealed the Alabama action's existence. Email, **Ex.** 21.

### G.   The Ohio State Court Action

On June 15, 2015, Bracha and Shulman sued in the Ohio Court, asserting the **same**
shareholder abuse claims for the **same** damages against the **same** defendants (plus Warren Steel
and Korf) that Bracha and Hornbeam told five federal courts would be filed as "unjust prejudice"
claims in the BVI, Ohio Complaint, **Ex**. 13, using information they gleaned from the New York
§1782 discovery.[3]   They obtained an *ex parte* TRO preventing Warren Steel from selling its
assets to Kolomoisky, Bogolubov, or related entities.   On July 16, 2015, the Magistrate Judge
held that Bracha's and Shulman's claims should be dismissed for lack of standing under BVI law
(because they were not registered shareholders of Halliwel) and that the TRO should be
dissolved.  Order, **Ex.** 14.  On August 7, 2015, Bracha and Shulman filed an amended complaint
adding Hornbeam as a plaintiff.   Amended Complaint, **Ex.** 17.   Hornbeam filed its own
complaint on August 27, 2015, asserting the same claims.  Hornbeam Complaint, **Ex.** 18.  It was
agreed the TRO would remain in place pending resolution of defendants' motions to dismiss.

 On October 22, 2015, the Ohio Court granted the motions to dismiss and dissolved the
TRO.  *See* Ohio Decision, **Ex.** 28.  Based upon Ohio and U.S. Supreme Court precedent, the
Ohio Court recognized that the internal affairs doctrine is both a limitation on the exercise of
jurisdiction and a conflict of laws principle.  *Id.* at 4–5.  After adopting the Magistrate's Decision
and dismissing Bracha's and Shulman's claims for lack of standing, *id.* at 4, the Ohio Court
dismissed the claim for inspection of Warren Steel's books and records for lack of jurisdiction,
finding:

---

[3] *See* Campanile Ohio Aff. dated June 11, 2015, at 164 ("other than the existence of Warren Steel
bank accounts not previously identified by Symeou no information whatsoever received [from
the New York §1782 discovery] will be used in this [Ohio] Proceeding in support of the
accounting and injunction.").  **Ex.** 20.

> The First Claim of the Plaintiffs' Complaint requests inspection of the books and records and accounting of Warren Steel Holdings . . . Generally [t]he law of the state of incorporation normally determines issues relating to the internal affairs of a corporation . . . *'Internal affairs' include a shareholder's rights to examine corporate records. See Restatement 2d of Conflicts of Laws §302 cmt. a* . . . Halliwel was incorporated in the British Virgin Islands. *Therefore, under the internal affairs doctrine, BVI law, not Ohio law, applies. Consequently . . . this Court finds that the relief requested in the first count of the Complaint would interfere with the internal management of Halliwel. Therefore this court lacks jurisdiction over the First Claim; it must be brought in the BVI.*

Ohio Decision at 5-6 (emphasis added).

The Ohio Court also dismissed the claims for alleged fraud, conversion, and unjust enrichment under the internal affairs doctrine and BVI law, finding that those claims cannot be commenced without pre-approval of the BVI High Court, if the claims were derivative in nature, and that the claims must be filed in the BVI High Court, if they are considered to be direct "unfair prejudice" claims. *Id.* at 7–10. The Ohio State Court dismissed claims for injunctive relief and to appoint a receiver over Warren Steel because no other substantive claims survived. *Id.* at 10–11. It also dismissed for *forum non conveniens* to the BVI. *Id.* at 12-14. Hornbeam, Bracha, and Shulman appealed that decision on November 23, 2015. Oral argument is scheduled for May 18, 2016. In the meantime, the Plant closed. Marks Dec. ¶5.

### H. The Instant §1782 Application and Order

On December 29, 2014, Hornbeam filed its *ex parte* Application in this Court. In the Application, Hornbeam claims to need discovery to file §184I "unjust prejudice" claims against Halliwel, Symeou, Marigold, Kolomoisky, and Bogolubov, based upon alleged self-dealing involving Warren Steel. On January 6, 2015, the Court entered Hornbeam's proposed order.

