# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| IN RE APPLICATION OF<br>HORNBEAM CORPORATION<br><br>REQUEST FOR DISCOVERY PURSUANT TO<br>28 U.S.C. § 1782 | No. 14-24887-CIV-SEITZ/TURNOFF |

## PROPOSED INTERVENOR VADIM SHULMAN'S REPLY IN SUPPORT OF HIS MOTION FOR INTERVENTION AND TO PROCEED WITH DISCOVERY

Vadim Shulman ("**Shulman**"), by and through counsel, respectfully submits this reply in support of his motion for an Order permitting him to intervene and proceed with the discovery previously authorized by this Court, and in support thereof states as follows.

## PRELIMINARY STATEMENT

Shulman demonstrated in his moving brief that he is entitled to formally intervene and to proceed with the § 1782 discovery authorized by this Court and the Eleventh Circuit because he has been a party in interest in this action since causing Hornbeam to file it, this Court considered Shulman's status as a party in interest when it issued its Order authorizing discovery, and no party will be prejudiced as the action has been stayed at all relevant times. The Symeou Parties offer no colorable arguments for why Shulman's motion should not be granted. They claim that Shulman should have waited until the Court decides his motion to lift the stay, ignoring that (1) Shulman filed his intervention motion in accordance with the litigation schedule *they agreed to*, and (2) the Symeou Parties had already represented to this Court and to Shulman that they did not object to the lifting of the stay. That argument is little more than another attempt to cause delay, and is meritless. The Symeou Parties then claim that intervention is not warranted

because the case is only about litigation by Hornbeam in the BVI, ignoring that the discovery application already granted by this Court states expressly that Hornbeam seeks discovery for Shulman to use in two foreign actions to be filed in his own name.  Finally, the Symeou Parties reiterate their arguments for why this simple discovery action should be further delayed due to the unremarkable fact that one of the English Action defendants has filed a jurisdictional challenge.  Those arguments fail for multiple reasons, as set forth more fully in Applicants' opposition to the Symeou Parties' latest stay motion.

The Eleventh Circuit has already ruled that Shulman is entitled to discovery under 28 U.S.C. § 1782 in connection with his dispute with Bogolyubov and Kolomoisky.  There is no basis to further delay or complicate this action.  Intervention should be granted, the discovery already authorized by the Court should proceed, and the case should be closed.

## ARGUMENT

**I.   SHULMAN'S INTERVENTION MOTION IS TIMELY AND RIPE FOR ADJUDICATION**

The Symeou Parties' first opposition argument is that the Court should either wait to decide Shulman's intervention motion until it decides whether to lift the stay, or invite yet another round of briefing on intervention after the stay issue is resolved.  The fact that the Symeou Parties even make this argument lays bare their singular focus on delaying this case rather than allowing it to proceed on the merits.  In any event, the argument ignores that (1) Shulman filed his intervention motion on the date agreed to by the parties, and (2) the Symeou Parties repeatedly represented that they did not object to the lifting of the stay.

After Applicants filed their first motion to lift the stay in January 2017, the Symeou Parties responded representing to the Court that they "do not oppose the lifting of the stay of this

proceeding". [ECF 60][1]  After Shulman initiated the English Action, his counsel met and conferred with counsel for the Symeou Parties, who agreed that the stay could be lifted and that Shulman would file his intervention motion on June 30, which he did.  On June 15, 2017, counsel for the Symeou Parties confirmed the Symeou Parties' position in an email, stating that "to avoid doubt, the stay is lifted as to the parties' anticipated motions" but "[t]he subpoena recipients and intervenors do not agree that the stay should be lifted as to responses and objections to subpoenas (proceedings do not have to be stayed, but responses and objections are stayed or not due or however you wish to characterize this concept)."  [ECF 91-1]  At no time did the Symeou Parties contend that they objected to the lifting of the stay with respect to Shulman's intervention motion.  Having represented that they did not object to the lifting of the stay as to proceedings, and having agreed to the specific date on which Shulman would move for intervention, the Symeou Parties cannot now be heard to complain that Shulman should have waited to seek intervention or anticipated that the Symeou Parties would change their position on the stay.

In any event, the issue is irrelevant.  Briefing on the parties' stay motions is nearly complete, and briefing on Shulman's intervention motion will be complete with the submission of this brief.  The Court can and should issue an Order lifting the stay and granting Shulman's motion to intervene.

