# EXHIBIT 1

**REPLY DECLARATION OF BRIAN DOCTOR, Q.C., IN SUPPORT OF APPLICANTS' MOTION FOR LEAVE TO USE DISCOVERY IN AID OF ENGLISH PROCEEDINGS**

I, Brian Doctor QC, of Fountain Court Chambers, London, United Kingdom, declare as follows:

I. **INTRODUCTION**

1. I am the same Brian Doctor QC who swore to a declaration dated 30 May, 2017 in support of Mr Vadim Shulman's applications in the United States for permission to take and/or use discovery pursuant to 28 U.S.C. § 1782 to support English proceedings (the "**English Claims**") Mr. Shulman initiated on 12 May, 2017 against Mr Igor Kolomoisky and Mr Gennadiy Bogolyubov (the "**Defendants**") in the English High Court of Justice, Chancery Division (the "**English Action**").

2. I have been provided with and have reviewed the memoranda of law filed by Panikos Symeou and Halliwel Assets, Inc. (collectively, the "**Symeou Parties**") in support of their cross-motion to extend the stay currently in place in the Florida § 1782 proceeding brought by Hornbeam Corporation and in opposition to Vadim Shulman's motion to intervene in that proceeding, as well as the declarations and exhibits the Symeou Parties attached thereto, including the 20 July, 2017 declaration on English law the Symeou Parties submitted from Mr Andrew Fulton.

3. I make this reply declaration to further explain relevant provisions of English law and to respond to assertions the Symeou Parties make in their legal briefs and supporting declarations.

4. I specifically respond to Mr Fulton's stated assumption that the discovery sought in the Florida proceeding is not relevant to the pending jurisdictional challenge in the English Action, and to Mr Fulton's conclusion that "*Mr Shulman would not suffer*

*prejudice if he does not obtain discovery in the United States until after the jurisdictional application is decided in his English proceedings.*" This assumption is incorrect. As explained more fully herein, discovery in the Florida § 1782 proceeding may well be relevant to jurisdictional litigation in the English Action. Furthermore and in any event, Mr Shulman will be placed at risk, and will therefore suffer prejudice, if the Florida proceedings are stayed until after the English court resolves jurisdictional issues.

II.   **THE ENGLISH ACTION JURISDICTIONAL CHALLENGE**

5.  I have reviewed the documents filed by Mr Bogolyubov in support of his jurisdiction challenge in the English Action, including his witness statement dated 30 June, 2017 and the Expert Opinion of Professor Felix Dasser dated 3 July, 2017. In his statement, Mr Bogolyubov alleges that service of the claim was not properly effected on the basis that the London address at which the relevant documents were served is his former, not his current, residence. Mr Bogolyubov alleges that he moved from London to Switzerland approximately two months prior to Mr Shulman issuing the English Action on 12 May, 2017 and, accordingly, jurisdiction is not properly grounded on the basis of service on Mr Bogolyubov's London address.

6.  Under English law, a defendant must ordinarily be sued where he is domiciled. This is a European law concept that has been enshrined into English law, which requires residence with a substantial connection to the country of jurisdiction. The relevant provision in this instance is Section 41A(2) of the Civil Jurisdiction and Judgments Act 1982, which states that:

"An individual is domiciled in the United Kingdom if and only if -

(a)   he is resident in the United Kingdom; and

2

    *(b)    the nature and circumstances of his residence indicate that he has a substantial connection with the United Kingdom*".

7. In order to determine whether an individual is domiciled in the court seized of the matter, the court will apply its internal law. In this case, the English court will apply the provisions set out above in the Civil Jurisdiction and Judgments Act 1982.

8. In order to determine whether a person is domiciled in England according to definition set out above, the court will consider all the circumstances. The relevant date on which the defendant must be domiciled in England is the date of the issue of proceedings (Canada Trust Co v Stolzenberg (No.2) [2002] 1 A.C. 1, HL)..

