# EXHIBIT C

## DECLARATION OF BRIAN DOCTOR, Q.C., IN SUPPORT OF APPLICANTS' MOTION FOR LEAVE TO USE DISCOVERY IN AID OF ENGLISH PROCEEDINGS

I, Brian Doctor QC, of Fountain Court Chambers, London, United Kingdom, declare as follows:

### I. INTRODUCTION

1. I am a barrister and Queen's Counsel at Fountain Court Chambers in London, United Kingdom and am licensed to practice before the courts of England & Wales, the British Virgin Islands, and South Africa.

2. I am providing this declaration in support of Mr. Vadim Shulman's applications in the United States for permission to take and/or use discovery pursuant to 28 U.S.C. § 1782 to support English proceedings (the "**English Claims**") Mr. Shulman initiated on 12 May, 2017 against Mr. Igor Kolomoisky and Mr. Gennadiy Bogolyubov ("**Defendants**") in the English High Court of Justice, Chancery Division (the "**English Action**").

3. The purposes of this declaration are to assist the Court in evaluating (i) the principles of English law generally applicable to the claims asserted by Mr. Shulman in the English Action; (ii) the procedure and timing under English law for Mr. Shulman to submit documentary evidence in support of his claims in the English Action; (iii) the limitations on the English court's ability to compel non-parties located in the United States to produce documentary evidence to support those claims; and (iv) the prejudice Mr. Shulman might suffer if he were not able to timely obtain or use the discovery he seeks in the U.S. in support of his English Claims.

4. I make this declaration on the basis of my personal knowledge, and my professional opinion, of the matters set forth below.

5. Although I have been asked by Mr. Shulman's representatives to make this declaration, I consider it my duty to submit my independent explanation and impartial opinion to the U.S. courts in which this declaration will be submitted. I am not acting as an advocate for any of the parties.

6. I have been provided with and have reviewed the 12 May, 2017 Claim Form and Particulars of Claim filed by Mr. Shulman in the English High Court of Justice, Chancery Division. The procedures I refer to in this declaration are those of the English High Court of Justice, which is presiding over Mr. Shulman's English Action.

## II. BACKGROUND AND QUALIFICATIONS

7. I was born and educated in South Africa, and after completing my education in South Africa in 1972 (BA, LLB, Witwatersrand University), I attended Oxford University where I read for the Bachelor of Civil Law at Balliol College. Thereafter I qualified and then practised as a Solicitor in England, then returned to South Africa where I practised as an Advocate (or Barrister) at the Johannesburg Bar, taking Silk (Senior Counsel) in 1990. In 1992 I returned to the UK where I took up my present practice at the Bar at Fountain Court Chambers. In 1999, I was appointed one of Her Majesty's Counsel Learned in the Law, an appointment commonly shortened to Queen's Counsel or QC.

8. My practice is primarily in commercial litigation, and also in international arbitration. I have also sat as an arbitrator. My work has been recognized in numerous publications, including in "Legal 500 UK" and as a "Lawyer of the Week" by The Times of London. I attach as Exhibit A hereto a copy of my curriculum vitae.

2

### III. THE ENGLISH LEGAL SYSTEM

9. With very few exceptions, all civil law claims, including the types of claims asserted by Mr. Shulman in the English Action, are heard and determined by a judge sitting without a jury. An English judge hears witness testimony, considers relevant documents to which the judge is referred, listens to the oral arguments and, if applicable, written arguments of the parties' counsel (or the parties if unrepresented), and delivers a reasoned judgment. In the judgment, the judge makes findings of fact based on the evidence received, and applies the law to the facts to arrive at a decision on the merits. In general terms, the measure of damages in a contractual case is the amount of money required to put the claimant, if he wins, in the position he would have been if the contract had been performed. Similar compensatory principles apply in claims based on fiduciary obligations, such as partnership claims where they are not simply for allocation of partnership property.

10. English courts are bound by legal precedents, as in other common law jurisdictions. The findings of fact of the trial court are accorded great weight in any appeal, and cannot easily be overturned.

