**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

IN RE APPLICATION OF
HORNBEAM CORPORATION

REQUEST FOR DISCOVERY PURSUANT TO
28 U.S.C. §1782

Case No. 14-24887-MC-SEITZ/TURNOFF

**INTERVENOR IGOR KOLOMOISKY'S RESPONSE IN OPPOSITION**
**TO VADIM SHULMAN'S 28 U.S.C. § 1782 APPLICATION**

## INTRODUCTION

On December 29, 2014, Hornbeam Corp. filed an *ex parte* application pursuant to 28 U.S.C. §1782 for discovery it claimed it needed to initiate an action in the BVI regarding Halliwel Assets, Inc., which was granted on February 11, 2017.  In May 2015, counsel for Panikos Symeou, Halliwel's sole director, learned by happenstance that Hornbeam had secretly served discovery and obtained confidential bank records in a related §1782 proceeding in New York, purportedly for use in its promised BVI action.  In June 2015, upon Halliwel's discovery of the secret §1782 proceedings, Hornbeam, Bracha Foundation, and Vadim Shulman filed an action in Ohio state court asserting the **same** claims for the **same** damages against the **same** defendants named in its Application in this case.  After the Ohio claims were dismissed in October 2015, Hornbeam, Bracha, and Shulman appealed.  On September 11, 2017, the Ohio Court of Appeals affirmed the dismissal.  Meanwhile, Hornbeam did not serve the subpoenas this Court authorized until March 20, 2016.

Now, almost three years later, Hornbeam still has not filed the promised BVI claims.  Instead, Shulman has filed claims in England based on the **same** allegations for the **same** damages against two of the **same** defendants, Igor Kolomoisky and Gennady Bogolyubov, named in Hornbeam's application.  *See* Appendix A.  Bogolyubov has challenged the English court's jurisdiction over him.  If Shulman cannot sustain jurisdiction over Bogolyubov (on the basis of Bogolyubov's domicile in England), jurisdiction over Kolomoisky (who has not been served) fails because there is no anchor defendant to sustain English jurisdiction.  Despite filing the English action in May 2017, Shulman did not move to intervene in this proceeding until June 30, 2017 and did not file his application until September 15, 2017, even though he could have done so months earlier.  Shulman's Application seeks the same discovery approved in the *Ex*

*Parte* Order granting discovery to Hornbeam.  Shulman is not entitled to discovery unless the English court sustains jurisdiction, and, even then, the discovery should be substantially narrowed.

*First*, Shulman does not satisfy §1782's statutory requirement that the discovery be "for use" in the English proceeding unless jurisdiction over Bogolyubov is sustained.  Thus, discovery should be stayed until there is a resolution of that issue.  Bogolyubov's jurisdictional challenge will be addressed at a hearing in December 2017, only a few weeks after briefing is complete on Shulman's Application.  None of the sought discovery is remotely related to the sole issue to be determined by the English Court in – whether Bogolyubov was domiciled in England in May 2017 when Shulman's claim was filed.

*Second*, the depositions Shulman seeks are unduly intrusive and burdensome.  There is no reason to permit 14 Rule 30(b)(6) depositions at this time, if ever, and Mordechai Korf has agreed to make himself available for examination at the English trial if jurisdiction is sustained, making his deposition unnecessary.[1]  The document discovery Shulman seeks is also unduly intrusive and burdensome, seeking documents unrelated to the transactions involving Halliwel and its subsidiary Warren Steel Holdings, LLC, which operated the Ohio steel plant at issue.  At most, if jurisdiction is sustained, discovery should be limited to transactions between the Subpoena Recipients and Halliwel or Warren Steel, as the Alabama court recognized in a related §1782 proceeding.

*Third*, the decisions in Hornbeam's other §1782 proceedings do not support granting discovery to Shulman before jurisdiction is decided, much less the overly intrusive and burdensome discovery Shulman seeks. To the contrary, the Alabama court limited discovery to

---

[1] Korf is prepared to submit an affidavit regarding his willingness to testify should the Court require one.

those transactions involving Halliwel and Warren Steel; the New York court ordered easily produced bank records (albeit inappropriately extending the scope beyond those related to Halliwel and Warren Steel); and the Ohio court stayed discovery because Hornbeam's promised BVI action was not reasonably contemplated.

## CONCISE BACKGROUND[2]

This case involves a commercial dispute over the operation of the Ohio steel plant owned by Warren Steel Holdings, LLC.  Warren Steel is owned by Halliwel, of which Shulman (through Hornbeam), Kolomoisky (through Symeou), and Bogolyubov (through Marigold Trust), are the beneficial owners.  Shulman alleges entities related to Kolomoisky and Bogolyubov entered into false loans and self-dealing transactions with Warren Steel and Halliwel.

