# APPENDIX A

|  | **Hornbeam Application** | **Ohio Amended Complaint** | **Shulman Claims** |
|---|---|---|---|
| **Allegations** | | | |
| **The Parties Purchase Warren Steel** | Hornbeam 1782 Application, ECF 4 at 5:<br><br>In **2001,** Shulman knew of an investment opportunity in the Steel Factory, and he shared this opportunity the Other Ultimate Beneficial Owners. **The Principals subsequently agreed to enter into a Steel Factory-related Joint Venture.** | Amended Complaint, ECF 28-2, ¶¶ 19-22:<br><br>In **2001,** Shulman discovered an investment opportunity in a steel factory in Warren.<br>Shulman shared this opportunity with Kolomoisky and Bogolubov…<br>After discussions, **the three entered into a joint venture ("Joint Venture")** to purchase a steel manufacturing facility, the equipment, and the real property (the "Steel Factory") | Shulman English Complaint, ECF 78 (Sealed Document) at 19:<br><br>**In around 2001 or 2002, and pursuant to the Agreement, Mr Shulman and the Defendants acquired Warren Steel** (which comprised an old steel plant and a new steel plant located in Warren, Ohio) from a company in bankruptcy called CSC, Limited. |
| **The $25 Million Loan That Diminished The Value of the Shares** | Hornbeam 1782 Application, ECF 4 at 11:<br><br>The actions of Kolomoisky, Bogolubov and/or Korf, and the entities controlled by them have minimized, if not eliminated, the ability of Shulman to get a return on his initial investment. **The value of the shares have significantly decreased by the heavy burden of the restructured debt of Warren Steel and especially by granting a priority secured interest in Warren Steel to the new loans in the amount of $25 million in favor of related parties.** | Amended Complaint, ECF 28-2, ¶ 89:<br><br>**The value of the shares have been significantly decreased by the heavy burden of the restructured debt of Warren Steel and especially by granting a priority secured interest to the new loans in the amount of $25 million in favor Optima Acquisitions, LLC ("Optima Acquisitions"), which is controlled by Kolomoisky.** | Shulman English Complaint, ECF 78 (Sealed Document) at 25:<br><br>The proposed restructuring of WSH's debts included the entry into a further loan in the aggregate approximate amount of **$25 million and the subordination of WSH's debts to the repayment of the new loan facility.** On 20 August 2014 and in response to a request for further information regarding the restructuring from Dr Ernst, Mr Symeou revealed that the lender under the new loan agreement was Optima Acquisitions. |

| | **Hornbeam Application** | **Ohio Amended Complaint** | **Shulman Claims** |
|---|---|---|---|
| **Self-Dealing** | Hornbeam 1782 Application, ECF 4 at 7:<br><br>**In 2012, Shulman was informed of the existence of only roughly $18** million of related-party loans, which was planned to be converted in the same manner of the original capitalization of the Divot loans into equity of Halliwel, one-third each for the ultimate benefit of the Principals. However, this debt re-capitalization never occurred.<br><br>Campanile Declaration, ECF 4-2, fn. 4:<br><br>The $106 million is calculated as follows: … (b) additional $19,335,000 not reflected in the table that was allegedly paid back for loans extended by Optima Acquisitions, LLC between May 14, 2009 and December 17, 2011. | Amended Complaint, ECF 28-2, ¶ 57:<br><br>**In 2012, Defendants informed Shulman of the existence of only roughly $18 million of Related Party loans.**<br><br>¶ 59:<br><br>Defendants made false representations to Plaintiffs regarding Warren Steel's indebtedness to Related Parties and concealed at least $20,035,000 of alleged Related Party loans from Mordechai Korf ($2.5 million), Felman Trading, Inc. ($16,785,000), and Optima Ventures, LLC ($750,000). | Shulman English Complaint, ECF 78 (Sealed Document) at 23:<br><br>**By an email sent to Mr Shulman (who forwarded the email to Mr Pifko) on or around November 2012, Mr Novikov stated that WSH had entered into transactions described as "Intergroup Loans" for the total sum of $18,875,530.48 with five companies incorporated in the USA** called Optima Acquisitions LLC ("Optima Acquisitions"), Optima Group LLC, Optima International, CC Metals & Alloys LLC and Felman Trading, Inc, and that Optima Acquisitions had made payments in the amount of $1,694,243.36 on behalf of WSH. To the best of Mr Shulman's knowledge and belief, **each of these companies is ultimately owned and/or controlled by and/or associated with one or both of the Defendants and/or Mr Korf (collectively, "Related Companies").**<br><br>Subsequently, by an email sent to Mr Pifko on 17 December 2012, Mr Novikov stated that the amount of the loans purportedly provided by Related Companies to WSH was $19,186,471. Mr Novikov added that these loans would be assigned to Halliwel for $1, following which Halliwel would subscribe for further shares in WSH, with its obligation to make payment for those shares being set off against WSH's outstanding liabilities under the said loans. |

