UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-24887-MC-SEITZ/LOUIS

IN RE APPLICATION OF HORNBEAM CORPORATION,

Request for Discovery Pursuant to
28 U.S.C. § 1782
_____/

## OMNIBUS ORDER

THIS CAUSE is before the Court on the ongoing discovery saga between Hornbeam and Intervenors Symeou and Halliwel Assets, Inc. ("Intervenors"). There are two matters presently before the Court: (1) objections [DE 157] to the Magistrate Judge's January 2018 Order denying a Motion to Vacate the 2015 Order granting Hornbeam's 28 U.S.C. § 1782 application; and (2) a Renewed Motion to Vacate [DE 172] the 2015 Order.[1] Intervenors primarily argue that Hornbeam fails to meet the § 1782 requirements on two bases: first, Hornbeam's litigation in the British Virgin Islands (BVI) is no longer contemplated; and second, Hornbeam is a dissolved Panamanian entity and cannot qualify as an "interested person." *See Intel Corp. v. Advanced Micro Devices Inc.,* 542 U.S. 241 (2004). In the alternative, Intervenors also argue that the authorized discovery is overly broad and burdensome. The Court has also considered the respective responses and replies. [DE 161; DE 182; DE 184; DE 190.]

Having reviewed the record *de novo*, the Court finds that Hornbeam is an interested person and the BVI litigation continues to be reasonably contemplated. Therefore, the Court will deny the Renewed Motion to Vacate and overrule the objections as to the BVI litigation. However, the Court will sustain the objections in part regarding the scope of discovery, finding that the discovery granted by the 2015 Order is overly broad.

---

[1] This Order addresses two prior Orders. The February 2015 Order [DE 12] granted Hornbeam's application and is referred to as the "2015 Order." The January 2018 Order [DE 153] denied the first Motion to Vacate and will be referred to as the "2018 Order."

1

## I. Background

### A. Ohio Steel Mill and the Parties

This dispute arises from the purchase of a steel mill in Warren, Ohio by three Ukranian businessmen: Shulman, Kolomoisky, and Bogolyubov. [DE 1 at 4.] Ownership of the mill was then transferred to a holding company, Warren Steel Holdings, LLC ("Warren Steel"), which was formed in 2001. Warren Steel's owners were Shulman, Kolomoisky, and Bogolyubov. In 2008, ownership of Warren Steel was transferred to Halliwel Assets Inc. ("Halliwel"). [*Id.*] Halliwel, a BVI company, has three registered shareholders: (1) Hornbeam, a Panamanian entity whose beneficiary is Bracha Foundation, a Lichtenstein trust, whose beneficiary is Shulman[2]; (2) Symeou, a Cyprus attorney, who holds shares in trust for Kolomoisky; and (3) Marigold Trust Company Limited ("Marigold"), which holds shares in trust for Bogolyubov. [DE 128 at 3.]

### B. Warren Steel's Finances and Related Party Loans

In 2006, a Kolomoisky-controlled entity opened a $90 million line of credit for Warren Steel. In 2007, Mordechai Korf was appointed president of Warren Steel, and in 2008, companies related to Kolomoisky, Bogolyubov, and Korf provided over $106 million to Warren Steel. [*Id.*] In 2012, Shulman was informed of the existence of only $18 million of the related-party loans. [DE 4 at 7.] Shulman later discovered that the actual amount of the loans was much greater than what had been disclosed. [DE 4-2 ¶ 11.]

Due to deteriorating finances, Warren Steel closed in March 2014. [DE 128 at 3.] Around $25 million of new financing was necessary to re-open the facility. Again, companies related to Kolomoisky, Bogolyubov and Korf provided new financing to reopen the facility

---

[2] While the Intervenors acknowledged in 2014 the transfer of the shares from Hornbeam to Bracha Foundation, Intervenor Symeou refuses to register Bracha Foundation in Intervenor Halliwel's shareholder registry. [DE 190-3 at 3]; *See In re Bracha Found.*, 2:15-mc-00748-KOB, DE 33-15 (August 12, 2014 E-mail from Symeou).

2

because no third party would lend. [DE 4-4 at 43.] Korf executed the loan documents on behalf of both the lenders and Warren Steel. [DE 4 at 8.]