### ARGUMENT

Section 1782 of title 28 imposes three statutory requirements: (1) the person from whom discovery is sought must reside or be found in the district; (2) discovery must be "for use" in a

proceeding before a foreign tribunal; and (3) the application must be made by an "interested person."  *See Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004) ("*Intel*").  **If those requirements are met, then §1782 "**authorizes, but does not require, a federal district court to provide judicial assistance." *Intel*, 542 U.S. at 255.  The court may deny the application if (1) "the person from whom discovery is sought is a participant in the foreign proceeding" (and thus the evidence is within the foreign court's reach); (2) there is a lack of "receptivity of the foreign … court  … to U.S. federal-court judicial assistance"; (3) "the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; or (4) the request is "unduly intrusive or burdensome."  *Id.* at 264-65.

I.      **THE APPLICATION SHOULD BE DENIED BECAUSE THE DISCOVERY INTERFERES WITH A FOREIGN CORPORATION'S INTERNAL AFFAIRS**

The internal affairs doctrine is a paramount policy of federal and state courts designed to prevent interference in the affairs of foreign corporations in favor of their courts of domicile.  It is hard to conceive of greater interference than compelling a foreign parent to produce its subsidiary's records and employees for deposition at the demand of the parent's minority shareholder.

*First,* the doctrine is a limitation on the exercise of jurisdiction.  "It has long been settled doctrine that a court—state or federal—sitting in one State will as a general rule decline to interfere with or control by injunction or otherwise the management of the internal affairs of a corporation organized under the laws of another State but will leave controversies as to such matters to the courts of the State of the domicile." *Rogers v. Guaranty Trust Co.,* 288 U.S. 123, 130 (1933) (affirming dismissal, citing multiple federal and state cases). *See, e.g., Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S. Ct. 2629, 73 L.Ed.2d 269 (1982) ("[I]t has long been accepted practice for the federal courts to relinquish their jurisdiction … where its exercise would involve

control of or interference with the internal affairs of a domestic corporation of the state.").[4]

**Second,** the doctrine is a choice of law rule. "As a general matter, the law of the state of incorporation normally determines issues relating to the internal affairs of a corporation. Application of that body of law achieves the need for certainty and predictability of result while generally protecting the justified expectations of parties with interests in the corporation." *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983).

**Third,** "application of the internal affairs doctrine is mandated by constitutional principles, except in the 'rarest situations.'" *CTS Corp. v. Dynamics Corp. of Am.,* 481 U.S. 69, 90 (1987). As the Ohio Court recognized, "'[p]ursuant to the Fourteenth Amendment Due Process Clause, directors and officers of corporations have a significant right . . . to know what law will be applied to their actions and stockholders . . . have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs.'" Ohio Decision, **Ex.** 28 at 5 (*quoting VantagePoint Venture Partners 1996 v. Examen, Inc.,* 871 A.2d 1108 (Del. 2005) (original quotations and footnotes omitted)).

The internal affairs doctrine applies to a variety of shareholders' rights, including "rights to examine corporate records." *PHP Liquidating, LLC v. Robbins*, 128 F. App'x 839, 844 (3d Cir. 2005) (quoting Restatement (Second) of Conflict of Laws § 302 cmt. a (1971)). Thus, as the Ohio Court found, Halliwel's internal affairs are at issue because any inspection of the books and

---

[4] *Rogers* affirmed dismissal of claims to set aside the issuance of shares in a New Jersey corporation to New Jersey state court, holding disputes over the corporation's internal affairs "bring this case within the general rule" and "abundantly justify" dismissal. *Id.* at 132–33. *Rogers* instructed that "jurisdiction will be declined whenever consideration of convenience, efficiency, and justice point to the courts of the State of the domicile as appropriate tribunals for the determination of the particular case." *Id.* at 131. Likewise, *Pennsylvania v. Williams,* 294 U.S. 176, 185 (1935), reversed an exercise of diversity jurisdiction, holding that "it has long been accepted practice for the federal courts to relinquish their jurisdiction in favor of the state courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the state."