## II.     SHULMAN SATISFIES ALL INTERVENTION REQUIREMENTS

The Symeou Parties next argue that Shulman should not be permitted to intervene because a year has passed since they themselves intervened in this action.  It is well-settled,

---

[1] Applicants filed their January 27, 2017 motion to lift the stay as unopposed based on the Symeou Parties' representation in a telephonic meet and confer that they did not oppose the lifting of the stay.  The Symeou Parties' filed opposition and contended that there had been a misunderstanding about their position, but reiterated to the Court that they did not oppose the stay being lifted.  [ECF 60]

3

however, that Rule 24's timeliness requirement does not turn exclusively or even primarily on the amount of time elapsed since the inception of the action and the request to intervene. Rather, "the issue of prejudice . . . is the essence of the timeliness inquiry." *Meek v. Metro. Dade Cty., Fla.*, 985 F.2d 1471, 1479 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007). The Eleventh Circuit has repeatedly held that intervention motions are timely in the absence of prejudice, regardless of whether the proposed intervenor knew about the action and could have intervened sooner. *See e.g. Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1259–60 (11th Cir. 2002) (finding intervention timely where "intervention did not delay the proceedings and the court had yet to take significant action" and finding "we do not believe that the existing parties will be prejudiced by SeFPC's intervention, and SeFPC would be prejudiced if its motion is denied.").

Here, there is no possibility that Shulman's intervention motion can prejudice the Symeou Parties because the only thing to occur in the case since the Symeou Parties' intervened is for a stay to be imposed. The Symeou Parties first moved to intervene in March 2016, and the case has been stayed at their request since May 2016. In fact, while the Symeou Parties have repeatedly claimed they plan to challenge the Court's Authorizing Order with a motion to vacate, they have never filed such a motion. Further, Shulman has been involved in this action from the beginning, and stated expressly in his declaration in support of Hornbeam's original discovery application that "[w]hile there are multiple entities and individuals involved, this dispute is really between three individuals: [Kolomoisky, Bogolyubov,] and me." [ECF 4-1 at 4]. *See also In re: Application of Bracha Found.*, 663 Fed. App'x 755, 758 (11th Cir. 2016) (in which the Eleventh Circuit noted that Bracha's virtually identical discovery application in Alabama involved an

4

"underlying commercial dispute between Mr. Shulman, Mr. Kolomoisky, and Mr. Bogolubov"). Shulman also sought intervention within weeks of initiating his English Action.

While the Symeou Parties have not identified (and cannot identify) and prejudice from allowing Shulman to intervene, Shulman will be prejudiced if he is not permitted to intervene because he seeks to use the discovery in a foreign action in his name. Intervention under such circumstances is warranted and appropriate. *Georgia v. U.S. Army*, 302 F.3d at 1259–60.

The Symeou Parties next assert, erroneously, that Shulman "has no interest in this proceeding" because "discovery for the BVI litigation" is the sole subject of this action. [ECF 93 at 14] They again ignore the plain language of Hornbeam's original discovery application, which states expressly that Hornbeam sought discovery for use in *three* reasonably contemplated foreign actions, including: "the reasonably contemplated litigation ***by Shulman***, or one of his entities to which he is the ultimate beneficial owner, against Kolomoisky and/or [Bogolyubov], or one or more of their entities to which either or both are the ultimate beneficial owner(s), ***in a jurisdiction currently unknown*** for breach of the Joint Venture Agreement (defined below) arising from Kolomoisky's and Bogolubov's failure to compensate Shulman for his initial investments, including, without limitation, Shulman's purchase of the Steel Factory . . . ." [ECF 1, at 3-4 (emphasis added)] Symeou made this same argument to the New York court in support of his "extraordinary" request to have all discovery produced in that action destroyed, which the New York court rejected. *In re Hornbeam Corp.*, No. 14-MC-424, 2017 WL 2912515, at *2 (S.D.N.Y. July 7, 2017) (rejecting Symeou's argument – which he also asserts here – "that Shulman would not suffer any prejudice" from being denied the ability to use discovery materials obtained in the case because, as is the case here, "Hornbeam's original application

5

stated that it sought discovery for use in three contemplated proceedings, including two to be brought by Shulman").

In light of the undisputed language in Hornbeam's discovery application, there is no basis for the Symeou Parties' assertion that Shulman is not an "interested party" in this action, or in the English Action he recently filed. As the Supreme Court made clear in *Intel*, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person [s]' who may invoke § 1782." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). Indeed, even one with "participation rights" in a proceeding "possesses a reasonable interest in obtaining judicial assistance, and therefore qualifies as an interested person within any fair construction of that term." *Id*. As the sole plaintiff in the English Action, Shulman is without question an "interested person" entitled to intervene to protect his rights.