9. The White Book is the standard English legal text book concerning the Civil Procedure Rules of the English courts. The following passage deals with domicile[1]:

    "*Although domicile of an individual is defined in terms of "residence", this concept must be construed in accordance with its ordinary meaning and connotes a settled or usual place of abode; this, in turn, requires "some degree of permanence or continuity" (Bank of Dubai Ltd v Abbas [1997] I.L.Pr. 308, CA). ……….For guidance as to the factors to be considered in determining domicile under the recast Judgments Regulation, see Eng King Ltd v Petrillo, 4 May 2016, unrep. (Judge Waksman QC).*"

10. In the case referred to, *Eng King Ltd v Petrillo*[2], the factors the English court considered in determining the defendant's domicile included the following:

    (a)    the amount of time spent by the defendant in England, including for the purposes of visiting and staying with his children and former wife;

---

[1] Practice Direction Part 6, 6JR.12
[2] In the time available to me I do not currently have a copy of the actual judgment but am quoting from the summary (which I believe to be accurate) on Westlaw.

3

    (b)    the defendant had been contactable via an English mobile telephone and an English landline;

    (c)    the defendant remained on the electoral roll as a resident at the former matrimonial home and continued to give that address on formal documents, and one of his companies rented office space nearby;

    (d)    the defendant had not produced any documents with a different address; and

    (e)    <u>Russian bank statements produced in Russian proceedings were for an account for a non-resident and showed regular transfers to English accounts, which contradicted the defendant's evidence that he had no interests or assets in England</u> ; and

    (f)    evidence that the defendant carried on significant business and personal activities in the UK.

11.    It is clear that the English court will look at a range of factors when assessing Mr Bogolyubov's links to England as part of its determination of his challenge to the English court's jurisdiction. These factors would include any evidence submitted by Mr Shulman showing that Mr Bogolyubov has business and/or personal connections to England, including but not limited to information on bank account activity in England and any assets held in England or by English entities. I note that Mr Bogolyubov's Swiss legal expert, Professor Dasser, states (paragraph 31) that due to restrictions in Mr Bogolyubov's tax agreement with the Swiss authorities, he is prevented from carrying on any business activities in Switzerland. He must therefore carry on such activities elsewhere.

12. The process for resolving a service and jurisdictional challenge such as the one filed by Mr Bogolyubov is as follows. First, the party challenging service and jurisdiction will file factual evidence supporting his contention that he is not domiciled in England. Mr Bogolyubov filed this evidence on 3 July, 2017. This contains evidence about many aspects of Mr Bogolyubov's life and business activities.

13. Mr Shulman will then be entitled to file factual evidence in response, in support of his allegation that Mr Bogolyubov was at the relevant time resident and domiciled in England for jurisdiction purposes. I have been instructed that Mr Shulman's deadline to submit this evidence is currently under discussion between the parties. Mr Bogolyubov will then have an opportunity to file a factual reply in support of his jurisdictional challenge.

14. Once the parties have submitted their evidence, the English court will hold a hearing, at which the court will consider oral arguments and the documentary evidence submitted by the parties. I understand this hearing is due to take place in the week of 18 December, 2017. After the hearing has concluded, the English court will consider and then issue its decision on the issue of jurisdiction stating its findings as to Mr Bogolyubov's domicile and his challenge to the jurisdiction of the English courts.

### III. RELEVANCE OF US DISCOVERY TO THE ENGLISH COURT'S JURISDICTION

15. I have been instructed that the evidence sought in the Florida § 1782 proceeding may include financial and other information that show links between Mr Bogolyubov and the jurisdiction of England of which Mr Shulman is not currently aware. Any information in this regard, which Mr Shulman would put forward in evidence in response to Mr Bogolyubov's challenge to jurisdiction, would form part of the suite of

factors to be considered by the English court as to whether Mr Bogolyubov is domiciled in England.

16. It follows that if Mr Shulman is unable to obtain U.S. discovery before jurisdictional challenges are resolved, Mr Shulman will be unable to use that discovery to resist efforts to have his English Action dismissed, and will be prejudiced.

17. In addition, in relation to the first defendant, Mr Kolomoisky, I have been instructed that service of the English Claim is currently being effected on Mr Kolomoisky at his home in Geneva, Switzerland. This process takes a number of months to complete and is on-going.