### IV. MR. SHULMAN'S ENGLISH ACTION ASSERTS VALID CLAIMS UNDER ENGLISH LAW

11. Mr. Shulman's English Action asserts claims for, among other things, damages or compensation for breach of an oral partnership and/or joint venture agreement and/or breach of fiduciary duty, dissolution of the partnership, and an accounting of all sums due to Mr. Shulman, together with interest. These claims are valid and recognised under English law.

12. In general, English law recognises and enforces contracts made anywhere between persons with capacity to contract. Contracts do not need to be in writing to be

3

enforceable under English law, except in the case of certain contracts not at issue in the English Action, such as those for the sale or disposition of an interest in land[1], or for enforcement of a guarantee[2]. Purely oral contracts between persons, or contracts partly oral and partly by conduct, can be the subject of legal proceedings for enforcement or for damages for breach. The general principle applicable in such cases is set out in Lord Clarke's speech in *RTS Flexible Systems Limited v Molkerei Alois Müller Gmbh & Company KG (UK Production)*[3]:

> The general principles are not in doubt. Whether there is a binding contract between the parties and, if so, upon what terms depends upon what they have agreed. It depends not upon their subjective state of mind, but upon a consideration of what was communicated between them by words or conduct, and whether that leads objectively to a conclusion that they intended to create legal relations and had agreed upon all the terms which they regarded or the law requires as essential for the formation of legally binding relations. Even if certain terms of economic or other significance to the parties have not been finalised, an objective appraisal of their words and conduct may lead to the conclusion that they did not intend agreement of such terms to be a pre-condition to a concluded and legally binding agreement.

13. English law also recognises claims for breach of an oral partnership and/or joint venture agreement. Contracts which give rise to such relationships do not have to be in writing in English law to be enforceable. The judgment of Sullivan J in *Manufacturing Resource Planning Limited, Michael Salmon v Manufacturing*

---

[1] Section 2 of the Law of Property (Miscellaneous Provisions) Act 1989.
[2] Section 4 of the Statute of Frauds 1677.
[3] [2010] UKSC 14. An example of a case in which an oral contract was found to exist and was enforced is Fladgate LLP v Lee Harrison [2012] EWCH 67 (QB).

4

*Integration Limited, David Manning (By Counterclaim)*[4] shows that the court looks at all the evidence to determine whether the relationship between the parties is one of partnership.

> "the issue therefore turns on whether or not there was a partnership between Mr. Salmon and Mr. Manning and/or between MRPL and MIL.
> Mr. Carey and Mr. Bickford-Smith were agreed as to the underlying approach when attempting to answer this question. One starts with the definition of partnership in section 1(1) of the Partnership Act 1890[5] (the Act). What the relationship between the parties is in any particular case has to be determined by looking at all the relevant evidence, having regard to the rules set out in section 2 of the Act."

## V. THE ROLE OF DISCOVERY IN ENGLISH PROCEEDINGS AND ITS RELEVANCE TO THE CLAIMS AT ISSUE IN THE ENGLISH ACTION

14. In Mr. Shulman's Particulars of Claim, he alleges that the "Defendants have failed to act in good faith and honestly in relation to Warren Steel, both as to the ownership of [Warren Steel Holdings, LLC] and in relation to its operations," including by purportedly "borrow[ing] substantial sums from companies related to the Defendants and/or their associates" under circumstances that are alleged to have caused significant financial harm to Mr. Shulman and to the parties' partnership/joint venture. Particulars of Claim ¶¶ 73, 75.

15. It is my understanding that Mr. Shulman and/or his affiliated entities, Hornbeam Corporation and Bracha Foundation, have sought discovery from courts in the United States evidencing the alleged wrongdoing of Defendants in relation to Warren Steel Holdings, LLC as set forth in the Particulars of Claim, including financial records reflecting transactions purportedly entered into by and among Defendants and their affiliates.

---

[4] 23 February 2000 2000WL 389471.
[5] Section 1(1) of the Partnership Act 1890 defines partnership as "Partnership is the relation which subsists between persons carrying on a business in common with a view of profit." There is no requirement for a written agreement.