**The Abusive BVI Case**: Hornbeam obtained an *ex parte* injunction in the BVI to enjoin certain corporate conduct and then moved to place Halliwel into liquidation.  But Hornbeam's attempt failed miserably and its application to appoint provisional liquidators over Halliwel was dismissed as "an abuse."  Transcript at 172–73, ECF 28-1 at 179-80.  Instead, the BVI court awarded $846,526 in sanctions to Symeou, Halliwel, and Marigold on December 10, 2014.  *See* Second Nader Dec. ¶ 33.  Hornbeam refused to pay those sanctions voluntarily and only did so in November 2016 under the threat of execution on Hornbeam's shares in Halliwel.  *Id*. at ¶¶ 51–52, 65–67.

**The Ohio State Court Case:** Symeou uncovered the secret §1782 discovery in New York by happenstance in May 2015.  Immediately thereafter, instead of Hornbeam filing new claims in the BVI as promised, Shulman and Bracha filed proceedings in Ohio state court against Symeou, Halliwel, Warren Steel, Korf, Kolomoisky, and Bogolyubov, *see* Amended Complaint,

---

[2] The background is discussed in detail in the Motion to Vacate the *Ex Parte* Order granting discovery to Hornbeam, which Kolomoisky incorporates.

ECF 28-2 at 161, and obtained an *ex parte* TRO on June 15, 2015.[3]  Thereafter, when Shulman

and Bracha recognized that they lacked standing to sue, Hornbeam joined their claims and filed

its own claims; the matters were then consolidated.  In October 2015, the Ohio court dismissed

their claims.  ECF 28-3 at 185-199.  Instead of Hornbeam filing in the BVI or Shulman filing in

England, they appealed.  On September 11, 2017, the Ohio court of appeals affirmed the

dismissal.  Opinion, Marks Dec. Ex 4.

 **The Other §1782 Proceedings**: Hornbeam and/or Bracha filed *ex parte* applications in

Alabama, Delaware, Florida, Ohio, and New York in 2014 and early 2015, obtaining *ex parte*

orders granting them.  Hornbeam served subpoenas on 12 banks in New York without notice in

violation of Rule 45 and secretly obtained discovery there.  In order to keep this discovery secret,

Hornbeam and Bracha did not serve subpoenas on professional service providers in New York or

in the other jurisdictions until Symeou discovered the New York proceedings by happenstance in

May 2015.  In short:

 **Northern District of Alabama:** Although the Alabama court denied Respondents'

motion to vacate (based upon Hornbeam's representations that a BVI proceeding was to be

filed), it substantially narrowed the scope of the original subpoena, limiting discovery to records

of Halliwel and Warran Steel.  Opinion, ECF 28-3 at 172.  On appeal, the Eleventh Circuit

reversed the grant of discovery to Bracha because the district court had not found it was an

"interested person," a §1782 statutory requirement.  *In re: Application of Bracha Found.*, 663 F.

App'x 755, 763 (11th Cir. 2016).  On remand, Bracha abandoned its claim to discovery and the

Alabama court dismissed it from the case.  Alabama Opinion, ECF 102-1. The Alabama court

also denied Shulman's motion to intervene, finding that his explanation for not originally joining

---

[3] Kolomoisky and Bogolyubov were never served even though Shulman knew their addresses.

Bracha's application contained "troubling contradictions" which "smack[ed] of gamesmanship and hide-the-ball tactics." *Id*. at 9.

**Southern District of New York:** Although the New York court denied Symeou's motion to vacate (again, based upon Hornbeam's representations that a BVI proceeding was to be filed), it entered a protective order limiting the use of the discovery to Hornbeam in the BVI. ECF 79-6. It denied Shulman's motion to intervene. ECF 105-1.

**Northern District of Ohio:** On December 23, 2014, Hornbeam moved *ex parte* for §1782 discovery. On January 16, 2015, the Court granted the application, authorizing two subpoenas. Order, ECF 9-1. But Hornbeam did not serve the subpoenas until March 7, 2016. Thereafter, Symeou and Halliwel intervened and moved to vacate and/or stay the order. On July 26, 2015, the Court granted the motion to stay, stating that "because Hornbeam is *prohibited* from filing suit in the BVI until such time as it pays off the judgment, the Court cannot say that proceedings there are 'within reasonable contemplation.' . . . [T]he fact that the judgment is relatively small and easily affordable weighs *against* a finding that Hornbeam is 'reasonably contemplating' litigation. If that were the case, the Court presumes that Hornbeam would have paid the judgment thus clearing the way for it to proceed in the BVI." Opinion, ECF 76-1 at 8-9. Hornbeam has not moved to vacate the Ohio stay even though the BVI judgment was settled by November 2016.