| | **Hornbeam Application** | **Ohio Amended Complaint** | **Shulman Claims** |
|---|---|---|---|
| **Approval of Restructuring without Hornbeam's knowledge** | Hornbeam 1782 Application, ECF 4 at 9:<br>However, during the course of the respondents' opposition to the injunction, **Hornbeam learned that the proposed debt restructuring had already been passed and approved by Symeou and Warren Steel's management, without being placed for consideration at the EGM**, which meeting never occurred. | Amended Complaint, ECF 28-2, ¶ 80:<br><br>Despite Halliwel's agreement to postpone the August EGM on multiple occasions in August, and multiple communications made by Symeou and/or Halliwel related to the August EGM, **Hornbeam and Shulman did not learn until September 2014**, while the injunction application was being litigated, **that the resolution related to the debt restructuring agreement,** which were to be submitted for approval at the August EGM of Halliwel originally noticed for August 8, 2014, **had already been "passed" by the Unanimous Written Consent of the Sole Member of Warren Steel on August 1, 2014.** | Shulman English Complaint, ECF 78 (Sealed Document) at 25:<br>**Unknown to Mr Shulman or his advisers until 19 September 2014, Mr Symeou, acting in his capacity as director of Halliwel, the sole registered member of WSH, had approved the proposed restructuring of WSH's debts** on 1 August 2014. |
| **Divot** | Hornbeam 1782 Application, ECF 4 at 6:<br>**Around 2006,** the Principals jointly determined to alter the Joint Venture's objective to restarting the Steel Factory's operations in Warren, Ohio. In support of the Joint Venture's new objective, the **Principals jointly agreed to open a $90 million credit line, $30 million each, in Divot Enterprises Limited ("Divot"), an entity controlled by Kolomoisky, for the benefit of Warren Steel**. | Amended Complaint, ECF 28-2, ¶¶ 35<br><br>**In 2006, a $90 million credit line, $30 million allocated for each Principal, was opened by Divot** Enterprises Limited ("Divot") for the benefit of Warrant Steel ("Investment Agreement").<br>**Divot is an entity controlled by Kolomoisky**. | Shulman English Complaint, ECF 78 78 (Sealed Document) at 28:<br>Under cover of email sent on or around 7 May 2012 and purportedly by way of clarification of the manner in which Mr Kolomoisky had invested Mr Shulman's money in WSH, Mr Novikov described a complex structure to be entered into involving (i) the assignment to Mr Shulman and the Defendants of a series of **loans which had purportedly been provided to Halliwel in 2006 by a company called Divot Enterprises Limited ("Divot", which Mr Shulman believes is also a Related Company),** and (ii) the capitalisation of such loans. **Prior to receipt of this email, Mr Shulman had not heard of Divot.** |

|  | **Hornbeam Application** | **Ohio Amended Complaint** | **Shulman Claims** |
|---|---|---|---|
| **Shulman finances the purchase of Warren Steel** | Campanile Declaration, ECF 4-2 ¶ 7:<br><br>In essence, the dispute can be described as follows: **Shulman, via entities which he controlled, purchased for $13.5 million the assets and property of a United States steel factory.** | Amended Complaint, ECF 28-2, ¶ 25:<br><br>**Shulman made the initial investment of roughly $13.5 million for the Steel Factory.** | Shulman English Complaint, ECF 78 (Sealed Document) at 20:<br>**The purchase price of $13.5 million paid for Warren Steel was financed by Mr. Shulman.** |
| **Drawdown of Divot credit line** | Campanile Declaration, ECF 4-2 ¶ 8:<br><br>Based on the documents that I have seen, **$86,679,998.05 of the $90 million credit line has been drawn down.** $84,391,551.40 of the drawdown amount was a direct contribution to Warren Steel. The **$86,679,998.05 has been converted into equity of Halliwel in equal parts for the ultimate benefit of the Principals, including Shulman**. | Amended Complaint, ECF 28-2, ¶ 37:<br><br>The majority of the $90 million credit line has been purportedly drawn down as a direct contribution to Warren **Steel then later converted into equity of Halliwel Assets, Inc**. ("Halliwell"), **in equal parts for the ultimate benefit of the Principals, including Shulman.** | Shulman English Complaint, ECF 78 (Sealed Document) at 29:<br>The Defendants have not provided any documentation demonstrating that WSH received or benefitted from any of the sums allegedly drawn down by Halliwel under the First Divot Facility or the Second Divot Facility. Further, the Defendants have not explained the reason for the difference between the sum of $90 million allegedly invested in Warren Steel and the sum of **$86,679,998.05 allegedly owed under the First and Second Divot Facilities.** |