### C. The August 2014 Extraordinary General Meeting ("EGM")

Symeou, Halliwel's sole director who also holds shares in trust for Kolomoisky, approved the new financing without Hornbeam's knowledge on August 1, 2014. [DE 4-4 at 46.] On that same day, Hornbeam received notification of the EGM to be held on August 8, 2014 to approve the new financing, including the security interest the related-party lenders would obtain in Warren Steel. [DE 4 at 8.] The EGM was postponed multiple times at Hornbeam's request because Hornbeam had insufficient information regarding the proposal. [DE 4-2 ¶ 21.]

### D. Hornbeam's Lawsuit in the BVI and Subsequent Dissolution

After Hornbeam's request for an additional postponement of the EGM was denied, Hornbeam sought an injunction in the BVI Commercial Court on August 29, 2014 to enjoin the EGM. [DE 4 at 9.] An injunction was granted the same day. [DE 128 at 4.]

In September 2014, Hornbeam learned that the new financing had already been approved by Symeou on August 1, 2014. [DE 4-2 ¶ 23.] On September 15, 2014, Hornbeam filed a claim for unfair prejudice pursuant to § 184I of the BVI Companies Act of 2004. [DE 128 at 4.] On October 10, 2014, Hornbeam asked the BVI court to liquidate Halliwel which was denied at a hearing on October 13, 2014. [*Id.*] The BVI liquidation proceedings were withdrawn by consent between the parties. [DE 4 at 9.]

On December 10, 2014, the BVI court assessed $846,526 in costs and attorneys' fees against Hornbeam in favor of Halliwel, Symeou, and Marigold.[3] [DE 128 at 4.] On December 22, 2014, Hornbeam held a meeting of unnamed shareholders to dissolve in accordance with the

---

[3] Hornbeam was required to pay this judgment prior to proceeding with any new BVI claims. [DE 128 at 4.] Hornbeam paid the judgment in November 2016. [*Id.*]

3

laws of Panama. [DE 172 at 5.] On January 5, 2015, notice of the dissolution was published in the Panamanian newspaper. [*Id.*]

### E. Hornbeam's Application for § 1782 Discovery

Shortly after initiating its dissolution, Hornbeam filed its § 1782 discovery application with this Court on December 29, 2014. Hornbeam seeks discovery to use in three proceedings: (1) litigation Hornbeam would file in the BVI against Halliwel, Marigold, and Symeou for violation of the BVI Business Companies Act of 2004; (2) litigation Shulman would file against Symeou for breach of contract and other fiduciary duties; and (3) litigation Shulman would file against Kolomoisky and Bogolyubov for breach of the joint venture agreement. [DE 1 at 3.] The subjects of the requested discovery are entities in the Southern District of Florida that provided loans to Warren Steel. [DE 45, Hearing Tr., Feb. 10, 2015, 5:18-23.] Hornbeam plans to obtain discovery prior to filing its BVI lawsuit as part of its legal strategy. [DE 4 at 14.]

### F. The 2015 Order

The Magistrate Judge approved the application on February 11, 2015 without detailing findings that Hornbeam satisfied each of the requirements for a § 1782 application. [DE 12.] The 2015 Order authorized Hornbeam to serve subpoenas on 15 persons and entities for testimony and documents. [*Id.*] After subpoenas were served in 2016, Symeou and Halliwel intervened and moved for a stay due to an appeal that was pending before the Eleventh Circuit Court of Appeals on a related § 1782 application in Alabama. [DE 157 at 5.] This Court granted the stay on July 13, 2016. [DE 54.]

Although the Eleventh Circuit ruled in September 2016 and Hornbeam paid the BVI judgment in November 2016, it did not move to lift the stay until January 27, 2017. [DE 59.] Then, reversing course, Hornbeam moved to extend the stay, which the Court granted and again

4

extended until June 16, 2017, because Hornbeam needed time to initiate its BVI lawsuit. [DE 71; DE 74.] As the stay was set to expire, Hornbeam moved to lift the stay because, while it had not filed any claims in the BVI, Shulman, on his own behalf, had filed claims in England on the same allegations. [DE 75.] In August 2017, Magistrate Judge Turnoff lifted the stay. [DE 108.]