records of its subsidiary, Warren Steel, not authorized by its sole director Symeou or compelled by a BVI court "*would interfere with the internal management of Halliwel*." Ohio Decision at 7 (emphasis added). Otherwise, §1782 would become a vehicle for shareholders of foreign corporations to circumvent the internal affairs doctrine every time a foreign corporation's subsidiary has records or employees in the United States.

The Ohio Court ruled that Hornbeam's request for Warren Steel's records falls squarely within the internal affairs doctrine. It also found that Halliwel has numerous avenues to obtain access to Warren Steel's records through BVI proceedings, as explained in the declarations of BVI law experts Nader, ¶61, 65-67, and Willins, ¶26-37. After losing in the Ohio Court, Hornbeam served subpoenas in February and March 2016 to circumvent the Ohio Decision. This Court should not condone such a blatant end-run. It should credit constitutional concerns and Halliwel's shareholders' justified expectations that disputes over its subsidiary's books and records would be governed by BVI law and resolved in the BVI courts.

*In sum,* federal courts should not become pre-filing §1782 clearinghouses for disgruntled shareholders of foreign corporations who try to circumvent the internal affairs doctrine. That is the very result *Rogers, Williams,* and *Edgar* seek to avoid by recognizing that the internal affairs doctrine imposes limitations on the exercise of jurisdiction, that *First Nat'l City Bank* holds should be governed by the law of the corporation's place of incorporation, and that *CTS Corp.* recognizes as implicating constitutional concerns based upon justified expectations.

## II.  HORNBEAM DOES NOT SATISFY §1782'S STATUTORY REQUIREMENTS

### A.  Future BVI Proceedings Are Not Within "Reasonable Contemplation"

*Intel* held that a judicial decision must be within "reasonable contemplation" in order to justify §1782 discovery. *Intel*, *supra*, 542 U.S. at 259. "[A] district court must insist on reliable indications of the likelihood that proceedings will be instituted within a reasonable time. . . . At a

11

minimum, a §1782 applicant must present to the district court some concrete basis from which it can determine that the contemplated proceeding is more than just a twinkle in counsel's eye." *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123-24 (2d Cir. 2015) (citations omitted). Fourteen months of inaction proves that Hornbeam's contemplated foreign proceedings remain a mere twinkle.

     ***First,*** Hornbeam did not disclose that it must pay the $846,526 judgment before it can prosecute new claims in the BVI and, in fact, has not done so. Like *Certain Funds,* Hornbeam "had done little to make an objective showing that the planned proceedings were within reasonable contemplation." *Id.* When caught taking secret discovery in violation of Rule 45 in New York, Hornbeam and Bracha did not proceed to serve the subpoenas authorized in this district, or in Alabama, Delaware, and Florida for that matter, but instead sued in Ohio state court. When the Ohio Court dismissed their lawsuit on October 22, 2015, Hornbeam did not serve the subpoenas until February and March 2016, more than a year after this Court's January 2015 Order and well after they appealed the Ohio Decision on November 23, 2015. Hornbeam is amidst execution proceedings, and cannot bring claims if it loses its Halliwel shares. Nader Dec. ¶42-43. Unless Hornbeam pays the BVI judgment, no future BVI proceedings are in "reasonable contemplation."