### III.    A FURTHER STAY IS NOT WARRANTED AND SHOULD BE DENIED

The Symeou Parties also reiterate their arguments in support of a further stay extension. Those arguments fail for all of the reasons Applicants cited in their motions to lift the stay [ECF 59, 75] and opposition to the Symeou Parties' cross-motion to extend the stay. [ECF 91]. Among other things, a stay pending the English court's resolution of Bogolyubov's jurisdictional challenge is not appropriate because Shulman also seeks discovery in aid of two other actions that are unaffected by the English jurisdictional challenge, and the Eleventh Circuit has already ruled that discovery in aid of those actions is proper. *Bracha Found.*, 663 Fed. App'x at 758. Further delaying discovery when a decision by the English court would not affect these other contemplated actions would plainly frustrate "§ 1782(a)'s twin aims of providing *efficient* assistance to participants in international litigation and encouraging foreign countries by example

6

to provide similar assistance to our courts," as set forth by the Supreme Court in *Intel*. 542 U.S. at 252 (internal quotations and citations omitted) (emphasis added).

Further, Shulman would be significantly prejudiced by a further stay now that his English Action is on file. The Symeou Parties claim that Shulman will suffer no prejudice in the English Action if this Court waits to decide the parties' pending motions until the English court rules on Bogolyubov's jurisdictional challenge. But as set forth more fully in the attached expert reply declaration of Brian Doctor QC ("**Doctor Reply Decl**."), that conclusion is incorrect for at least three reasons.

*First*, the Symeou Parties omit to mention that the other English Action defendant – Mr. Kolomoisky – is permitted under English law to combine a request for dismissal on the merits with Bogolyubov's existing jurisdictional challenge. The discovery Applicants seek in this action is directly relevant to the merits of Shulman's English claims and Shulman would be prejudiced if he were forced to oppose a challenge on the merits of his English Action without the benefit of the discovery already authorized by this Court. Doctor Reply. Decl. ¶¶ 17-19.

*Second*, the Symeou Parties' expert incorrectly assumed that the discovery Applicants seek in this action will not be relevant to Mr. Bogolyubov's jurisdictional challenge. But as Mr. Doctor explains in his opinion, and as the Symeou Parties know well, Mr. Bogolyubov's jurisdictional challenge is based on his claim that he moved from London to Switzerland two months before being served with process in the English Action – a move he admits was for the purposes of avoiding being sued in England and which he further admits occurred on a date he cannot precisely state. Shulman maintains that Bogolyubov is still a London resident, or was a London resident for judicial purposes at the time he was served on May 15, 2017. To demonstrate domicile and by extension jurisdiction, however, Shulman will need all available

evidence of Bogolyubov's activities indicating his place of residence. The discovery authorized by the Court – which includes testimony, financial information and "[a]ll documents and communications concerning any transaction, loan, agreement, contract, invoice or understanding with" Kolomoisky and Bogolyubov could well contain or describe financial or other links between Bogolyubov and England that could support Shulman's contention that Bogolyubov did not move away from London two months before the English Action was filed, and remains an English resident for judicial purposes. [ECF 12 ¶4(k); Doctor Reply Decl. ¶¶ 5-16.]

*Third*, the Symeou Parties' expert is wrong when he concludes that there will be ample time to decide the parties' pending motions (as well, presumably, as the long-threatened vacatur motion that Symeou has not even filed) after the English court decides Bogolyubov's jurisdictional challenge. As explained in Mr. Doctor's opinions, English courts base their deadlines on trial dates and are required to schedule and hold trials in as speedy a manner as possible. The Symeou Parties claim the English court would "take account" of a stay in this action in setting Shulman's deadlines, but in fact, all Shulman could do with certainty is to *ask* the English court for an unusually long delay of proceedings. He has no certainty that the English court would grant his request, and would therefore be placed at risk if a stay were imposed. That is particularly true because litigating Applicants' entitlement to proceed with discovery – and obtaining the documentary evidence and testimony authorized by the Court – are likely to take considerable time. In Alabama, the Symeou Parties managed to delay Applicants' ability to gather documents by 14 months, including by filing an appeal to the Eleventh Circuit. In New York, the Symeou Parties also significantly delayed Applicants' ability to collect the discovery authorized by the New York court, including by filing a vacatur motion and multiple reconsideration motions. The Symeou Parties have not yet filed their planned vacatur motion in

8

this action, and it would take time to brief and decide their arguments, move forward with discovery, notice, schedule and conduct depositions, address discovery disputes, and allow Shulman to obtain expert analysis of relevant material.  Doctor Reply Decl. ¶¶ 20-23.