18. Mr Kolomoisky is stated to be resident and domiciled in Switzerland. I presume therefore that it will be alleged that the ground of jurisdiction entitling the English court to hear the case against him is that set out in Article 6 of the Lugano Convention, namely that he is one of a number of defendants, and may be sued in the courts for the place where any one of them (namely Mr Bogolyubov) is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

19. If Mr Kolomoisky challenges the jurisdiction of the English court to hear and determine the case against him, he would be able to attempt to persuade the court hearing the jurisdiction challenge not to confirm jurisdiction on such basis, inter alia on the grounds that there is no serious issue to be tried between the claimant and (a) Mr Bogolyubov[3], and (b) possibly, Mr Kolomoisky himself[4]. Such a challenge would

---

[3] The right of a defendant to raise the strength of the case against the defendant domiciled in England (the anchor defendant) has recently been affirmed by a majority of the Court of Appeal in Sana Hasssib Sabbagh v

6

entitle Mr Kolomoisky to raise the facts and issues in the claim itself in order to show that no serious issue arises in the alleged cases against him or Mr Bogolyubov. If Mr Kolomoisky files such a challenge, he would be entitled to support it with witness statements and documentary or other evidence, and Mr Shulman would be entitled to oppose the dismissal request by presenting evidence supporting the merits of his claims. As such, if any challenge is made by Mr Kolomoisky, including any attempt to have the claim struck out or dismissed on the basis that there is no serious issue to be tried, again Mr Shulman would be prejudiced if he is not able to obtain disclosure in this Florida proceeding that may be relevant to the determination of these issues.

### IV. PREJUDICE TO MR SHULMAN IF US PROCEEDINGS ARE STAYED UNTIL THE ENGLISH COURT RESOLVES MR BOGOLYUBOV'S JURISDICTIONAL CHALLENGE IN THE ENGLISH ACTION

20. Mr Fulton states in his declaration that "*Mr Shulman would not suffer prejudice if he does not obtain discovery in the United States until after the jurisdictional application is decided in his English proceedings*" and that "*[i]f the jurisdiction challenge were dismissed in due course, then the English court would take account of the foreign evidence-gathering steps when laying down the timetable to trial.*" ECF 92-1 ¶¶ 8, 36-37. I do not believe that Mr Fulton is entitled to say that the English court *would* take account of such steps. English law requires that the trial take place as soon as practicable, and pre-trial deadlines are set accordingly.[5]

---

Wael Khoury [2017] EWCA Civ 1120. The court there was dealing with article 6 of the Brussels Regulation (Regulation 44/2001). The original Brussels Regulation was applicable because the claim pre-dated the recast Brussels Regulation (Regulation 1215/2012), of which article 8 is in the same terms as article 6. Both are in the same terms as article 6 of the Lugano Convention, referred to above.

[4] In [62 and 63] of *Sana Hasssib Sabbagh v Wael Khoury*, supra, the majority also threw doubt on a previous decision of the Court of Appeal (*Joint Stock Co Aeroflot v Berezovsky* [2013] EWCA Civ 784) which held that it was not open to a foreign defendant joined under article 6(1) to raise any questions about the merits of the case alleged against him. This may reflect the true position in English law.

[5] CPR 29.2.

21. If Mr Bogolyubov's jurisdictional challenge is dismissed by the English court, the English court may set short deadlines for the completion of necessary litigation stages and trial, consistent with the English courts' obligation to conduct trials in as speedy a manner as possible. This includes deadlines for the parties to produce relevant evidence in their possession or control and expert reports, which could arise in as little as two to three months following the date the English court resolves the jurisdictional challenge.

22. While Mr Shulman can request that the English court order an unusually lengthy timetable in the English Action, or schedule the trial for a later date, he has no assurance that the English court will grant such a request, particularly if Mr Shulman is forced to seek delays in England of months or longer. In addition, Mr Shulman has no assurance that the Defendants will not oppose a request for a delayed trial date, or file their own request for an early trial date based on the argument that they are not responsible for the delays caused by the litigation conduct of entities or individuals in the U.S, whether affiliated to them or not, and that they are entitled to have the claim against them determined expeditiously. As a result, it is very possible that Mr Shulman will have insufficient time to obtain the necessary rulings permitting discovery from U.S. courts, and to obtain and analyse that discovery before being required to present and use the discovery in the English Action.

23. It would be very unusual, and in my view impossible, for an English court to adjourn indefinitely relevant procedural deadlines for the parties to the English Action to present evidence and expert reports, and to adjourn indefinitely the trial date, until the claimant has managed to obtain relevant discovery through court process in another country. If Mr Shulman is unable to provide the English court with a certain date by

which he will receive discovery and oral evidence in Florida, Mr Shulman would face a considerable risk that the English court would reject a requested adjournment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 2 August, 2017 in Southampton, New York.

_____
BRIAN DOCTOR QC