5

16. Evidence of this nature would be highly relevant to the claims Mr. Shulman asserts in his Particulars of Claim in the English Action, as the requested documents could enable Mr. Shulman to present documentary and other evidence of the Defendants' alleged wrongful conduct to the English Court as alleged in the English Claims. In my experience, derived from my practice, and from my study of the law by reading or otherwise learning of other cases, English judges who hear commercial cases place a great deal of, often decisive, weight on the documentary evidence in cases where documents are available. Oral evidence will be assessed in the light of the contemporaneous documentary record. Sometimes the absence of documentation is in itself significant and influences the court's decision. Documentary evidence, such as proof of where funds have been transferred, can be particularly essential to show what happened to disputed funds and whether improper financial transactions occurred.

17. For instance, in *Armagas Ltd v Mundogas SA ( "The Ocean Frost" )*[6], Robert Goff LJ held: "*Speaking from my own experience, I have found it essential in cases of fraud, when considering the credibility of witnesses, always to test their veracity by reference to the objective facts proved independently of their testimony, **in particular by reference to the documents in the case**, and also to pay particular regard to their motives and to the overall probabilities. It is frequently very difficult to tell whether a witness is telling the truth or not; and where there is a conflict of evidence such as there was in the present case, reference to the objective facts and documents, references to the witness' motives and to the overall probabilities can be of very great assistance to a Judge in ascertaining the truth.*" (emphasis supplied)

---

[6] [1986] AC 717. A case on appeal in the Court of Appeal. The judge, Robert Goff LJ, was also the author of the Law of Restitution, Goff and Jones, the leading text book on this subject.

18. As explained more fully below, Mr. Shulman is permitted under English law to use any relevant documentary or other evidence he obtains in connection with U.S. discovery proceedings to support his claims in the English Action, including presenting relevant materials he obtains through U.S. discovery to the English High Court.

VI. **THE PROCEDURAL FRAMEWORK OF AN ENGLISH TRIAL FOR A CIVIL CLAIM**

19. A claim in the High Court leading to a trial is commenced by issuing a Claim Form out of the court registry.[7] I understand that Mr. Shulman completed this step in connection with his English Action on 12 May, 2017.

20. Particulars of Claim must either be contained in or served with the Claim Form, or be served on the defendant by the claimant within 14 days of service of the Claim Form.[8] The Claim Form contains the particulars of claim where they are short and can be stated in a few lines. A separate document is used where they are longer.

21. Mr. Shulman's Particulars of Claim in connection with his English Action are contained in a separate document served simultaneously with the Claim Form. The Defendants in the English Action must respond by filing an acknowledgement of service (or an admission), ordinarily within 14 days of the date of service.[9] This is the time requirement in the usual case where service is effected on the defendant in the jurisdiction, but different numbers of days are specified where service is effected out of the jurisdiction.[10]

---

[7] CPR 7.2(1).
[8] CPR 7.4.
[9] CPR 9.2, 10.3. If the defendant admits the claim or admits it in part he may file and admission or defence or both straightaway: CPR 9.2(a) and (b), but this is not usual, so I deal with it no further.
[10] CPR 10.3.

22. A defendant who wishes to defend all or part of a claim must file a Defence, and if he fails to do so, the claimant may obtain default judgment.[11] The general rule is that the period for filing a Defence is 14 days after service of the particulars of claim, or where the defendant files an acknowledgement of service, 28 days after the service of the particulars of claim.[12] The parties may agree that the period for filing a Defence within the aforesaid period shall be extended by up to 28 days, and if so, the defendant must notify the court in writing.[13]

23. If a claimant files a Reply to the Defence, he/she must file it with a directions questionnaire and serve it at the same time on all other parties.[14] Rule 26.3 (1) and (6) requires the parties to file directions questionnaires and specifies the period for doing so. That provides that where a defendant files a defence, a court officer will provisionally decide the track which appears to be the most suitable for the claim[15], and serve a notice of proposed allocation which will, inter alia, require the parties to file a completed directions questionnaire and serve copies on all other parties. The date specified will be at least 28 days after the date when the notice is served. A case like Mr. Shulman's case will be allocated to the Multi-track, rather than the Small Claims track, or the Fast track.

24. Once preliminary matters such as service and track allocation are resolved, the Court will typically hold a case management conference at which it will set deadlines for progressing the case to trial, including dates by which the parties must exchange disclosure statements (i.e. statements containing lists of documents to be disclosed, or "discovered" in American parlance), witness statements, expert reports and the trial

---

[11] CPR 15.2 and 15.3.
[12] CPR 15.4.
[13] CPR 15.5.
[14] CPR 15.8.
[15] For present purposes it is assumed that this would be an ordinary case so that it would be allocated to the multi-track (cases over £25,000).