**District of Delaware:** After the Court granted Hornbeam's *ex parte* application on May 4, 2015, Hornbeam never served the subpoenas. Thus, there have been no proceedings there.

## THE INSTANT PROCEEDINGS

On December 29, 2014, Hornbeam filed an *ex parte* application pursuant to 28 U.S.C. §1782 seeking discovery for use in the BVI. ECF 1. The Court held an *ex parte* hearing on

February 10, 2015 (ECF 10) and by *ex parte* order dated February 11, 2015 ("*Ex Parte* Order"), ECF 12, Hornbeam was authorized to serve subpoenas on 15 persons and entities mainly related to Kolomoisky and Bogolyubov ("Subpoena Recipients").  The *Ex Parte* Order also permitted Hornbeam to depose Korf and 14 Rule 30(b)(6) designees from each of the Subpoena Recipients. ECF 12.  Hornbeam did not serve the subpoenas until March 2016 as part of its scheme to conceal subpoenas that had been secretly served on banks through an *ex parte* §1782 order in New York.

After the subpoenas in this matter were served, Symeou and Halliwel intervened and moved for a stay.  By report and recommendation dated May 24, 2016, ECF 49, Magistrate Judge Turnoff concluded that a stay was appropriate, rejected Hornbeam's argument that it would be prejudiced by delay and found that "if prompt discovery was of the essence, Hornbeam could have adequately addressed this concern by swiftly serving the subpoenas. Instead, it waited more than one year after authorization to do so."  ECF 49 at 6.  By order dated July 13, 2016, ECF 54 ("Stay Order"), this Court adopted the Magistrate's report and recommendation and found "Hornbeam is responsible for its own delay and that a stay created no additional prejudice."  ECF 54 at 4.

Hornbeam did not move to lift the stay until January 27, 2017.  ECF 59.  While that motion was pending, Hornbeam changed course and moved to extend the stay.  ECF 68.  The Court granted the extension until April 14, 2017.  ECF 69.  Subsequently, in order to obtain an extension "for the lesser of 45 days or the date Hornbeam notifies the Court that it has initiated foreign proceedings," Hornbeam represented that it "expected to initiate such litigation [in the BVI] within the next 45 days."  ECF 71 at 2–3.  The Court extended the stay to June 16, 2017. ECF 74.  But, Hornbeam did not file in the BVI.

As the stay was set to expire, Hornbeam filed its Renewed Motion to Lift the Stay, ECF 75, revealing that Hornbeam had not filed any claims in the BVI, but, instead Shulman had filed claims in England premised on the same allegations for the same damages. On August 17, 2017, the Court lifted the stay and granted Shulman's motion to intervene. Order, ECF 108. Then, after briefing and argument, this Court required Shulman to file a §1782 application. Order, ECF 123.

As detailed in Halliwel and Symeou's Motion to Vacate, filed contemporaneously herewith, the evidence is clear that Hornbeam has no present intention of filing in the BVI. Indeed, in the three years since initiating this series of §1782 actions, Hornbeam still has not filed any actions in the BVI, despite its repeated promises to this and other federal courts that it would do so.

## ARGUMENT

28 U.S.C. §1782 imposes three statutory requirements: (1) the person from whom discovery is sought must reside or be found in the district; (2) discovery must be "for use" in a proceeding before a foreign tribunal; and (3) the application must be made by an "interested person." *See Intel v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004). If those requirements are met, §1782 "authorizes, but does not require, a federal district court to provide judicial assistance." *Id.* at 255. The court may deny the application if, among other things, (1) "the person from whom discovery is sought is a participant in the foreign proceeding" (and thus the evidence is within the foreign court's reach); (2) "the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," (3) is "unduly intrusive or burdensome," or (4) "the foreign government or the court or agency abroad" would not be receptive "to U.S. federal-court judicial assistance." *Id.* at 264–65.

# I.   THIS COURT SHOULD WITHHOLD DECISION ON SHULMAN'S APPLICATION PENDING THE ENGLISH COURT'S JURISDICTIONAL DECISION.

In order to satisfy §1782's statutory requirements, discovery must be "for use" in a foreign proceeding.  While Shulman has brought the English Action, if jurisdiction is not sustained, then there will be no action in which to use the §1782 discovery.  Thus, this Court should withhold a decision on Shulman's Application until the English Court decides whether the English Action will be dismissed on jurisdictional grounds.  Such an approach is consistent with §1782's requirement that discovery be both "for use" in a pending or reasonably contemplated foreign action, and with this Court's jurisdiction on issuing stays.