| | Hornbeam Application | Ohio Amended Complaint | Shulman Claims |
|---|---|---|---|
| **Korf executes documents for lender and borrower.** | Campanile Declaration, ECF 4-2 ¶ 13:<br><br>**In respect of all related-party loans, Korf executed the loan documents on behalf of both the lenders and the borrower Warrant Steel.** | Amended Complaint, ECF 28-2, ¶ 63:<br><br>**With each of the Related Party loans, Korf executed the loan documents on behalf of both the lenders and the borrower Warrant Steel.** | Shulman English Complaint, ECF 78 78 (Sealed Document) at 24:<br>The total amount allegedly loaned under those agreements was approximately $34 million. **Each of the loan agreements and their accompanying promissory notes were signed by Mr Korf on behalf of both WSH and the lender.** |
| **On demand loans** | Campanile Declaration, ECF 4-2 ¶ 13:<br><br>Most disturbingly, under the terms of the proposed debt-restructuring agreement, the new and ratified loans to Warren Steel were styled **"on demand" and could be called in at any time at the sole** discretion of the lenders, which appear to be **controlled by the Other' Ultimate Beneficial Owners and/or Korf.** | Amended Complaint, ECF 28-2, ¶ 89:<br><br>Most disturbingly, under the terms of the proposed debt-restructuring agreement, the new and ratified loans to Warren Steel were styled **"on demand"** and **could be called in at any time at the sole** discretion of the lenders, which appear to be **controlled by the Other' Ultimate Beneficial Owners and/or Korf.** | Shulman English Complaint, ECF 78 78 (Sealed Document) at 25:<br>By an agreement purportedly entered into on the same date and signed by Mr Korf on behalf of Optima Acquisitions and WSH, Optima Acquisitions granted a loan in the sum of $15 million to WSH which was **repayable on demand.** |

| | Hornbeam Application | Ohio Amended Complaint | Shulman Claims |
|---|---|---|---|
| | **Damages** | | |
| | Hornbeam 1782 Application, ECF 4 at 1-2:<br><br>**for violation of the BVI Business Companies Act of 2004, including, without limitation, an accounting, valuation, shareholder oppression,** and buyout, that will be filed in the Commercial Division of the High Court of Justice, British Virgin Islands | Amended Complaint, ECF 28-2, ¶ 225:<br><br>Defendants have entered into an agreement to improperly divest Mr. Shulman of his **one-third interest and convert his investment of roughly $58.5** million in Warren Steel for their own benefit.<br>Pg. 36:<br>WHEREFORE, Plaintiffs request judgment against Defendant as follows:<br><br>….<br>2) For damages exceeding $1,000,000 payable to Plaintiffs for civil conspiracy to commit fraud, punitive damages; costs and attorney fees, and other damages as set forth in the Second Claim;<br>3) For damages exceeding $1,000,000 payable to Plaintiffs for civil conspiracy to commit conversion, punitive damages; costs and attorney fees, and other damages as set forth in the Third Claim;<br>4) For damages exceeding $1,000,000 payable to Plaintiffs for unjust enrichment; costs and attorney fees, and other damages as set forth in the Fourth Claim; | Shulman English Complaint, ECF 78 (Sealed Document) at 27:<br>Pursuant to the Agreement and/or their fiduciary duties, **the Defendants are obliged to account for their dealings in relation to and with Warren Steel and WSH, including as to any assets derived from the investment in Warren Steel and/or derived from WSH** or its assets which are in the hands of the Defendants and/or under their control and extending to any dealings with WSH carried out through companies which they controlled. In the premises:<br>(1) Mr Shulman seeks such an account, together with all necessary enquiries in relation to the Defendants' dealings in relation to and with Warren Steel and WSH; and/or<br>**(2) Mr. Kolomoisky and/or Mr Bogolyubov hold any such assets on trust for Mr Shulman and/or they hold any traceable proceeds thereof for the benefit of Mr. Shulman and must account to him in respect of the same and/or have been unjustly enriched and are obliged to make restitution in respect of the same.** |

|  | Hornbeam Application | Ohio Amended Complaint | Shulman Claims |
|---|---|---|---|
|  | **Defendants** | | |
|  | Hornbeam 1782 Application, ECF 4, **Symeou**, Marigold, Halliwel | Amended Complaint, ECF 28-2, Halliwel, Warren Steel, **Kolomoisky**, **Bogolubov**, Korf, and **Symeou** | Shulman English Complaint, ECF 78 **Kolomoisky and Bogolubov** |