### G. The 2018 Order

On October 13, 2017, Intervenors moved to vacate the 2015 Order and to deny Hornbeam's application [DE 128.] On January 22, 2018, Magistrate Judge Turnoff issued the 2018 Order denying the Motion to Vacate the 2015 Order.[4] [DE 153.] Intervenors objected that Hornbeam's delay in filing a lawsuit demonstrates it does not intend to sue and that the discovery the 2015 Order granted Hornbeam was broad and burdensome. [DE 157.] Hornbeam responded to Intervenors' objections. [DE 161.] Before replying, however, Intervenors filed a Renewed Motion to Vacate on February 28, 2018 alleging "newly discovered" evidence that Hornbeam had finalized its dissolution, thus failing to meet another § 1782 requirement. [DE 172.]

## I. STANDARD OF REVIEW

The Court has reviewed the record *de novo* based on the evidence provided and supplemented by the Renewed Motion to Vacate [DE 172] to confirm that Hornbeam has satisfied the § 1782 requirements.[5]

## II. DISCUSSION

A district court may grant a § 1782 application for discovery for use in a foreign proceeding if: (1) the request is made by an interested person; (2) the request seeks evidence; (3)

---

[4] The 2018 Order also granted Shulman's own § 1782 application. [DE 153.] Kolomoisky objected to Shulman's application because the English proceeding was dismissed. [DE 156.] This Court recently resolved that issue by denying Shulman's application for failure to meet the § 1782 requirements. [DE 196.]

[5] While the standard of review is determined by whether a ruling is dispositive, the caselaw is unsettled as to whether a ruling on a § 1782 application is dispositive. Thus, out of caution, the Court has undertaken a *de novo* review.

5

the evidence is to be used in a foreign proceeding; and (4) the person from whom discovery is sought resides or is found in the district ruling on the § 1782 application. *Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241 (2004)). If these requirements are met, a district court has discretion to grant a § 1782 application and should consider whether the discovery request is unduly intrusive or burdensome.[6] *Id.* Intervenors do not dispute that Hornbeam has satisfied the second and fourth requirements. Both the Objections and Renewed Motion to Vacate challenge solely the first and third requirements.

A. **Interested Person Requirement**

Intervenors assert that Hornbeam fails to meet the first requirement—whether the discovery request is made by an interested person—because Hornbeam is now dissolved. Interested persons for the purposes of § 1782 include litigants in a foreign proceeding, or individuals or entities who have significant procedural rights in a foreign investigation or merely possess a reasonable interest in obtaining assistance. *Intel*, 542 U.S. at 256. The legislative history of § 1782 demonstrates that the requirement should be read broadly; amendments made in 1964 allowed interested persons, and not just foreign governments, to seek assistance under § 1782. *In re Ministry of Legal Affairs of Trin. & Tobago*, 848 F.2d 1151, 1153 (11th Cir. 1988), *abrogated on other grounds by Intel*, 542 U.S. at 259.

Here, the primary issue is whether Hornbeam, as a dissolved entity, can pursue an action in the BVI. Both sides offer conflicting expert declarations on Panamanian law allegedly applicable to this issue. Intervenors' expert states that, under Panamanian law, Hornbeam cannot

---

[6] The other three factors the Court should consider in exercising its discretion include: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the tribunal and the receptivity of the foreign government to the United States' assistance; and (3) whether the request conceals an attempt to circumvent policies of a foreign country or the United States. *Intel Corp. v. Advanced Micro Devices Inc.*, 542 U.S. 241 (2004). Intervenors do not directly challenge the 2015 Order on these bases.

6

file new claims after January 5, 2018, which would be three years from the publication of notice of dissolution. [DE 172-1 at 13.] On the other hand, Hornbeam's expert states that another provision of Panamanian law allows Hornbeam to file claims past January 5, 2018 for the purposes of liquidation which is the process Hornbeam is undertaking. [DE 184-1 at 15.]