     ***Second,*** where, as here, §1782 discovery is sought as a "'fishing expedition' or a vehicle for harassment, the district court should deny the request." *In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago*, 848 F.2d 1151, 1156 (11th Cir. 1988), *abrogated on other grounds by Intel Corp.*, 542 U.S. at 249. Given Hornbeam's failure to pay the BVI judgment, its failure to serve subpoenas for fourteen months, and its appeal of the Ohio Decision, this brand-new discovery is pure harassment. At best, Hornbeam is seeking

information to decide **whether** to bring new BVI proceedings. But this is an impermissible use of §1782, which "is not designed to provide potential litigants with information that will help them decide whether and where to commence proceedings." *Jiangsu S.S. Co. v. Success Superior Ltd.*, 2015 WL 3439220, *6 (S.D.N.Y. Feb. 5, 2015) (denying §1782 application for pre-filing discovery). *See In re Harbour Vict. Inv. Holdings Ltd.*, 2015 U.S. Dist. LEXIS 87912, *29 (S.D.N.Y. June 29, 2015) (denying pre-filing discovery "because it appears that Petitioner is engaging in a fishing expedition to identify other foreign venues in which to bring suit").

### B.    Section 1782 Does Not Permit Broad Pre-Filing Document Discovery

Section 1782 provides that, "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.* The Federal Rules do not authorize pre-filing document discovery. Contrary to Hornbeam's assertions, *Intel* did not authorize broad pre-filing discovery that is unnecessary to file foreign proceedings.

*First,* "[i]n *Intel*, the party seeking discovery had initiated the original [anti-trust] complaint [before the European Union commission] and retained 'significant procedural rights' before the international tribunal, including a right to 'submit relevant information' to the tribunal and the right to seek judicial review of the tribunal's ruling." *Fortress Inv. Grp.*, 2014 U.S. Dist. LEXIS 95578, *7 (S.D.N.Y. July 9, 2014) (denying discovery). Hornbeam filed BVI proceedings and, when some were determined to be "an abuse", it could have amended its §184I claims and sought disclosure (discovery) in the BVI. Nader Dec. ¶31, 50, 53. Instead, it withdrew them. Even now, Hornbeam can file new BVI proceedings, Nader Dec. ¶57-59, but has not done so to avoid paying the $846,526 judgment. "[C]oncerns about misuse of the discovery process are particularly pronounced [when] petitioner [has] had an opportunity to

initiate judicial proceedings abroad but [has] failed to do so." *Id.* at *19.

**Second**, Hornbeam does not need discovery to formulate BVI claims because if it alleges the same "facts" as in its Ohio complaint, it would survive a motion to strike out (the equivalent of our Rule 12(b)(6) motion), given the specificity of its allegations. Nader Dec. ¶73. Cases such as *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1266 (11th Cir. 2014), illustrate the limited circumstances where pre-filing discovery is permitted. *Consorcio* affirmed an order permitting pre-filing document discovery because the Ecuador civil law system **required** that evidence be submitted **with** the complaint. Here, as Nader explains, as in the United States, evidence is not required to be submitted when filing under BVI law. Nader Dec. ¶68-69. *Intel* never authorized imposing the heavy burden of responding to pre-filing discovery in these circumstances. If Hornbeam wants discovery, it should file claims in the BVI.

### C. Hornbeam Does Not Satisfy The Requirements For Pre-Filing Depositions[5]

To the extent the Federal Rules of Civil Procedure governs §1782 discovery, Rule 27 pre-complaint depositions are only permitted "in that special category of cases where it is necessary to prevent testimony from being lost." *Ash v. Cort*, 512 F.2d 909, 911 (3d Cir. 1975). "[P]ermitting discovery to 'enable a person to fish for some ground for bringing suit' is an abuse of Rule 27." *Zuelsdorf v. Oiler*, 2014 U.S. Dist. LEXIS 65587,*4 (S.D. Ohio May 13, 2014) (denying Rule 27 deposition). Hornbeam has not demonstrated any risk that testimony might be lost, particularly given that it has not even named a witness, let alone one who might become unavailable. While pre-filing depositions may be authorized by §1782, Hornbeam has not explained why the limitations on Rule 27 should not apply here. Moreover, Hornbeam has not

---

[5] In accord with Rule 45, Warren Steel will move to quash the deposition subpoena. Movants adopt Warren Steel's arguments.