Further, Kolomoisky and Bogolyubov would retain the ability to urge the English court not to grant any necessary adjournments, notwithstanding the positions taken by their affiliates in this case.  *Id*. ¶ 22.  The Symeou Parties, as well as Kolomoisky and Bogolyubov, have a long history of similar conduct.  For instance, in their latest filing, the Symeou Parties claim they "do not communicate with Mr. Bogolyubov about the English action," even though they filed multiple briefs in this Court referencing the existence of Bogolyubov's irrelevant jurisdictional challenge that the Symeou Parties could only have learned of through direct or indirect communications with Bogolyubov.[2]

For all these reasons, Shulman would be placed at risk, and would thus be prejudiced, if the stay were extended.  The Symeou Parties, by contrast, would not suffer any prejudice by complying with the discovery subpoenas authorized by the Court, since "the compelled

---

[2] The Discovery Recipients and their owners/affiliates, Kolomoisky and Bogolyubov, have an established history of improper and abusive litigation conduct, including in connection with a similar § 1782 action in this District, in which Magistrate Judge Goodman authorized discovery from many of the same subpoena recipients: Korf, Georgian American Alloys, Inc., Felman Production LLC, Felman Trading, Inc., and CC Metals and Alloys LLC.  *In re Pinchuk*, No. 13-MC-22857, 2014 WL 12600728, at *4 (S.D. Fla. Jan. 27, 2014).  The Court in *Pinchuk* found that the discovery recipients' "representations about ownership and control" were "less than clear," but that among other things, "Kolomoisky says he has sufficient control over the [subpoena recipients'] documents to guarantee their production," making clear that the discovery recipients were closely affiliated with Kolomoisky.  *Id*. at *2-3.  The *Pinchuk* Court also noted "a 2011 decision by a West Virginia federal district court ('the *Mt. Hawley* court') in which the district court judge 'highlighted the Kolomoisky-controlled entity's 'varying and extensive abuses of the discovery process,' including its blatant disregard for myriad discovery orders, numerous misrepresentations respecting the control and ownership of the company, and the permanent destruction of relevant information'" and "entered the ultimate sanction of dismissal against a company owned and/or controlled by Kolomoisky and Bogolyubov '[d]ue to the pervasive and egregious nature of the discovery misconduct.'"  *Id*. at *1 (*quoting Felman Prod., Inc. v. Indus. Risk Insurers*, No. CIV.A. 3:09-0481, 2011 WL 4547012, at *4 (S.D.W. Va. Sept. 29, 2011)).  The *Pinchuk* Court further noted that "[t]he 38-page order [in *Felman Prod.*] provides a massive amount of detail concerning Felman's 'significant disregard for the discovery process and its duty of candor' to the district court, including 'an extreme lack of candor,' statements designed to 'cloak its failure to fully comply with discovery obligations,' 'outright misrepresent[ations],' an 'ongoing subterfuge,' and conduct which led to the 'extensive spoliation of material evidence.'"  *Id*. at *6 n.2 (*quoting Felman Prod.*).

production of non-privileged discovery material, standing alone, does not constitute irreparable injury warranting a stay . . . ." *In re Gushlak*, No. 11-MC-0218 NGG JO, 2012 WL 2564466, at *7 (E.D.N.Y. Jan. 30, 2012), *report and recommendation adopted,* No. 11-MC-218 NGG, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) (denying a stay pending appeal in a § 1782 action based on the lack of prejudice to the discovery respondents and § 1782's goal of ensuring that "litigants in international litigation would have an efficient way to get the discovery they need").

The Symeou Parties' final argument is that there is an inconsistency between Applicants seeking discovery before filing foreign claims and Applicants' representation that they would not use the discovery in connection with their initiation of foreign claims. That is incorrect. While Applicants did not use discovery materials in connection with their preparation of their English Action *pleadings*, they fully intend to use discovery obtained from this action to *prosecute* the English Action. Indeed, Shulman's motion seeks permission to do just that: to intervene and use discovery from this case to support the English Action. Intervenors' suggestion that Applicants don't need discovery because they didn't reference the discovery in their foreign pleadings ignores the plain and obvious difference between pleadings and proof. And while Shulman initiated one of the three actions described in the discovery application before gathering discovery in this District, the other contemplated claims described in the application require different proof, as set forth in the expert declaration of Michael Fay filed in support of the application. [ECF 4-1 at 12-23].

## CONCLUSION

In sum, Shulman satisfies all applicable intervention requirements, and would be prejudiced if he were not permitted to move forward with discovery. Accordingly, Shulman respectfully requests that his motion be granted.

Respectfully submitted this 2nd day of August, 2017.

        HOGAN LOVELLS US LLP


        /s/ David B. Massey
        David B. Massey
        600 Brickell Avenue Suite 2700
        Miami, FL  33131
        Telephone: (305) 459-6500
        Facsimile: (305) 459-6550
        david.massey@hoganlovells.com

        Dennis H. Tracey, III
        David R. Michaeli
        875 Third Avenue
        New York, NY  10022
        Telephone:  (212) 918-3000
        dennis.tracey@hoganlovells.com
        david.michaeli@hoganlovells.com
        *Admitted Pro Hac Vice*

        *Attorneys for Applicant Hornbeam*
        *Corporation, Intervenor Bracha Foundation,*
        *and Proposed Intervenor Vadim Shulman*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of August, 2017, I served a true and correct copy of this document on all counsel of record via electronic filing through the Court's ECF system.

/s/ David B. Massey