8

date. English law requires that the trial take place as soon as practicable, and pre-trial deadlines are set accordingly.[16] Once the trial date and other deadlines are fixed, they generally may not be varied by the parties; rather, a party must apply to Court for relief from case management deadlines.[17]

25. In a multi-track case, the court would normally order that "standard disclosure" is to take place, at least in the first instance. "Standard Disclosure" requires each party to make and serve a list[18] of all documents in his possession or control (a) on which a party relies and/or (b) which adversely affect his own case or (c) support another party's case.[19] Once any documents obtained through foreign discovery proceedings come into the possession or control of a party (a topic I deal with below), they will also be subject to the same obligation of disclosure. The list of documents must be accompanied by a disclosure statement[20] made by that party which confirms that he understands his duty regarding disclosure and that he has complied with that duty. A party to whom documents has been disclosed has the right, in general terms, to inspect and take copies of the documents. There exist procedures to object to the use of documents and to prevent inspection of certain documents on specified grounds.

26. A party may, in general terms, utilise documents it has disclosed, including any documents obtained through foreign discovery proceedings. In addition, a party may use in the proceedings documents disclosed to it by the other parties. The English courts will receive and treat all such documents as evidence in so far as they are used by the parties at trial. Accordingly, if Mr. Shulman is permitted by U.S. courts to obtain and use relevant evidence in connection with the English Action, he will be obliged to include some or all of the documents, according to the standard disclosure

---

[16] CPR 29.2.
[17] CPR 29.5.
[18] CPR 31.10(2).
[19] CPR 31.6.
[20] CPR 31.10(6).

9

requirement, in his disclosure list, whereupon there would be no bar to Mr. Shulman using that evidence in connection with his English Claims.

27. Parties may also engage experts. In cases such as the English Action, which involve allegations concerning complex financial transactions, parties such as Mr. Shulman frequently engage a forensic accountant or other expert to opine on the Defendants' financial transactions and their significance. Under CPR 35.5, such expert evidence would need to be presented in a written report unless otherwise directed by the English court. The deadline for exchanging expert reports is set as part of the case management process and may not be varied, nor can an expert report generally be presented after the deadline specified in the court's timetable, without court permission.

## V. ENGLISH COURTS' ABILITY TO OBTAIN NON-PARTY DISCOVERY FROM FOREIGN SOURCES

28. English courts have the power, upon application, to order a non-party to make disclosure of specific documents or classes of documents for use by one of the parties to the action. However, English courts cannot compel such disclosure from individuals or entities located outside the English courts' jurisdiction.[21] In so far as the non-party is not in England such power under the CPR cannot be utilised and in such cases a party must apply to the court, under CPR 34.13 for the issue of a letter of request to the judicial authorities of the country in which the non-party is located to render assistance and take the evidence of that person or arrange for it to be taken. Such a request may encompass a request for a witness to be examined, or simply for a witness to be compelled to produce documents. Any such request would likely be for limited disclosure, which may be narrower than disclosure available to litigants under U.S. discovery rules.

---

[21] CPR 31.17.

29. The application to the English court for the order issuing the letter of request must contain a list of the questions or the subject matter of the questions to be put to the person to be examined, and an undertaking to be responsible for the Secretary of State's costs. The request, if issued, will be transmitted by the Secretary of State of the Foreign Office to his/her counterpart in the foreign country for onward transmission to the relevant judicial authorities. The foreign judicial authorities will presumably act according to their own law when complying with or otherwise dealing with such an incoming request from the English court.

30. If Mr. Shulman were to try to invoke this procedure to obtain discovery from individuals or entities located in the United States, he would need to make an application to the English High Court, which, if approved, would submit a request to the various U.S. courts with jurisdiction over the non-parties from whom Mr. Shulman seeks discovery. Thus, the English procedure for obtaining non-party discovery located in the U.S. would require the U.S. court receiving such a request to determine, according to its laws and procedures, whether such request should be acceded to, and whether the third party should be ordered to provide the documentation sought.