This Court is familiar with the standards applying to stays of §1782 actions, having done so in this case.  Stay Order, ECF 54 (adopting Report and Recommendation, ECF 49).  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  As this Court has explained, "[t]he broad authority to grant a stay extends to 28 U.S.C. §1782 proceedings."  *In re Alves Braga*, 789 F. Supp. 2d 1294, 1307–08 (S.D. Fla. 2011) (citations omitted); *accord In re Noboa*, 1995 U.S. Dist. LEXIS 14402, at *3 (S.D.N.Y. Oct. 4, 1995) (staying the "taking of . . . depositions" under §1782).  In assessing the propriety of a stay, courts look at various factors depending upon the reason for the stay.  This Court has often granted stays of §1782 proceedings pending decisions of foreign courts.  *See In re Pinchuk*, 2014 U.S. Dist. LEXIS 43686 (S.D. Fla. Mar. 31, 2014) (stay pending rulings in Cyprus proceedings); *In re Braga,* 789 F. Supp. 2d at 1307–08 (stay pending resolution of Brazil and Cayman Islands proceedings); *In re XPO Logistics, Inc.*, 2016 U.S. Dist. LEXIS 81784, *8–9 (S.D.N.Y 2016) (stay consideration of the

requested discovery until the foreign proceedings advanced sufficiently to consider foreign discoverability when it might otherwise be relevant to the §1782 application.").[4]

### A.    The English Decision Could Be Dispositive Of Shulman's Claims.

Stays may be granted when the result of another action may be "directly relevant" to the pending action. *Schartel v. OneSource Tech., LLC*, 2015 U.S. Dist. LEXIS 155967 (N.D. Ohio Nov. 17, 2015) (granting stay, applying "directly relevant" standard).  When a decision in another case "has the potential to be completely dispositive, [this] factor weighs quite heavily in favor of a stay." *Michael v. Ghee,* 325 F. Supp. 2d 829, 832 (N.D. Ohio 2004).  If the English court denies jurisdiction, this moots Shulman's motion to intervene because there will be no foreign action supporting discovery.  This Court accepted the same rationale as to the Eleventh Circuit appeal – the English decision not only will be relevant, "it may have a dispositive effect on this case." Stay Order at 3, ECF 54; *see also In re Pott*, 12-cv-24515, 2013 WL 3189262, at *4 (S.D. Fla. June 20, 2013) (court vacated previously granted discovery because foreign action was on discretionary review and there was no basis to believe that the discovery could be used).

### B.    Judicial Economy and Efficiency Favor A Stay.

If the English court denies jurisdiction as to Shulman, this may "negate the need for this Court to delve into the vast majority of the legal issues presented in those filings. It makes little sense to undertake the herculean task of plodding through the motions when one decision . . . could invalidate the entire case." *Michael*, 325 F. Supp. 2d at 833.  This Court accepted the

---

[4] Shulman may argue that the Court already denied Symeou's request for a stay when it lifted the stay of this action on August 17, 2017.  However, the case is in an entirely different procedural posture at this point.  Lifting that stay then did not permit discovery to proceed.  It only allowed the parties to brief the issues of whether the §1782 application by Hornbeam should be vacated, and whether Shulman's §1782 application should be granted.  Now, as to Shulman, it is clear that decision should be stayed until the jurisdiction issue in the English action is addressed, which is only a few weeks away.  As to Hornbeam, it is equally clear that decision should be stayed because if Shulman sustains jurisdiction, Hornbeam's purported future BVI action will be effectively mooted.

same rationale as to the Eleventh Circuit appeal.  *See* Stay Order at 4, ECF 54 (quoting Magistrate's Report quoting *Michael*).

*First*, Kolomoisky has challenged the need for deposition discovery and the scope of the document subpoenas.  There is no need to address these issues if the English action is dismissed.

*Second,* if the English Action is sustained, this will moot the need to decide Symeou and Halliwel's motion to vacate the *Ex Parte* Order because Hornbeam's need for discovery will be mooted, and discovery will eventually occur for Shulman in the English proceedings, in accordance with English procedure.  The Court will then not need to decide a myriad of difficult issues.

### C.   A Stay Will Avoid Unnecessary Burden and Expense On the English Defendants and the Subpoena Recipients.

A stay will avoid unnecessary burden and expense on the English defendants.  In addition, the Court should also consider the "special protection against the time and expense of complying with subpoenas" by the non-party Subpoena Recipients whose time consuming involvement may be mooted.  *Beinin v. Ctr. for Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 U.S. Dist. LEXIS 22518, at *2 (N.D. Cal. 2007).[5]  Again, this Court and the Magistrate accepted the same rationale as to the Eleventh Circuit appeal—Symeou/Halliwel and Subpoena Recipients should not be subjected to avoidable burden.