In reviewing the dueling declarations, the Court is left to tip a scale where the balance of interests is in equipoise. Both experts appear well-credentialed and credible. Based on that, the Court finds that Hornbeam has put forth a sufficient basis to demonstrate it can pursue claims under Panamanian law. This is a just and equitable outcome based on several factors. First, Intervenors' arguments are late; they have been aware of Hornbeam's dissolution since 2015.[7] *See In re Bracha Found.*, 663 F. App'x 755, n.2 (11th Cir. 2016); 2015 Symeou Email [DE 184-2 at 4.] Intervenors had ample opportunity to bring this issue to the Court's attention, including at the January 17, 2018 hearing or in the February 5, 2018 objections. [DE 157.] Second, there is a presumption in favor of allowing the application to proceed. *See In re Clerici*, 481 F.3d at 1331. The application was granted by the 2015 Order and Intervenors appear to be taking steps to frustrate Hornbeam's liquidation process with a "gotcha" tactic. For these reasons, the Court finds that Hornbeam is an interested person under § 1782. Therefore, the Renewed Motion to Vacate is denied.[8]

---

[7] Counsels' misrepresentations [DE 172 at 2] that they have only "shockingly just learned" that Hornbeam dissolved is a flat out intentional misrepresentation and a clear breach of the professional duty of candor to the Court. If conduct violative of the professional rules occurs in the future, the Court will impose appropriate sanctions including revoking pro hac status.

[8] The Court is similarly not persuaded by Intervenors' eleventh hour unsubstantiated allegations that Hornbeam is tied to corruption and criminal conduct. Even if Hornbeam's law firm represented *other* clients engaging in misconduct, there is no record evidence of misconduct by Hornbeam. Given that the information relied on by the Intervenors was available for more than a year prior to their first Motion to Vacate [DE 128] in October 2017, this is an obvious effort to "poison the well."

### B. Foreign Proceeding Requirement

Intervenors also assert that Hornbeam fails to meet the third § 1782 requirement—whether the requested discovery is for use in a foreign proceeding. *See In re Clerici,* 481 F.3d at 1324, 1332 (11th Cir. 2007). In order to satisfy the requirement, a proceeding only needs to be "reasonably contemplated." *Intel,* 542 U.S. at 259. However, the future proceeding must be more than speculative; there must be reliable indications of the likelihood that proceedings will be instituted within a reasonable time. *Consorcio Ecuatoriano de Telecomunicaciones, S.A. v. JAS Forwarding (USA), Inc.,* 747 F.3d 1262 (11th Cir. 2014).

#### 1. Courts Look for a Demonstrated Intent to Litigate

The key to evaluate the term "reliable indications" lies in the nature of the support the parties provided to demonstrate their intent to litigate. Examples of reliable indications are shown where the applicants specified when they would file their claim, provided specific supporting evidence, or articulated a litigation theory. *Furstenberg Finance SAS v. Litai Assets,* 877 F.3d 1031, 1035 (11th Cir. 2017); *Bracha Found. v. Hornbeam Corp.,* 663 Fed. App'x 755, 763-64 (11th Cir. 2016). If the applicant intends to sue and provides substantial information to the court (including a legitimate and detailed explanation of the underlying investigation and valid reasons to obtain the discovery before filing suit), it may also reliably indicate a future proceeding. *Consorcio Ecuatoriano de Telecomunicaciones,* 747 F.3d at 1271.

#### 2. Substantial Information Indicates Hornbeam's Intent to Litigate

Hornbeam's application satisfied this requirement. The application stated it reasonably contemplated litigation in the BVI against Intervenors, and others, for violation of the BVI Business Companies Act of 2004. [DE 1 at 2.] Because Hornbeam's application was granted in

8

2015 and a lawsuit is yet to be filed in the BVI, Intervenors contend that Hornbeam has no intention of suing in the BVI.

However, Intervenors ignore the substantial information Hornbeam provided to the Court, buttressed by its experts' declarations, that makes clear Hornbeam's intention to pursue litigation in the BVI under the Business Companies Act of 2004. [DE 1 at 3.] Hornbeam sets out significant details on the underlying claim and investigation (including on the joint venture agreement, the formation of Halliwel, the malfeasance investigation, and the BVI liquidation proceedings). [DE 4 at 5-9.] All of this information is further supported by the declarations from Michael John Fay, BVI counsel to Hornbeam, and Fabrizio Campanile, Swiss counsel to Hornbeam and Shulman. [DE 4-1; DE 4-2.] Fay provides a detailed legal overview of the court system in the BVI, the BVI Business Companies Act of 2004, and the basis for Hornbeam's lawsuit. [DE 4-1 at 12-19.] Hornbeam has consistently maintained its plan is to obtain discovery prior to filing suit in light of BVI law, which Fay states is "well-advised." [DE 4-1 at 22; DE 4 at 14.] This extensive information reliably indicates that a future proceeding is likely after discovery is obtained. This conclusion is further supported by the Second Circuit's recent holding that Hornbeam's intention to litigate in the BVI is reasonably contemplated after it obtains discovery.[9] *In re Hornbeam Corp.*, 17-658-CV, 2018 WL 416486, at *1 (2d. Cir. Jan. 16, 2018).