shown that a pre-filing deposition is ***necessary*** to file new claims in the BVI, and Nader explains it is not.    Nader Dec. ¶68-69.    In concluding that §1782 does not permit third party interrogatories or requests for admissions, *Ishihara Chem. Co., Ltd.,* 121 F. Supp.2d 209 (E.D. N.Y. 2000), observed:  "Congress could hardly [have] intended to subject its citizens to broader discovery demands in foreign litigation than domestic litigation." *See American  Tobacco Co. v. Patterson*, 456 U.S. 63, 71 (1982) ("Statutes should be interpreted to avoid untenable distinctions and unreasonable results.")  It is unreasonable to conclude Congress intended broader pre-filing depositions under §1782 than Rule 27, absent a ***requirement*** to present evidence when filing.

### D.    Hornbeam Is An Interested Person Only As To Its Own Claims

An applicant may only seek §1782 discovery for claims which It has standing to bring, not for other persons.  *See RTI Ltd. v. Aldi Marine Ltd.*, 523 F. App'x 750, 751 (2d Cir. 2013) (affirming denial of a §1782 application because the applicant "ha[d] not shown that it enjoy[ed] significant participation rights, but instead that its sister corporations d[id].");  *Fortress Inv. Grp., supra,* 2014 U.S. Dist. LEXIS 95578 at *7 ("[P]etitioners are **not interested. . . . [because they]** do not have any existing role in those proceedings and have failed to demonstrate that they have a right to submit evidence to the foreign tribunals in question.").  To the extent the Application references Bracha or Shulman, they should file their own application, which Movants will oppose in due course.

### III.    SECTION 1782'S DISCRETIONARY FACTORS DISFAVOR DISCOVERY

### A.    Discovery Is Available Through The Parties In The BVI

Separate from the internal affairs doctrine, discovery under §1782 is not favored if the "foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Intel*, supra, 542 U.S. at 264.  Permitting §1782 discovery here would allow a shareholder of a foreign corporation to circumvent the foreign forum's law and procedures

governing the inspection of internal records and witness testimony, simply because the foreign corporation owns an American subsidiary. *See In re Kreke Immobilien*, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) ("[W]e are loath[e] to sanction forum shopping under the guise of §1782."). Hornbeam should not be permitted to seek Warren Steel's records (or inspection of its Plant or depositions) through the back door, when it can get them in multiple ways from Halliwel in the BVI. *See* Nader Dec. ¶60-67; Willins Dec. ¶26-37.

The issue is not whether documents are present in this judicial district, but whether they can be obtained from a party to foreign litigation. Indeed, in affirming the denial of discovery, the court in *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004), held "[a]lthough technically the respondent in the district court was [a local law firm], for all intents and purposes petitioners are seeking discovery from DT, their opponent in the German litigation." Similarly, *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006), observed that "[t]he relevant inquiry is whether the evidence is available to the foreign tribunal.[6] In this case, it is. Thus, § 1782 aid is both unnecessary and improper." *Id.* at 194 (quashing §1782 subpoenas upon IBM and a law firm for information that "constitute[d] a clear circumvention of the [European] Commission's procedures - which the Supreme Court expressly prohibited in *Intel*."). For §1782 purposes, no material difference exists between IBM and the law firms in *Schmitz* and *Microsoft,* on the one hand, and Warren Steel, on the other. Here, as in those cases, Hornbeam is trying to circumvent foreign procedures to obtain documents which Halliwel would be required to produce in the BVI.

---

[6] *See also In re OOO Promnefstroy*, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) (denying discovery, finding that "the foreign tribunal's ability to control the evidence and order production, not the nominal target of the §1782 application, [is] on which the district court should focus.").