31. English courts also have a reciprocal procedure under which they can permit foreign litigants to obtain evidence located within the United Kingdom for use in foreign proceedings. The Evidence (Proceedings in Other Jurisdictions) Act 1975 ("the 1975 Act") empowers the English courts to render assistance for procuring of evidence for proceedings in foreign courts[22]. The subject is regulated by Section II of CPR Part 34. The general rule is that the English court should accede to letters of request issued by foreign courts if they could properly do so, *Westinghouse Electric Corp Uranium*

---

[22] There is a separate procedure for courts of the European Union

*Contract Litigation MDL Docket 235 (No.2)* [1978] A.C. 547, so long as compliance would not impose oppressive burdens on the intended witness, *First American Corp v Sheikh Zayed Al-Nahyan* [1999] 1 W.L.R. 1154.

### VII. PREJUDICE WHERE A LITIGANT SUCH AS MR. SHULMAN IS NOT ABLE TO OBTAIN AND/OR USE U.S. DISCOVERY TO SUPPORT HIS ENGLISH ACTION

32. As described above, following completion of preliminary matters such as service, the English High Court presiding over Mr. Shulman's English Action will set case management deadlines for, among other things, the disclosure of documents, exchange of witness statements, expert reports, and the date of the trial. Once those deadlines are set, if Mr. Shulman needed to vary them he would have to seek the Defendants' consent, and would need to seek court approval. For the reasons described below, it is by no means certain that the English High Court would agree to delay the trial or extend any of the disclosure or expert deadlines in its timetable if Mr. Shulman were unable to secure timely approval to use the U.S. discovery in connection with the English Action, or if a stay were imposed in the U.S. that temporarily prevented Mr. Shulman from using the discovery in the English Action. Absent an extension from the English High Court, Mr. Shulman would be forced in such a scenario to proceed with his claims without the benefit of the U.S. discovery, placing him at a clear disadvantage.

33. Under CPR 3.8, where a rule requires a party to do something within a specified time and specifies the consequences of failure to comply, the time for doing the act may not be extended by agreement of the parties except for a maximum of 28 days – and only if the extension does not affect any hearing date.[23] In all other circumstances, extensions may only be granted by the Court.

---

[23] Set out in CPR 3.8(4).

34. CPR 3.1(1) grants English courts broad powers to (a) extend or shorten the time for compliance with any rule, practice direction or court order or (b) adjourn or bring forward a hearing. However, courts must consider extension requests in light of the "overriding objective" set forth in CPR 1.1, which includes "ensuring that [the case] is dealt with expeditiously and fairly" and "enforcing compliance with rules, practice directions and orders." Further, CPR 29 PD 7.4 provides:

> "(1) The court will not allow a failure to comply with directions to lead to the postponement of the trial unless the circumstances are exceptional.
>
> (2) If it is practical to do so the court will exercise its powers in a manner that enables the case to come on for trial on the date or within the period previously set.
>
> ….
>
> (6) Litigants and lawyers must be in no doubt that the court will regard the postponement of a trial as an order of last resort. Where it appears inevitable the court may exercise its power to require a party as well as his legal representative to attend court at the hearing where such an order is to be sought. …" [24]

35. In light of these provisions, it is possible that Mr. Shulman would be unable to delay the English Action if a stay were imposed by a U.S. court, or if Mr. Shulman were otherwise unable to obtain timely permission from the applicable U.S. courts to obtain and/or use necessary discovery in the English Action. The possibility of prejudice to Mr. Shulman is especially great if a stay pending appeal were granted in the U.S., as it is my understanding that such a stay would last at least twelve months and require Mr. Shulman to request a similarly long postponement of deadlines and trial in the English Action. A decision granting an extension of that length would be extremely unusual in the English courts particularly where there is no confidence that the year will in fact be sufficient for the purpose and another adjournment might be necessary.

---

[24] For a discussion where the court "reluctantly" granted a very short, final, adjournment because of difficulties in dealing with documentary disclosure (of about 25m documents) see The RBS Right Issue Litigation [2015] EWHC 3433 (Ch) [65 – 79].

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 30 May, 2017 in London, England.

BRIAN DOCTOR QC