*First,* Kolomoisky should not have to defend this § 1782 action, which seeks discovery for a lawsuit that may never materialize due to a lack of jurisdiction.  Indeed, many courts hold that a defendant need not have to engage in merits discovery while a jurisdictional fight is

---

[5] *See also Englar v. 41B Dist. Ct.*, No. 04-CV-73977, 2009 U.S. Dist. LEXIS 100949, *16 (E.D. Mich. Oct. 29, 2009) (status as a non-party weighs in favor of a finding of undue burden); *Whitlow v. Martin*, No. 263 F.R.D. 507, 509 (C.D. Ill. 2009) ("Non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.").

pending.  *See, e.g., Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674 (S.D. Cal. 2011) (noting that "[w]hen a defendant raises jurisdictional objections, the court may stay discovery proceedings generally and limit discovery to matters relevant to the court's jurisdiction" and that "[c]ourts in other circuits have routinely stayed discovery on the merits altogether while challenges to jurisdiction are pending"); *Ginsberg v. Gov't Properties Trust, Inc.*, 2007 U.S. Dist. LEXIS 75771, at *4 (S.D.N.Y. Oct. 10, 2007) (staying merits discovery pending resolution of jurisdictional motion); 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2040, at 521–22 (2d ed.1994).  It makes little sense that a defendant in a foreign proceeding would be provided less rights than one in a domestic proceeding.

**Second,** by the same token, the Subpoena Recipients also should not have to engage in merits discovery, which would include responding to burdensome document requests and 14 depositions, if it is possible that the English courts do not even have jurisdiction over the proceeding that forms the basis for Shulman's Application here.

### D. Shulman Will Suffer No Prejudice.

Shulman waited years to file his English proceedings and did not move to intervene for two-and-a-half years after Hornbeam filed its §1782 Application.  He will not be harmed if discovery does not take place until jurisdiction is decided.  Needless to say, the absence of harm is illustrated by this Court's findings related to Hornbeam: "Hornbeam is responsible for its own delay and . . . a stay [would] create[] no additional prejudice."  Stay Order at 4, ECF 54. Similarly, in denying intervention in Alabama, the district court found "that Mr. Shulman knew about these proceedings since their inception, and was contemplating filing a foreign action and using the documents to be produced here, yet waited two years to intervene; he has articulated no

reasonable excuse for the delay." Alabama Opinion, ECF 102-1 at 10.

*First*, an English action is essentially stayed while a jurisdictional challenge is pending. *See* Third Fulton Dec. ¶¶ 22–26, 34.  A respondent is not required to file a defense, the case is not assigned to a particular track, and there is no disclosure on the merits.  Third Fulton Dec. ¶¶ 26–29.  If the English court rejects the jurisdictional challenge, and the case proceeds, the court assigns the case to a particular track.  It also establishes a case-management schedule with various disclosure and witness evidence deadlines.  Third Fulton Dec. ¶ 24. When, as here, international discovery is likely to be sought, the court will set a schedule that allows time for that international discovery to be conducted.  Shulman's English law expert ignored the crucial distinction in the progress of an English case when jurisdiction is challenged, even though Shulman knew that Bogolyubov was challenging jurisdiction before his expert's report was submitted.

*Second,* Shulman makes no plausible argument that the discovery is needed to respond to Bogolyubov's jurisdictional challenge.  After all, Hornbeam sought discovery in December 2014 with the goal of filing in the BVI, not England, and sought evidence related to dealings by various companies based in this District with Warren Steel and Halliwel, not evidence concerning where Bogolyubov was domiciled.  Moreover, because the Ohio plant permanently closed in November, 2015, nothing in the subpoenas authorized for Hornbeam—which Shulman apparently seeks to serve himself—is remotely connected to evidence of Bogolyubov's domicile in England in or around May 2017.  Plainly, any evidence that Shulman needs regarding Bogolyubov's domicile can be obtained from Bogolyubov or sources of evidence in England, not the Southern District of Florida.

*Finally,* Shulman's expert expresses the illusory concern that Shulman would not be able

to obtain an extension of the English court's case schedule if the §1782 discovery is delayed in the U.S.  *See* Doctor Dec. ¶¶ 32-33, ECF 91-2 at 13.  This concern is not even applicable at this stage, because the English court will not set a discovery schedule until Bogolyubov's jurisdictional challenge has been resolved.  Indeed, as Respondents' English law expert, Andrew Fulton, makes clear, until the question of jurisdiction has been settled, "the court will not give case management directions, or set a timetable for the steps to be taken between the giving of directions and the trial, or fix a case management conference."  Third Fulton Dec. ¶ 24.4.