Intervenors also argue that because Shulman pursued a lawsuit in England, Hornbeam no longer plans on pursuing a lawsuit in the BVI. However, Hornbeam's application contemplates both the lawsuit that Shulman pursued in England and Hornbeam's BVI action as separate lawsuits. [DE 1 at 2-3.] Therefore, because Hornbeam has provided the Court with substantial

---

[9] That holding is consistent with the Eleventh Circuit's earlier opinion that Hornbeam had shown it intended to return to litigate in the BVI. *In re Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016).

9

information that indicates Hornbeam's intent to sue, the Court finds that the BVI action is reasonably contemplated. Thus, Intervenors' objection is overruled.

### III. Scope of Discovery

Intervenors alternatively argue that the discovery granted to Hornbeam is overly broad and burdensome—a discretionary factor the Court should consider in evaluating a § 1782 application. *See Intel* at 264. If a request is burdensome, it may be rejected or trimmed. *Intel,* at 265. To determine the proper scope of discovery, the Court considers whether the information is "relevant to any party's claim or defense" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court is mindful that the tendencies of overbroad discovery requests led to the proportionality requirement. Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment.

There are three main areas of discovery Hornbeam is authorized to pursue: (1) testimony from the discovery subjects[10]; (2) documents between the discovery subjects and Warren Steel; and (3) documents between the discovery subjects and a lengthy list of lenders, entities, and individuals related to Shulman, Kolomoisky, Bogolyubov and/or Korf ("related persons"). [DE 12.] Intervenors only contest the third area, the related persons discovery, as overly broad and burdensome. [DE 12 ¶¶ 4(i)-(k).] Hornbeam responded that it hopes to discover transactions with related persons involving Warren Steel, thus demonstrating the elaborate self-dealing scheme executed by Kolomoisky and Bogolyubov. [DE 161 at 19.]

In keeping with the proportionality requirement of Federal Rule of Civil Procedure 26(b)(1), the Court considers the potential harm Hornbeam suffers, the difficulty in providing a

---

[10] The discovery subjects, Florida entities that provided loans to Warren Steel, include: Mordechai Korf; Felman Trading Inc.; Felman Production LLC; Optima International Miami, Inc.; Optima Fixed Income LLC; Optima Industrial Management, LLC; Georgia American Alloys, Inc.; Optima Specialty Steel, Inc.; Optima Ventures LLC; Optima Acquisitions LLC; Optima Group, LLC; Optima Highland LLC; 5251 36st LLC; CC Metals & Alloys LLC; and Felman Production Inc. [DE 12].

10

narrowed request for discovery to prove complex fraud, but also that the request may include an avalanche of documents that are unrelated to Warren Steel and thus not relevant. In balancing these factors, the Court is persuaded that the discovery scope authorized by the Northern District of Alabama meets the proportionality requirement. *In re Bracha Found.,* No. 15-00748, 2015 WL 6123204, at *5 (N.D. Ala. Oct. 19, 2015). Therefore, the Court will narrow the scope of discovery and preclude Hornbeam from conducting the related persons discovery that was previously granted by the 2015 Order.[11] [DE 12 ¶¶ 4(i)-(k).] However, if after receiving the approved discovery, Hornbeam demonstrates grounds to request additional discovery, the Court will entertain Hornbeam's specific requests which must satisfy the proportionality requirement. Thus, Intervenors' objection is sustained in part. Therefore, it is

ORDERED THAT:

(1) Intervenors' Objections [DE 157] that Hornbeam does not satisfy the "foreign proceeding" requirement of a § 1782 application are **OVERRULED.**

(2) Intervenors' Objections [DE 157] that the scope of the authorized discovery is overly broad and burdensome are **SUSTAINED IN PART** as follows:

   a. The Court **QUASHES** the subpoenas previously issued to the discovery subjects pursuant to the Court's 2015 Order [DE 12]. The discovery subjects shall not produce the documents ordered in that subpoena and shall only produce documents set forth in accordance with this Order.

   b. The Order [DE 12] is amended to **AUTHORIZE** amended subpoenas to be issued and served consistent with the guidelines in Exhibit A. A copy of this Order along with Exhibit A shall be served with each discovery demand.