**B.** **Hornbeam Is "Discovery Forum-Shopping" To Circumvent BVI Proof-Gathering Restrictions And Its Policy That Judgments Should Be Paid**

*Intel* cautions to be wary of "circumvent[ing] foreign proof-gathering restrictions or other policies of a foreign country." 542 U.S. at 265. "[D]istrict courts may consider how the applicant fared or is faring in the foreign jurisdiction in its attempts to procure the same information it now seeks under [§] 1782." *OOO Promnefstroy*, *supra,* 2009 WL 3335608 at *8. "[A] district court should be vigilant against a petitioner's attempt to replace a [foreign] decision with one by [a U.S.] court." *Kreke Immobilien*, 2013 WL 5966916, at *6. "It would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority . . . we are loath[e] to sanction forum shopping under the guise of § 1782." *Id.*

Hornbeam's BVI claims were *dismissed* and/or abandoned and the BVI court ordered it to pay $846,526. Hornbeam could have amended its claim and sought disclosure (discovery), but it did not. Nader Dec. ¶53-55, 60-67. As the Alabama court found, if Hornbeam files new claims, they would be stayed or struck out unless Hornbeam pays the $846,526 judgment. Alabama Decision at 8-9; Nader Dec. ¶56-59**.** In an effort to get discovery here, Hornbeam is circumventing BVI policies for shareholder access to corporate records, discovery in litigation, and the payment of judgments. This Court should not tolerate Hornbeam's discovery forum-shopping.

**C.** **The BVI Court Would Not Be Receptive To The Discovery**

A BVI court *normally* would be receptive to discovery. In these circumstances, though, the BVI court would *not* be receptive because it would not permit new claims to proceed until

Hornbeam pays the $846,526 judgment.  *See* Alabama Decision at 8-9; Nader Dec. ¶56-59. Consequently, discovery should cease unless Hornbeam pays the BVI judgment.

      **D.**    **Hornbeam's Requests Are Deliberately Unduly Burdensome And Oppressive, Weighing Against Discovery**

      Pursuant to Rule 45, Warren Steel has served objections to the document subpoena and inspection subpoena and will move to quash the deposition and inspection subpoenas.   In addition to Warren Steel's objections, Hornbeam's discovery would impose unnecessary burdens on Movants, whose counsel must review documents and attend a Rule 30(b)(6) deposition before knowing the claims and allegations that purportedly will be made in the BVI.

**IV.**    **SECTION 1782 APPLICATIONS SHOULD NOT BE GRANTED *EX PARTE* OR IN VIOLATION OF OHIO RULE PROF. CONDUCT 3.3(d)**

     **A.**    **Section 1782 Applications Should Not Be Granted *Ex Parte,* Because This Violates Due Process and Our Treaty Obligations**

      Constitutional due process generally requires notice and "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted).  *Ex parte* proceedings, "untrammeled by the safeguards of a public adversary judicial proceeding, afford too ready opportunities for unhappy consequences to prospective defendants."  *United States v. Minker*, 350 U.S. 179, 188 (1956).  "[O]ur entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute."  *Granny Goose Inc. v. Teamsters*, 415 U.S. 423, 435 (1974).

      The court in *In re Merck & Co., Inc.*, 197 F.R.D. 267, 271 (M.D.N.C. 2000), refused *ex parte* consideration, observing "[n]othing in Section 1782 states that the application is to be made *ex parte*, much less that the Court must entertain the application *ex parte*.  Moreover, such a reading would seem to be contrary to the purpose of the statute, which is to help promote

evenhanded justice and a sense of fair treatment." *Id.* at 270. *Merck* further noted that, under §1782, "in [the] absence of any special practice and procedure, the discovery is governed in accordance with the Federal Rules of Civil Procedure. (Those rules require that opposing parties be notified of discovery requests.)". *Id.* (citation omitted).

Hornbeam's presentation of its Application *ex parte* also ran counter to our treaty obligations with other nations, including the BVI. Although the Federal Rules do not provide a procedure for serving §1782 applications, when prospective defendants to foreign proceedings are located outside of the United States (such as Halliwel, Symeou, and the other defendants named in the Application), the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, T.I.A.S. No. 6638, 20 U.S.T. 361, prescribes the exclusive means for service of judicial documents. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 710 (1988). In addition to complying with the Convention, service of a §1782 application logically should be made in accord with Rule 4. Here, that did not happen.