*In sum*, Shulman will not suffer any prejudice if discovery is stayed pending resolution of the jurisdictional challenge, while the producing parties will be prejudiced by devoting considerable resources to discovery for a case that may be dismissed.

## II.     THE DISCOVERY SHULMAN SEEKS IS OVERLY BROAD AND UNDULY BURDENSOME.

### A.     Shulman Should Not Be Allowed to Take The Depositions He Seeks.

*First*, under *Intel*, one discretionary factor considers whether the discovery subject is a "participant" in the foreign proceeding.  *Intel*, 542 U.S. at 256.  This does not hinge on whether the subject of the § 1782 discovery is a "party" to the foreign proceeding.  Korf has agreed to participate in the English action as a witness if the case is not dismissed on jurisdictional grounds and his evidence is relevant to the matters in dispute.  Therefore, Korf qualifies as a participant in the English Action if the case is not dismissed on jurisdictional grounds.  *See In re Pinchuk*, 13-CIV-22857, 2014 U.S. Dist. LEXIS 59988, at *2 (S.D. Fla. Apr. 30, 2014) (quashing deposition subpoena where counsel represented witness would be made available in arbitration); *In re Leret*, 981 F. Supp. 2d 66, 70 (D.D.C. 2013) (treating the discovery subject as a "participant" in the foreign proceeding when discovery subject agreed to submit to the Venezuelan courts for discovery purposes), *amended*, 51 F. Supp. 3d 66 (D.D.C. 2014)

(affirming dismissal but granting applicant leave to refile if the subject did not subject itself to Venezuelan discovery).

*Second*, under *Intel*, another discretionary factor concerns "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.   In fact, in situations such as this, where the putative deponent has confirmed his willingness to attend to give evidence at trial in England, English courts disfavor and have actually enjoined depositions under § 1782.  As explained in Andrew Fulton's expert report, in *Omega Group Holdings, Ltd. v. Kozeny,* one of the English defendants filed § 1782 actions in New York and Connecticut, seeking depositions in the United States.  The claimants objected and sought an injunction against those depositions, arguing that "[e]ach of the relevant witnesses," with one exception, "has confirmed in writing his willingness to 'submit a witness statement and to attend to give evidence at trial in London' in the English proceedings."  Third Fulton Declaration, Ex G, *Omega* Judgment ¶ 8.[6]  The English court held that "it would be unconscionable, in the sense that it would be oppressive, vexatious and constitute an interference with the due process of this Court, for [the defendant] to pursue the s. 1782 applications in the United States in respect of witnesses, whom it is intended [by claimants] to be called to give oral evidence at the trial in this country."  *Id.* ¶ 23.  As a result, the English court enjoined the defendant from taking depositions pursuant to §1782 of any witness that would be called to give oral testimony in England.  Again, because Korf has expressed his willingness to testify and be examined at trial in England, if jurisdiction is ultimately found to exist, not only is the deposition testimony that Shulman seeks inappropriate, but it is likely to be enjoined by the English court.

---

[6] *See* Third Fulton Declaration ¶ 36.

**Third,** preparing and sitting for multiple Rule 30(b)(6) depositions is an extremely burdensome task, especially given the Subpoena Recipients' status as third-parties.  Rather than saddling them with that burden blindly, if anything, this Court should require Shulman to first review any document production this Court authorizes and determine if deposition testimony is still necessary.  Shulman should then be required to articulate the need for such testimony, in light of the document production he would have already received and reviewed.

**Finally,** FRCP 30(a)(2)(A)(i) limits a party to ten depositions.  A party seeking additional depositions must show a "demonstrable need to do so."  *San Francisco Health Plan v. McKesson Corp.*, 264 F.R.D. 20, 21 (D. Mass. 2010).  "Courts should not freely grant relief from the limits without a showing of need."  *Id.*  "The purpose of the limitation in the rule is to force counsel to think long and hard about who they want to depose and to depose only those who are really important, so as to stay within the limit set by the rule."  Here, Shulman seeks a total of 15 depositions—14 Rule 30(b)(6) witnesses and the deposition of Korf—but does not even attempt to demonstrate his need for all of those depositions.  Such an extensive discovery schedule will impose an unnecessary burden on the parties. Shulman should be required to demonstrate the need for each deposition he seeks, or have his request denied.