---

[11] Of course, the scope of discovery does not include privileged materials. *Intel,* 542 U.S. at 243.

      i. The discovery subjects shall produce the documents requested in their respective subpoenas within twenty-one (21) days of service of the subpoena and as required under the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of Florida.

      ii. The discovery subjects shall continue to preserve documents and evidence, electronic or otherwise, in their possession, custody or control that contain information potentially relevant to the subject matter of Hornbeam's document request.

  c. Hornbeam may make further requests if after receiving the authorized discovery it finds a legitimate reason for additional discovery. The Court shall retain jurisdiction over the matter for the purpose of enforcement and assessing any supplemental request for discovery assistance that may be requested by Hornbeam.

(3) Intervenors' Renewed Motion to Vacate [DE 172] is **DENIED.**

(4) Hornbeam's Motion for a Hearing [DE 191] is **DENIED AS MOOT.**

(5) By **July 9, 2018,** the parties are to meet and confer, and file a joint discovery plan to complete discovery by October 7, 2018. The discovery plan shall include the cost of the proposed plan and the parties' efforts to control costs and otherwise comply with Rule 1 of the Federal Rules of Civil Procedure proportionality requirement. If the plan is unworkable or vague, the Court will set a hearing for July 11, 2018 at 10:30 AM.

(6) All discovery disputes are referred to Magistrate Judge Lauren Louis. The parties are required to follow the process for discovery disputes in Exhibit B.

DONE AND ORDERED in Miami, Florida, this 25TH day of June, 2018.

                                                                PATRICIA A. SEITZ  
                                                                UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

Exhibit A
Scope of Discovery

(1) Hornbeam is authorized to issue and serve subpoenas on Mordechai Korf; Felman Trading Inc.; Felman Production LLC; Optima International of Miami, Inc.; Optima Fixed Income LLC; Optima Industrial Management, LLC; Georgia American Alloys, Inc.; Optima Specialty Steel, Inc.; Optima Ventures LLC; Optima Acquisitions LLC; Optima Group, LLC; Optima Highland LLC; 5251 36st LLC; CC Metals & Alloys LLC; and Felman Production Inc., (collectively, the "discovery subjects") for the testimony of Mordechai Korf and/or each of these entities' key employees regarding the following subjects:

  a. The discovery subject's corporate structure;

  b. The discovery subject's financial records concerning Warren Steel, business transactions with Warren Steel, or loans to Warren Steel, including the source of each loans origination and the account from which each loan was made;

  c. The discovery subject's business transactions with Warren Steel;

  d. The discovery subject's document retention policies;

  e. The discovery subject's communications and relationship with each of the other discovery subjects, as well as other related persons[12] concerning Warren Steel, business transactions with Warren Steel, or loans to Warren Steel.

(2) Hornbeam is authorized to issue and serve subpoenas to inspect the discovery subjects' premises.

---

[12] The other related persons include: Divot Enterprises Limited; Querella Holdings Limited; Kentucky Electric Steel; Raytrans Management LLC; Marigold Trust Company Limited; Hornbeam Corporation; Tectum Trust Management Establishment; Instrad Limited; Plama Limited; Bracha Foundation; Privat Intertrading a/k/a ZAO Privat Intertrading; Privat Group; Haftseek Investments Ltd.; GM Georgian Manganese Holdings Ltd.; Georgian Manganese LLC; Vartsikhe 2005, LLC; Vadim Shulman; Verena Ernst; Ronny Pifko; Fabrizio Campanile; Neophistos Savvides; Panikos Symeou; Artemis Mildoni; Christou Thanos; Timur Novikov; Igor Kolomoisky; and Genady Bogolyobuv.