Permitting service of §1782 proceedings by merely transmitting the application, an already-granted order, and an authorized subpoena to foreign defendants to foreign proceedings is not in accord with the Hague Convention, which imposes specific methods of service and naturally requires service prior to judgment. In addition, Rule 45 only imposes a 14-day notice period before documents must be produced. That generally will not provide "sufficient time to enable the defendant to defend," Hague Convention, Art. 15(b), i.e., to receive an application, the already-granted order, and the subpoena, to translate them, to engage American counsel, and to file an opposition before responsive discovery must be produced. This Court should vacate the Order because §1782 applications should not be granted *ex parte,* absent cause.

**B.     The Order Should Be Vacated And The Application Denied,
        Because Hornbeam Violated Its Duty Of Candor and Disclosure**

Ohio Rule of Prof. Conduct 3.3(d), applicable pursuant to Local Rule 83.7, requires:

> In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known
> to the lawyer that will enable the tribunal to make an informed decision, whether or not
> the facts are adverse.

Comment 14 to Rule 3.3(d) elaborates on the duty of candor:[7]

> [I]n any ex parte proceeding, … there is no balance of presentation by opposing
> advocates. The object of an ex parte proceeding is nevertheless to yield a substantially
> just result. The judge has an affirmative responsibility to accord the absent party just
> consideration. The lawyer for the represented party has the correlative duty to make
> disclosures of material facts known to the lawyer and that the lawyer reasonably believes
> are necessary to an informed decision.

Hornbeam violated its duty of candor by failing to disclose in its Application that:

- The BVI court dismissed Hornbeam's BVI proceedings as "an abuse";
- The BVI court ordered Hornbeam to pay the $846,526 judgment by February 2, 2015;
- Hornbeam cannot initiate new BVI proceedings until it pays the BVI judgment; and
- Hornbeam had not paid the BVI judgment by the time the Court acted on its Application.

Hornbeam should have disclosed these facts so that the Court could make an informed

decision about whether to authorize discovery.  It failed to do so.  The Order should be vacated

and the Application denied, because Hornbeam violated its duty of candor to this Court.[8]

## CONCLUSION

For the foregoing reasons, the Order should be vacated and the Application denied.

---

[7]*See Maine Audubon Soc. v. Purslow*, 907 F.2d 265, 268 (1st Cir. 1990) ("Where counsel
appears ex parte . . . the court is entitled to expect an even greater degree of thoroughness and
candor from unopposed counsel than in the typical adversarial setting.").

[8] "[A] litigant is bound by his lawyer's acts … Holding the client responsible for the lawyer's
deeds ensures that both clients and lawyers take care to comply."  *Tolliver v. Northrop Corp.*,
786 F.2d 316, 319 (7th Cir. 1986) (citations omitted).

Respectfully submitted,

*/s/ Richard M. Bain*
RICHARD M. BAIN (0016525)
bain@buckleyking.com
JEFFREY C. TOOLE (0064688)
toole@buckleyking.com
JUSTIN W. WHELAN (0088085)
whelan@buckleyking.com
BUCKLEY KING LPA
1400 Fifth Third Center
600 Superior Avenue, East
Cleveland, Ohio 44114-2652\
(216) 363-1400
(216) 579-1020 (*facsimile*)

and

Bruce S. Marks
MARKS & SOKOLOV, LLC
1835 Market Street, 17th Floor
Philadelphia, PA 19103
215-569-8901
215-569-8912 (*facsimile*)

Attorneys for Intervenors Panikos Symeou and
Halliwel Assets, Inc.

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies the foregoing *Motion to Vacate January 6, 2015, Order and Deny 28 U.S.C. §1782 Application* was filed with the United States District Court of Northern District of Ohio Eastern Division's electronic filing system on the 28th of March, 2016. Parties may access this filing through the Court's electronic filing system.

*/s/ Richard M. Bain*

1936600_2