### B.       The Document Discovery Is Overly Unduly Intrusive and Burdensome

*Intel* permits courts to deny discovery which is "unduly intrusive and burdensome."  542 U.S. at 264–65.  In Alabama, the court significantly reduced the requested discovery, limiting records to transactions with Halliwel and Bracha, *see* Alabama Order Modifying Subpoena, ECF 35-1, which is the only discovery that Shulman (or Hornbeam) could possibly need to determine the validity and fairness of the loans and other transactions with Halliwel and Warren Steel. While the Subpoena Recipients will address the issue of burden if discovery is permitted by

serving objections, at a minimum, the Court should limit the scope of the subpoenas to transactions with Halliwel and Warren Steel.

As an initial matter, Shulman argues that the discovery he seeks is the same discovery this Court already authorized Hornbeam to subpoena and is therefore no more burdensome to the Subpoena Recipients.  ECF 122 at 14.  This argument is premature at best as the Court has permitted the Subpoena Recipients and Symeou and Halliwel to file a Motion to Vacate the *Ex Parte* Order.  ECF 123.  The Court clearly intends to address the authority granted *ex parte* after hearing from both sides.  This Court obviously has not addressed the burdensomeness issue as it has not been briefed by those suffering the burden.

Shulman next argues that the scope of the discovery is appropriate.  To support this argument, Shulman relies on various cases in which §1782 discovery was authorized; however, each of the cited cases are distinguishable on one or more grounds, none more important than the fact that each of the them involved intricate claims of far reaching fraud whereas the instant matter does not.  Shulman's claims for relief in England involve a commercial dispute with allegations of breaches of fiduciary, statutory and partnership duties, and unjust enrichment. Those allegations have only half-heartedly been alleged to be fraudulent (Shulman's English Particulars of Claim make brief generalized allegations of fraud / dishonesty in four paragraphs only: paragraphs 6, 8, 73 and 80).  ECF 78 at 34–35 (sealed).[7]

***First,*** Shulman's unduly burdensome and intrusive requests are not needed to prove his case.  For example, capturing all documents touching the 14 Subpoena Recipients are not needed

---

[7] In *Ahmad Hamad Algosaibi & Bros. Co. v. Std. Chtd. Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 435 (S.D.N.Y 2011), petitioners' §1782 application was granted but the Court ordered the parties to meet and confer for 30 days to narrow the scope of the subpoenas.  Unlike in the instant action, in *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 375 (W.D.N.Y. 2006), broad discovery was granted based on the alleged RICO predicate acts of mail fraud, wire fraud, money laundering and interstate transportation of stolen property.

to assess the validity of the Loans.  That can be accomplished through the production of specific wire transfer and deposit records.  *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 50 (S.D.N.Y. 1996) (quashing overly broad subpoena where irrelevant requests "effectively encompass[ed] documents relating to every transaction undertaken by [third-party] during the last ten years").

*Second,* discovery of "all documents and communications concerning any transaction" of the 14 Subpoena Recipients since January 1, 2006 will capture voluminous private and confidential transactions.  Seeking these documents intrudes into private, unrelated affairs and should not be permitted. *See Arias-Zeballos v. Tan, No. 06 Civ. 1268(GEL)(KN)*, 2007 WL 210112, *1 (S.D.N.Y. Jan. 25, 2007) (quashing subpoena on the basis that "[i]ndividuals, whose banking records are subpoenaed, have a privacy interest in their personal financial affairs.").

*Finally,* Shulman argues that he will be prejudiced if he is not promptly authorized to use discovery from this matter due to mandatory deadlines to produce evidence in the English Action.  This is simply untrue as explained above.

## III.    THE *EX PARTE* ORDERS ENTERED BY OTHER COURTS DO NOT SUPPORT GRANTING DISCOVERY AT THIS TIME OR THE OVERLY BROAD DISCOVERY WHICH SHULMAN SEEKS.

Shulman argues that the decisions in two of the §1782 actions which Hornbeam filed support discovery in this case, ignoring that the Alabama court substantially narrowed discovery, the New York court only considered objections to bank records, and the Ohio court stayed discovery because Hornbeam's BVI proceedings were not within reasonable contemplation.  In addition, none of these decisions concern the posture where Shulman's English action could be dismissed within months.  And the Alabama and New York courts denied Shulman's motion to intervene.

### A.   The Alabama Decision Granted Respondents' Request that the Discovery Be Substantially Narrowed

Initially, the Alabama Court authorized sweeping document discovery that would have captured voluminous private and unrelated transactions related to 12 lenders, 33 commercial entities, and 12 individuals.  Respondents argued that these transactions were unrelated to Warren Steel and, as a result, it would be unnecessarily intrusive to allow Hornbeam to obtain those records, especially given that they did not relate to the allegations of the contemplated foreign action.  The court agreed, quashing the subpoena it had authorized and narrowing its scope only to include documents related to Warren Steel.  *See* Alabama Order Denying Motion to Vacate, Quashing and Modifying Subpoena, ECF 35-1.  Neither Hornbeam nor Bracha challenged the Court's narrowing of the subpoena on appeal.