(3) Hornbeam is authorized to issue and serve subpoenas on the discovery subjects for the production of the following documents:

   a. All documents and communications concerning the discovery subjects' corporate structure, including a corporate organization chart as well as all documents and communications concerning the same.

   b. The discovery subjects' officer, employee and department organizational charts and/or lists as well as all documents and communications concerning the same.

   c. All documents and communications concerning all loans and credit transactions to which Warren Steel is a party.

   d. All documents and communications, concerning any transaction, loan, agreement, contract, invoice or understanding with Warren Steel.

   e. All documents and communications that are or are concerning internal or external valuations, appraisals, liquidation analyses, fairness or solvency opinions, or other documents concerning the value of the liabilities of Warren Steel from January 1, 2006 to the present.

   f. All invoices, contracts and agreements concerning Warren Steel.

   g. All documents and communications concerning any bank accounts maintained for the benefit of or utilized by Warren Steel.

   h. All documents and communications concerning all loans and credit transactions to which Warren Steel is a party.

<u>Exhibit B</u>

## DISCOVERY PROCEDURES FOR MAGISTRATE JUDGE LAUREN LOUIS

If a bona fide discovery dispute arises notwithstanding these guidelines, the parties must first confer in a good faith effort to resolve the dispute in compliance with S.D. Fla. L.R. 7.1(a)(3). Counsel must under this Local Rule certify that good faith efforts were made. An adequate certificate of conference almost always requires at least one, if not more, personal communication between counsel. The Court may deny relief if counsel fails to abide by this obligation or fails to certify compliance with the Rule.

Except as provided below, discovery disputes shall **not** be raised by filing discovery motions under Rule 37. If, after conferring, parties are unable to resolve their discovery disputes without Court intervention, the Court will set the matter for a hearing. The party seeking to enforce a discovery obligation or obtain protection from such an obligation (the "movant") shall utilize the discovery calendar process. After conferring with the opposing party to confirm available dates, the movant shall contact the undersigned's Chambers via email at louis@flsd.uscourts.gov and place the matter on the next available discovery calendar.

On the same day that the Court confirms an available time on the discovery calendar, the movant shall file a Notice of Hearing (and calendaring a "Discovery Hearing" on the ECF system when prompted). The Notice of Hearing shall specify the substance of the discovery matter to be heard. For example, "The Parties dispute the appropriate time frame for Plaintiff's Interrogatory Nos. 1, 5, 6-9," or "The Parties dispute the number of depositions permitted." The Notice shall also include a certificate of good faith that complies with Local Rule 7.1(a)(3).

The parties shall provide the undersigned a copy of all source materials relevant to the discovery dispute via scanned PDF document that is emailed to the CM/ECF mailbox

(louis@flsd.uscourts.gov), no later than noon two business days preceding the discovery calendar. (For example, if the dispute concerns interrogatories, the interrogatories at issue and the response thereto shall be provided to Magistrate Judge Louis's Chambers.) With respect to issues involving privilege disputes, the party with the burden of persuasion on a privilege claim has the obligation to present to the Court, no later than the time of the hearing, sworn evidence if necessary to satisfy that burden. The failure to present that sworn evidence by the scheduled hearing may be deemed by the Court a waiver of the privilege absent a showing of good cause.

If a motion for protective order is required for a particular dispute under Rule 26(c), Rule 30(d)(3), or Local Rule 26.1.(g)(3), it must be served (not filed) on the opposing party as soon as possible and should not be submitted on the eve of the contested event. The failure to timely preserve an objection for that purpose may be deemed a waiver. But if a deposition scheduling dispute arises prior to a deposition, the service of the motion followed by a good faith conference to resolve the dispute will be sufficient to preserve the issues involved without fear of waiver prior to the Court resolving the dispute at a discovery conference. *See also* S.D. Fla. L.R. 26.1(h). If the parties do not thereafter reach agreement to resolve the dispute, the moving party shall schedule the matter at the next available discovery calendar.

Discovery disputes must be raised timely as required by S.D. Fla. L.R. 26.1(g)(1). The Court strictly enforces this Rule, and interprets the thirty-day window as the opportunity during which good faith resolution efforts must be made (subject to the seven-day agreed extension permitted by the rule). The Court also enforces Rule 26.1(d) that requires that all discovery, including resolution of discovery disputes, be fully completed prior to the expiration of the discovery cutoff. The parties are generally free to engage in agreed-upon discovery after the

cutoff date; but by virtue of the Rule, no Court intervention or remedy will be available to either party after the cutoff date.

It is the intent of this procedure to minimize the necessity of motions. The Court expects all parties to engage in reasonable compromise to facilitate the resolution of their discovery disputes.