### B.   The New York Decision Is Inapposite Because It Only Concerned Easily Identified Bank Records

The New York court's grant of discovery is wholly different from the sprawling discovery sought here, and cannot serve as precedent for granting §1782 discovery, or its purported scope.  While the New York §1782 discovery was focused on financial records from 12 financial institutions, the discovery Shulman seeks here is considerably more expansive.  Moreover, Shulman seeks 15 depositions in this case.  He sought none in New York.

### C.   The Ohio Decision Affirms that Hornbeam's BVI Proceedings Are Not Within Reasonable Contemplation

In Ohio, the Court granted Symeou's motion to stay the §1782 proceeding "because Hornbeam is *prohibited* from filing suit in the BVI until such time as it pays off the judgment."  ECF 76-1.  As such, "the Court cannot say that proceedings there are 'within reasonable contemplation.' . . . If anything, the fact that the judgment is relatively small and easily affordable weighs *against* a finding that Hornbeam is 'reasonably contemplating' litigation. If

that were the case, the Court presumes that Hornbeam would have paid the judgment thus clearing the way for it to proceed in the BVI." *Id*. Hornbeam has not moved to vacate the Ohio stay even though the BVI judgment was paid in November 2016. Noticeably, Hornbeam does not even mention the Ohio decision, which indicates that Shulman does not need discovery now, just like Hornbeam did not need it in the past, given its failure to pay the BVI judgment for almost two years and then not moving to lift the Ohio stay.

## CONCLUSION

Intervenor Kolomoisky accordingly respectfully request that Shulman's §1782 Application be: (1) denied in its entirety; or alternatively (2) that the part of the Application requesting pre-filing depositions and/or depositions of would-be participants to the foreign proceedings be denied; and (3) that the authorized discovery be limited to transactions between Halliwel and Warren Steel.

Case. No. 14-24887-MC-SEITZ/TURNOFF

Dated: October 13, 2017

Respectfully submitted,

REED SMITH LLP
*Attorneys for Igor Kolomoisky*

1001 Brickell Bay Drive, 9th Floor
Miami, Florida 33131
Tel.: (786) 747-0200
Fax.: (786) 747-0299

*/s/ Sujey S. Herrera*
Edward M. Mullins
Fla. Bar No. 863920
Email: emullins@reedsmith.com
Sujey Herrera
Fla. Bar No. 92445
Email: sherrera@reedsmith.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed via

electronic filing using the CM/ECF filing system with the Clerk of the Court, which sent email

notification of such filing to all CM/ECF participants in this case listed on the Service List on

October 13, 2017

*/s/ Sujey S. Herrera*
Sujey S. Herrera

Case. No. 14-24887-MC-SEITZ/TURNOFF

## <u>SERVICE LIST</u>

Brian A. Briz
Adolfo Enrique Jimenez
Holland & Knight LLP
Suite 3000
701 Brickell Avenue
Miami, FL 33131
305-789-7723
305-789-7799 (fax)
brian.briz@hklaw.com
adolfo.jimenez@hklaw.com

James Power
Holland & Knight LLP
31 West 52nd Street
New York, NY 10019
212-513-3200
james.power@hklaw.com

*Counsel for Panama*

Jorge David Guttman
William King Hill
GUNSTER
600 Brickell Avenue
Suite 3500
Miami, FL 33131
305-376-6054
305-376-6010 (fax)
jguttman@gunster.com
whill@gunster.com

*Counsel for Respondents*

David B Massey
John F. O'Sullivan
Jason David Sternberg
Hogan Lovells US LLP
600 Brickell Avenue, Suite 2700
Miami, FL 33131
350-459-6678
305-459-6550 (fax)
david.massey@hoganlovells.com
john.osullivan@hoganlovells.com
jason.sternberg@hoganlovells.com

David R. Michaeli
Dennis H. Tracey, III
Hogan Lovells, US, LLP
1875 Third Avenue
New York, NY 10022
212-918-3000
David.Michaeli@hoganlovells.com
dennis.tracey@hoganlovells.com

*Counsel for Bracha Foundation,*
*Hornbeam Corporation, And Vadim*
*Shulman*

Bruce Marks
Thomas Sullivan
Marks & Sokolov, LLC
1835 Market Street
Philadelphia, PA 19103
215-569-8901
bmarks@mslegal.com
tsullivan@mslegal.com

*Co-Counsel for Halliwell Assets, Inc.*
*and Panikos Symeou*