```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                        MIAMI DIVISION

 3               CASE NO. 1:14-CV-24887-PAS

 4

 5
    APPLICATION OF HORNBEAM CORPORATION      Miami, Florida
 6  REQUEST FOR DISCOVERY PURSUANT
    TO 28 USC 1782                      July 11, 2018
 7                                      Wednesday

 8                                      Scheduled for 10:30 a.m.
                                        10:30 a.m. to 11:57 a.m.
 9
                                        Pages 1 to 76
10
    _____
11

12                       DISCOVERY HEARING

13

14           BEFORE THE HONORABLE PATRICIA A. SEITZ
                  UNITED STATES DISTRICT JUDGE

15                            AND

16          BEFORE THE HONORABLE LAUREN FLEISCHER LOUIS
                 UNITED STATES MAGISTRATE JUDGE
17

18  APPEARANCES:

19
    FOR THE APPLICANTS:
20
                              Hogan Lovells US, LLP
21                            BY: DENNIS H. TRACEY, III, ESQ.
                              BY: DAVID R. MICHAELI, ESQ.
22                            875 Third Avenue
                              26th Floor
23                            New York, New York 10022

24

25
```

```
 1    APPEARANCES (CONTINUED):

 2

 3    FOR THE INTERVENORS:
                                    Reed Smith, LLP
 4                                  BY: EDWARD M. MULLINS, ESQ.
                                    1001 Brickell Bay Drive
 5                                  Suite 900
                                    Miami, Florida 33131
 6
                                    Marks & Sokolov, LLC
 7                                  BY: BRUCE MARKS, ESQ.
                                    1835 Market Street
 8                                  Philadelphia, Pennsylvania 19103

 9
      FOR THE SUBPOENA RESPONDENTS:
10                                  Gunster
                                    BY: JORGE DAVID GUTTMAN, ESQ.
11                                  600 Brickell Avenue
                                    Suite 3500
12                                  Miami, Florida 33131

13
      FOR THE SUBPOENA RESPONDENT
14    SPECIALTY STEEL WORKS:        Squire Patton Boggs (US) LLP
                                    BY:  ANDREW RUSSELL KRUPPA, ESQ.
15                                  200 S. Biscayne Boulevard
                                    Suite 4700
16                                  Miami, FL 33131-2398

17
      STENOGRAPHICALLY
18    REPORTED BY:                  GLENDA M. POWERS, RPR, CRR, FPR
                                    Official Court Reporter
19                                  United States District Court
                                    400 North Miami Avenue
20                                  Room 08S33
                                    Miami, Florida  33128
21

22

23

24

25
```

1          (Call to the order of the Court:)

2          COURTROOM DEPUTY:  All rise.

3          In the District Court of the Southern District of

4    Florida; the Honorable Magistrate Judge Lauren Louis and the

5    Honorable Patricia Seitz presiding, Case Number 14-Civil-24887,

6    In re:  Panama.

7          Counsel, please state your appearance for the record.

8          MR. TRACEY:  Dennis Tracey, Hogan Lovells, for the

9    applicant.

10          MR. MICHAELI:  David Michaeli, Hogan Lovells, for --

11          THE COURT:  Excuse me.  Let me just make sure that I

12    can put the name with my cheat-sheet here, and the face.

13          Okay, Mr. Tracey.

14          MR. TRACEY:  Yes.  Dennis Tracey, Hogan Lovells, for

15    Hornbeam.

          THE COURT:  Okay.  And this is Mr.?

          MR. MICHAELI:  David Michaeli, Hogan Lovells, also for

     Hornbeam.

          MR. GUTTMAN:  Good morning, Your Honor.  Jorge Guttman,

     on behalf of subpoena respondents, a number of them.

          THE COURT:  It's Guttman, G-U-T-T-M-A-N?

          MR. GUTTMAN:  Yes, Your Honor.

          THE COURT:  Okay, Mr. Guttman.

          MR. MARKS:  Your Honor, I'm Bruce Marks.  I represent

     Mr. Symeou and Halliwel Assets, Inc., the intervenors.

THE COURT:  Okay.

MR. MULLINS:  Good morning, Your Honor.  Ed Mullins for Reed Smith, co-counsel for the intervenors.

THE COURT:  Good morning, Mr. Mullins.

MR. KRUPPA:  Good morning, Your Honor.  Andy Kruppa, representing only Specialty Steel Works, which is formerly known as Optima Specialty Steel.

THE COURT:  Okay.  Who is one of the targets; right?

MR. KRUPPA:  Yes, one of the subpoena respondents, Your Honor.

THE COURT:  And Mr. Guttman represents all of the other --

MR. GUTTMAN:  The remainder, yes, sir.

THE COURT:  Please have a seat.

MR. GUTTMAN:  Thank you.

THE COURT:  I invited Judge Louis to join us today because, if you all have not gathered by now, I would like to see this thing be more efficiently resolved than it has been up to this point.

It has been going on since 2014; and granted, it has gone up to the Court of Appeals.  I recognize that the intervenors are fighting this tooth and nail, and I've had a chance to quickly skim your motion to stay the proceedings pending an appeal to the Eleventh Circuit, and we'll take care of that.

But let me just find out, what is the status of the discovery in Alabama and in New York?

MR. MARKS:  Your Honor, if I might, I'm Bruce Marks, and I'm representing --

THE COURT:  You can sit down, Mr. Marks, because then you're close to the microphone and it's more helpful to us.

MR. MARKS:  I didn't realize I was that tall, but fair enough.

Your Honor, in New York, subpoenas were served on the banks ex parte --

THE COURT:  Okay.

MR. MARKS:  -- and the banks produced records mainly before we were aware of the proceeding, and that has now been completed.

THE COURT:  Okay.

MR. MARKS:  Hornbeam was given authority in December of 2014 to serve additional subpoenas to accounting firms and a law firm.  Hornbeam has never served those subpoenas in New York since 2014.

That's the status of the New York proceeding.

The judge in New York allowed Hornbeam a year to file new BVI proceedings.  Obviously, the new proceedings have not occurred.  There was some practice where the judge extended that time period.

The last order extending the time period wasn't clear

whether the time period is expired or not, but we've thought, practically, that the judge would extend the time period pending the resolution of these Florida proceedings.

So that's where things are in New York.

Bank discovery completed.  Three subpoenas in the last four years have not been served on the other authorized subpoena targets.

THE COURT:  Okay.

MR. MARKS:  In Alabama, Your Honor, the Eleventh Circuit originally stayed the order granting the discovery on Regent's Bank.  That was the matter that went on appeal.

The Eleventh Circuit affirmed in part, reversed in part.  It affirmed the discovery for Hornbeam.  It reversed as to Bracha.

And after the remand, the bank produced the responsive records to Hornbeam, and Bracha decided not to pursue discovery on its own, and, effectively, was dismissed from the case; and there's been no activity in Alabama, Your Honor, I guess, for at least a year-and-a-half.

There was a little flurry when the documents were being produced, and we made some changes to the protective order in Alabama at the time; but again, that was about a year-and-a-half ago.

THE COURT:  Okay.

MR. MARKS:  There are two other proceedings,
Your Honor.  I can bring you up-to-date on those, if Your Honor
chooses.

THE COURT:  What are they?

MR. MARKS:  Your Honor, they obtained an ex parte order
in Delaware in 2015.

They were authorized to serve subpoenas on --

THE COURT:  I'm familiar with that one.

MR. MARKS:  -- on a number of recipients.  They've
never served subpoenas in Delaware.

THE COURT:  And where was the other one?

MR. MARKS:  Your Honor, in Ohio, they received an
ex parte order to serve subpoenas on Warren Steel and, I
believe, one other subpoena recipient.

When we learned of that, we intervened.

The judge in Ohio stayed the case because the BVI
judgment had not been paid at the time.  It was stayed,
Your Honor, I believe, in early 2016, and there's been no
action on behalf of Hornbeam.

I also believe Bracha was an applicant there.  They
have done nothing to seek relief from the stay that's been in
place in Ohio for two years.

THE COURT:  Okay.  So, Mr. Marks, are you primarily the
lead here?

MR. MARKS:  No, Your Honor.  I just happen to be the

one who was most familiar with the question that Your Honor answered.  We have -- different people are going to do different things.  I think, actually, Mr. Guttman may be playing a more significant role than me today.

THE COURT:  Okay.  What's your response to that, Mr. Tracey?

MR. TRACEY:  That's an accurate description of where things stand.  Generally, New York discovery has been completed, and the Alabama --

THE COURT:  Why didn't you pursue the three additional subpoenas?

MR. TRACEY:  That was, Your Honor, before we were involved in the case, so I do not know why prior counsel didn't pursue that, but they determined, for whatever reason, that they weren't necessary.  They got the bank records, which they thought were the key documents, and so that's completed.

The Alabama discovery is also completed.  The Regent's Bank information was produced, and we're in possession of that.  And that's where they stand.

THE COURT:  What are you doing with this information?

MR. TRACEY:  We are analyzing the information, but the key information for the BVI decision is the information that we're seeking in this jurisdiction, and we have gotten no documents in this jurisdiction.

THE COURT:  What have you done to really push it?

MR. TRACEY:  To push the discovery here?

THE COURT:  Uh-huh.  I mean, I asked that question, as you could see, I was surprised that you didn't have the subpoenas all ready to go.  Weren't subpoenas issued once before, initially, and why weren't they served?

MR. TRACEY:  Yes, Your Honor, the subpoenas were issued and ultimately served.  It took prior counsel a year to serve them, but they were served back in 2016.

And then there was a very long series of motions of every kind brought by the subpoena recipients, and Symeou, and Halliwel, to prevent us from getting those documents, and we've been fighting those fights ever since.

And until the June 25th order, there was no activity, we couldn't take discovery because it was -- we were being stopped at every stage.

And after June 25th, we prepared new subpoenas, which were in accordance with Your Honor's order, and those have been served.

THE COURT:  Oh, they have been served?

MR. TRACEY:  They have been served.

THE COURT:  And were the subpoenas served for production or for the depositions?

MR. TRACEY:  Both, Your Honor.

THE COURT:  Any chance that I can see what they look like?

MR. GUTTMAN:  Yes, Your Honor, if I may approach, I have a couple of them.  Did you bring any --

MR. TRACEY:  We don't have all of them.

MR. GUTTMAN:  We don't have all of them.  We have two samples, if that works, they're identical.

MR. TRACEY:  They're all, basically, the same.

THE COURT:  Why don't you put them on the Elmo so we can all see it.  How about that?  How many were served?

MR. GUTTMAN:  We were served with 22 subpoenas yesterday afternoon at 2:25 p.m., and I would presume that Mr. Kruppa was also served at around the same time with two subpoenas.

MR. KRUPPA:  Correct.

MR. MARKS:  Your Honor, I would add -- sorry.

THE COURT:  Mr. Kruppa, so you got two subpoenas?

MR. KRUPPA:  We agreed to accept service on behalf of Specialty Steel Works, and we received service of process at 3:22 p.m. yesterday for deposition and for production of records.

THE COURT:  Okay.  And what about you, Mr. Guttman?

MR. GUTTMAN:  Your Honor, we received 22 subpoenas at 2:25 p.m., and thereafter, for -- two for each of the subpoena respondents, one for deposition, one for production of documents.

THE COURT:  So, actually, 11 targets?

MR. GUTTMAN:  11 targets, yes.

THE COURT:  And those 11 targets are CC Metals and Alloys --

MR. GUTTMAN:  May I just bring one of them, to make sure I have everybody?

THE COURT:  Okay.

MR. GUTTMAN:  Your Honor, I'm just trying to find a listing with all of the subpoena respondents, but CC Metals and Alloys is one of them, Georgian American Alloys is another one.

MR. MARKS:  It's in the protective order, Jorge.

MR. GUTTMAN:  Oh, yes.  Sorry.  Okay.  All right. So that would be CC Metals and Alloys, LLC, Felman Production, LLC.

THE COURT:  Remember, you got a court reporter that's writing all of this down, and these are not common words, so --

MR. GUTTMAN:  Apologies.  I'll go slower.

THE COURT:  That would be kind.

MR. GUTTMAN:  CC Metals and Alloys, LLC; Felman Production, LLC; Felman Trading, Inc.; Georgian American Alloys, Inc.; Mr. Mordechai Korf; Optima Acquisitions, LLC; Optima Group, LLC; Optima Fixed Income, LLC; Optima Ventures, LLC; Optima International of Miami, Inc.; and 5251 36th Street, LLC.  Those are the entities I represent, Your Honor, and the individuals.

THE COURT:  Okay.   So you and Mr. Kruppa are

representing the individuals who are the only people who have standing to complain about this; right?

MR. GUTTMAN:  I think the case law is also that intervenors in the action have standing to complain, but yes, we are --

THE COURT:  But you are the ones.

MR. GUTTMAN:  Yes, we are the ones that are burdened by the subpoenas, Your Honor.

THE COURT:  Okay.  And the intervenors are really not burdened by this, except for what they actually create themselves, in so far as their delay tactics?

MR. GUTTMAN:  Well, not in terms of financial burden to them, because they're not paying for the cost of compliance with the subpoenas.  But they are burdened by the subpoenas to the extent that documents --

THE COURT:  How?

MR. GUTTMAN:  If documents and testimony are given to Hornbeam, and they're not supposed to, they're not entitled to that discovery to begin with, they are harmed by that.

And also, this brings me to another point, which is, under the stipulated protective order and the language that Hornbeam has proposed, they are suggesting that Mr. Korf, or some, or all of the subpoena respondents, will also be made parties to the proceedings in the BVI.

So, at this point, they're seeking production prefiling

and depositions prefiling of lawsuits against, potentially, my clients, Your Honor.

THE COURT:  Mr. Guttman, the only thing I've heard is that your clients are potentially at risk in this.  I don't hear anything about the intervenors having any adverse impact on them, except that they don't want whatever you know to be disclosed, because, presumably, it would be adverse, otherwise, why would they care?

MR. GUTTMAN:  Well, Your Honor, I'm sure that counsel for --

THE COURT:  I'm just asking you for common sense logic.

MR. GUTTMAN:  Your Honor, I can't speak to the actual harm that would befall a party that I do not represent.

My understanding is that this is the catalyst of that scenario.  You cannot unring a bell that has been rung.

You're going to have a situation where information is out there that Hornbeam may not be entitled to by virtue of the fact it's never been resolved, by virtue it's never been filed, by whatever reason.

The point is that it is intervenors' position, and our position as well, that they're not entitled, ultimately, to the discovery that they're seeking.

So how everybody is particularly affected is -- I can speak to my clients are in compliance with the subpoenas, but I can't speak to Mr. Marks' clients.

THE COURT:  Okay.  Okay.

MR. GUTTMAN:  So, Your Honor wanted to see the subpoenas, I'm happy to --

THE COURT:  I particularly want to see the exhibits attached to them, as far as the production.

Does it simply track the order, or is it more specific? Because I hoped that we would be -- counsel would be as focused as possible on this.

MR. GUTTMAN:  Well, they are a regurgitation of the omnibus order, Your Honor.

THE COURT:  Okay.

MR. GUTTMAN:  And there's instructions and definitions, but they haven't narrowed down anything.

THE COURT:  Okay.

MR. GUTTMAN:  Would you like me to present them.  I would need some help with them, Your Honor.

THE COURT:  So if that's all it is, then I can just simply look at the order; right?

MR. GUTTMAN:  Okay.  Yes, Your Honor.

THE COURT:  So, given the intervenors' attitudes that Mr. Tracey's client is entitled to nothing, I presume that you all spent about an hour on this joint discovery plan?

MR. GUTTMAN:  Is the question directed at me, Your Honor?

THE COURT:  No.  I'm looking at Mr. Marks and

Mr. Mullins.

MR. MARKS:  Your Honor, I'm happy to respond to that.
And the answer, Your Honor, is we have spent much more than an
hour on the joint discovery plan.  As soon as Your Honor's --

THE COURT:  So how long did you spend?

MR. MARKS:  As soon as Your Honor's issue was
ordered -- Your Honor's --

THE COURT:  How long did you spend?

MR. MARKS:  My firm?

THE COURT:  Uh-huh.

MR. MARKS:  On the joint discovery plan?

THE COURT:  Just you.

MR. MARKS:  Me?

THE COURT:  Uh-huh.

MR. MARKS:  At least eight hours.  Your Honor, I spent,
at least, I would suggest, an-hour-and-a-half to two hours in
two conference calls with Mr. Michaeli.  We initiated -- once
Your Honor's order was entered, we're the ones who sent the
e-mail to opposing counsel and asked that we should have a
conference so that we could address the issues that were in
your order.

We had a conference, I believe it was last week, I
think it was Tuesday, Your Honor.  I suggest that the
conference was a good 45 minutes to an hour.  We had a second
conference with Mr. Michaeli, I'd say it was about half an

hour, on Monday.

THE COURT:  Okay.

MR. MARKS:  Mr. Michaeli, I don't know how much time he spent, but he drafted the proposed discovery plan.

My firm, myself, spent several hours reviewing it. We worked with co-counsel, with Ed and with Jorge, to get comments on it.

THE COURT:  Oh, so you knew that they -- even before they received the subpoenas that they were going to be involved?

MR. MARKS:  Who?

THE COURT:  Mr. Jorge Guttman and Mr. --

MR. MARKS:  Your Honor, they've been involved in prior hearings before the magistrate, before Judge Turnoff.

MR. GUTTMAN:  And we've been copied on all correspondence.  We participated on the meet-and-confers as well.  From the get-go, we were the ones, as Mr. Marks said, who initiated the presence of meeting-and-conferring on June 29th after not having heard from Hornbeam.

And from the get-go, I brought up my first point, Your Honor, during that call, was that the requests as written were simply unworkable and at some point even at odds with what Your Honor had authorized in terms of the scope of the discovery.

THE COURT:  And so what did you propose, Mr. Guttman,

as one that would be workable?

MR. GUTTMAN:  Well, Your Honor, first, I didn't even get much traction on the specifics of the requests because Mr. Michaeli wanted to address the scheduling of things first, and he was concerned --

THE COURT:  The scheduling of things?

MR. GUTTMAN:  The dates by which compliance -- by which production would be over, the dates by when depositions would be done, and other matters.

The first threshold issue that we had and that we brought up, Your Honor, was also the cost of compliance based on the requests.

THE COURT:  What is the costs?

MR. GUTTMAN:  At this point, I don't have a specific number, Your Honor.  What I can tell you is that based on the --

THE COURT:  Well, then how can you be complaining about the costs if you don't have a number?

MR. GUTTMAN:  Your Honor, let me -- if I may -- just get through my argument.

THE COURT:  But help me.  I am -- I have no dog in this fight, except for the time that the warring parties take of judicial resources, and it will affect Judge Louis as well.

MR. GUTTMAN:  I'm about to help you, Your Honor.

THE COURT:  And the sense that I have from the parties'

papers is that there's not been an effort to problem-solve here.  Each side is fixed in its position, and I keep coming back to the initial thing, of if there is -- if the new issue of Hornbeam's dissolution was not an issue, if we moved the clock back a year, we would not -- you all would not have a new argument to bring up as to why the discovery should not proceed.

Before -- and that's the problem that I have with the position, it does not come across -- it comes across as one that is very -- counselors are very knowledgeable as to the rules and how to use technicalities to delay and obfuscate.

But as far as problem-solving and using judicial resources wisely, I'm concerned that I have very bright counsel, with the intervenor, and now with you, Mr. Guttman and Mr. Kruppa, who are thwarting justice here, and that concerns me.

MR. MARKS:  Your Honor, may I address that?  -- because we feel very strongly that we're not thwarting justice, and I think what you --

THE COURT:  I'm sure you do.

MR. MARKS:  But, Your Honor, it's just not -- Bruce Marks is saying that, and I think it's important that Your Honor note that, or at least hear what my argument is.

The Eleventh Circuit said it.  The Eleventh Circuit reversed the Alabama court's decision in regard to Bracha.

The Eleventh Circuit agreed with us in that argument.

        THE COURT:  Okay, but it --

        MR. MARKS:  Excuse me.

        THE COURT:  -- didn't agree with you as to Hornbeam.

        MR. MARKS:  Just one second.

        THE COURT:  True, it did not agree with you as to Hornbeam?

        MR. MARKS:  At the time, based on the facts that were in existence then, Your Honor, the Eleventh Circuit affirmed the decision granting discovery to Hornbeam.

        However, the Alabama court judge agreed with Bruce Marks on the scope of discovery.  Hornbeam was intractable on the requests that they submitted there and the breadth of the bank records that they wanted.

        THE COURT:  Mr. Marks, I'm with you on the scope.

        MR. MARKS:  Okay, fine.  But I'm just saying, Your Honor, I don't think we were trying to somewhat thwart justice, because the District Court in Alabama agreed with our position, and we very much appreciate what Your Honor has done in narrowing the scope.

        THE COURT:  And that's where I come back.

        Mr. Guttman -- I mean, Mr. Marks, the one thing that has never been disputed is that your client, Mr. Symeou, has been the one that has been frustrating the transfer of the Hornbeam shares in Halliwel to Bracha.

MR. MARKS:  Your Honor, that has absolutely been disputed.

THE COURT:  Where?

MR. MARKS:  We are not frustrating that at all.

THE COURT:  Where?

MR. MARKS:  There are articles of incorporation which govern Halliwel and how those shares can be transferred to Bracha, and Your Honor -- I'll tell you one person who's not frustrating that, it's Bruce Marks.

What could happen is if they felt that our position was not accurate and that the shares in Hornbeam could be transferred to Bracha, they would file an application in the BVI.  Why didn't that happen, Your Honor?

One reason it didn't happen is because they didn't pay the BVI judgment of $846,000.  That was -- just --

THE COURT:  But they've --

MR. MARKS:  -- excuse me -- that's why they --

THE COURT:  -- paid that.  Mr. Marks, they've paid that.

MR. MARKS:  But, Your Honor, you asked -- you suggested we were frustrating the transfer of the shares.  We didn't.  It was their own choice not to pay that judgment, which meant for over two-and-a-half years they couldn't bring that application.

THE COURT:  Okay.  Excuse me, Mr. Marks.

MR. MARKS:  Yes.

THE COURT:  Slow down, take a deep breath.

MR. MARKS:  No problem.

THE COURT:  Okay.  So what --

MR. MARKS:  But they can still bring it.

THE COURT:  So why weren't the shares transferred after the judgment was paid?

MR. MARKS:  Well -- hold on.  Because they haven't filed an application to do that because -- Your Honor, under the articles of incorporation of Halliwel, there are rights of first refusal, and if Hornbeam --

THE COURT:  Who has the rights of first refusal?

MR. MARKS:  The other two shareholders, Your Honor. Symeou, who holds -- this is a hard name to pronounce, but I've got practice -- he holds for Igor Kolomoisky, and Marigold Trust, who holds for Gennady Bogolubov.

Under the articles of incorporation of Halliwel, if they want to transfer the shares from Hornbeam to Bracha Foundation, or to somebody else, there's a procedure which they're required to follow; and the other two shareholders would have a right of first refusal, and there's an appraisal process, and this, that, and the other thing.

THE COURT:  What is the appraised value of Honeywell?

MR. MARKS:  Of Halliwel?

THE COURT:  Uh-huh.

MR. MARKS:  My best -- Your Honor, I don't think

there's been an appraisal of Halliwel, per se.

Halliwel's only ownership interest is in Warren Steel.

And based on the information I have, Your Honor, the loans to Warren Steel, you know, which, unfortunately, was in the steel industry before tariffs, the loans to Warren Steel exceed its equity.  So the likelihood is that Warren Steel may have no net value.

But the point, Your Honor, I just wanted to make is --

THE COURT:  How much equity did Hornbeam's --

MR. MARKS:  Shareholders.

THE COURT:  -- shareholders invest in Halliwel?

MR. MARKS:  Well, Your Honor, it's a complicated question because of the way that Warren Steel was originally structured and then how the ownership of Warren Steel was transferred to Halliwel.

But I would suggest to you that Mr. Shulman was probably given credit for, roughly, 30 to 40 million dollars of investment that he originally -- that he says that he originally made in the plant in Warren Steel.

He's the one who originally acquired it.  There's issues as to whether he actually paid what he said that he paid, but for rough numbers, Your Honor, I think it might have been 30 to 40 million dollars.

THE COURT:  Mr. Marks, why haven't the parties been able to get a good mediator to resolve what is, basically, a

internecine dispute -- a family dispute -- as to between a minority shareholder and the other shareholders?

MR. MARKS:  Well, Your Honor, I'm happy to answer that question.  I'll answer it two ways.  One is, one of the problems that we have is that, out of the blue, in 2014, Mr. Shulman had Hornbeam sue ex parte in the British Virgin Islands to try to put a liquidator in to liquidate Halliwel.

That was done without any notice.  They got an order, it was a restrictive order, and we were blindsided, and then there was litigation, and Hornbeam lost.  That's number one.

So it's a little difficult to deal with --

THE COURT:  And it's your position that Mr. Symeou did nothing wrong in the administration up to that and had been above-board and fully open and fair dealing with Hornbeam's beneficiary?

MR. MARKS:  Your Honor, listen, I don't know --

THE COURT:  Yes or no?

MR. MARKS:  I -- the answer is --

THE COURT:  Yes or no?

MR. MARKS:  -- Your Honor --

THE COURT:  Yes or no?

MR. MARKS:  Yes, because Mr. Symeou didn't have any day-to-day management responsibilities.  He is, essentially, holding shares in trust for Mr. Kolomoisky.  The person who managed the plant -- managed the Warren Steel plant is

Mr. Korf, whom I do not represent.

But, Your Honor, the second point is that there have been negotiations between the three principals, that's Mr. Shulman, Mr. Kolomoisky, and Mr. Bogolubov.

We all recognize that they're successful people, there have been negotiations between them after the blindside event that took place in the British Virgin Islands.

THE COURT:  You know --

MR. MARKS:  Yeah?

THE COURT:  -- let's use words that are not inflammatory.

MR. MARKS:  Your Honor, I'm happy to use less colorful words --

THE COURT:  Yes, yes.

MR. MARKS:  -- but it was sort of the "thwarting justice" that, you know, maybe triggered me a little bit.

THE COURT:  Okay, okay.

MR. MARKS:  But, Your Honor, they have had negotiations.  Okay, what happened with those negotiations?

Mr. Shulman took the information from those negotiations and he used them in the pleading that he filed against Mr. Kolomoisky in London.

So you say to me, Your Honor, "Should there be more negotiations?"

Well, there was an issue that they had negotiations and

it turned out that they were used in litigation.

But, Your Honor, I'm not -- I don't think anybody --
well, at least, I can only speak for our side of the table --
I'm not charged with resolving the overall dispute between the
three gentlemen.  That's -- as it were, it's a little bit above
my pay grade.  I do speak Russian, but it's not what I do.  It
would be like a mouse with elephants.

THE COURT:  How did you learn Russian?

MR. MARKS:  Your Honor, when I started at the
University of Pennsylvania, I wanted to study another culture
and world power.  The Chinese language is impossible.  Arabic
was difficult.

And I thought that I would like Russian literature, so
I majored in Russian language and literature when I was at Penn
and, you know, who would have ever thought that that would have
been useful --

THE COURT:  And did you pick it up?

MR. MARKS:  I have an office in Moscow, Your Honor, and
we do a lot of work in Ukraine, and I have been -- fortunately,
about a dozen years ago to have met -- I know Mr. Kolomoisky
and Mr. Shulman personally.

I've even been to Mr. Shulman's former home in Monaco
once or twice, so I spent a good -- my relatives don't
understand why I would go back to Ukraine because they
immigrated from that area; but for me, it's been a very

interesting experience.

And I've -- and you can see now, Your Honor, you've got me off that colorful, you know, lawyer-type language.

THE COURT:  I've always found that lawyers are, basically, human beings, and that we can -- when people get to know each other, then it's sometimes easier to come up with practical solutions about what is the best way forward.

And that's my goal here, because as I am what they call a -- referring all of this to Judge Louis, and the reason why I wanted her to be here, so that she can see you all and that there would be no misinterpretation of what occurred here, because she had been an eyewitness to it.

What I'd like to do is see if we can't figure out what we're doing and where we're going.  And I understand your motion to stay.  It has some merit.

The concern that I have, though, is that I would really like to see what is the issue here as to, is this really burdensome, unworkable?  What are the problems?

And until I see that, then I, quite frankly, think that if you take the appeal, you're not really being fair to the Court of Appeals, because you don't have all of the facts, and we need to eliminate litigation that doesn't -- isn't as efficient as possible, and piecemeal appellate trips is not efficient.

I want this thing to be over with.  I'm sure that both

sides of the table would like it to be over with.  And that's why I put a deadline on it, because I did not think that this needed to be -- this is not going to be a fishing expedition.

This needs to be very focused on what are the issues that Hornbeam is concerned about, as far as its interests are concerned.  And I need to ask Mr. Tracey, so what's happening with Hornbeam?  Is there a liquidator managing it?

What's happening?

MR. TRACEY:  Your Honor, Hornbeam is in dissolution. The dissolution resolution was passed in 2014, and it's in the process of winding up its affairs.  It has not --

THE COURT:  What is it doing, and who is doing it?

MR. TRACEY:  There is a liquidator who is in the process of gathering the assets, and will, when he completes that process and resolves all outstanding litigation and issues --

THE COURT:  Who is the liquidator?

MR. TRACEY:  I'm sorry, I don't know the name.  I can get it for Your Honor.

THE COURT:  I mean, isn't that really the person that is the party at interest in this point, as far as Hornbeam is concerned?

MR. TRACEY:  To some extent, Your Honor.  But the way this litigation was initiated and handled, Hornbeam gave a power of attorney for the prosecution of these proceedings, and

so we have been reporting to Mr. Shulman, not to Hornbeam.

I've had absolutely no interaction with Hornbeam's liquidator because of the power of attorney.

THE COURT:  And what does that power of attorney look like?

MR. TRACEY:  I can provide it to the Court, if you like.

THE COURT:  Because that sort of shows the scope of --

MR. TRACEY:  And the -- so, the current -- as I understand it, the current situation is that it's being wound up.  It is not performing its business functions anymore, it's solely in wind up.

And as Your Honor knows from the declarations of Panama law that were submitted, it's our expert's view, and our view, that the Hornbeam continues in existence until those litigations are completed, because that's the purpose of a wind-up proceeding.

And so, it is -- it continues for that purpose until we complete this proceeding, at least, and then we will bring a proceeding in the BVI based on the evidence that we get, if it supports it, and it will continue thereafter until that's resolved.

THE COURT:  And if the -- what you get doesn't support it, are you going to not pursue the BVI?

MR. TRACEY:  We are going to pursue whatever avenues of

remedy we have, as we --

THE COURT:  What's your client's goal here?

MR. TRACEY:  The goal is to -- well, there are two separate disputes, they overlap, but there are two separate disputes.  One is to recover his investment in Warren Steel, which is the investment that Mr. Marks described that we believe --

THE COURT:  So, 30 million, he wants it back, with what kind of interest?

MR. TRACEY:  He wants a fair level of interest, Your Honor.

THE COURT:  Which would be?  Presumably, he's done this analysis.

MR. TRACEY:  Presumably, he has, but I don't have that number handy, but I can certainly provide it.

But he wants his investment back.  And the only way we can do that is by obtaining the documents that show that that investment was misappropriated and then bring an appropriate proceeding in the BVI and/or elsewhere, because we, also, as you know, have a separate dispute.

There was a joint venture agreement among the three principals, Mr. Shulman, Mr. Kolomoisky, and Mr. Bogolubov, which went way beyond Warren Steel, and that was the basis for the proceeding that was brought in England to recover on misappropriations under that broader agreement.

And that proceeding was brought in England because Mr. Kolomoisky was there, but he has since moved, and so the Court found that it didn't have jurisdiction.

MR. MARKS:  Mr. Bogolubov.

MR. TRACEY:  Mr. Bogolubov, sorry.

So those are the two separate disputes.

If Your Honor were to suggest a mediation, I would certainly bring that to my client with a recommendation that he do it, because I understand Your Honor's frustration with proceedings that don't -- aren't productive, and we would like to have a productive resolution of our dispute.

THE COURT:  And what about this side of the room; is that your interest as well?

MR. MARKS:  Your Honor, that's beyond the scope of my engagement, but I'm happy to pass the information on.

Your Honor, I've been candid, I mean, I've been hired to do certain things in the United States; and here, you know, it's concerning discovery.

I did handle the case in Ohio where the same suit that was to be filed in the BVI was filed in the Ohio State court, but it was dismissed, so I'm limited to what I'm engaged to do.

MR. TRACEY:  May I just add one thing, Your Honor?

THE COURT:  Uh-huh.

MR. TRACEY:  In terms of lack of productivity, again, I understand the Court's frustration, and this is a discovery

dispute, in essence, and we are absolutely willing to work with the other side and with the Court, if appropriate, to narrow the discovery requests in whatever way makes them not unduly burdensome.

We have been trying to do that, but we have not been able to get information about how many pages we're talking about and where the burden lies.  But as soon as we can pinpoint where the burden is and where there are unnecessary documents being requested -- we are very anxious to accommodate that, because that's the only way we're going to get what we need.

THE COURT:  This is where I am.  I am inclined to deny the motion to stay.  If the Court of Appeals wants to stay it, they will grant the stay while you take the appeal.

I would like us to move forward, and to begin with, looking at the proposed confidentiality order.

MR. GUTTMAN:  Your Honor, I'm sorry to interrupt, but if I may, you asked of me a question before and we sort of side-tracked and I didn't get to address that issue.

I did want to put that issue to rest, which is how much we're talking about at this point based on the information that we have to date.  And you also asked how much time we have spent on the working of the discovery compliance, so --

THE COURT:  We -- I think Mr. Marks has covered that; I didn't have you quote, I presume you've done the same amount of

time?

MR. GUTTMAN:  A little bit more, Your Honor, because part of the initial conversation was on the cost of compliance, and I did research whether the cost of compliance would include attorneys fees for reviewing the responsive -- potential responsive documents for both responsiveness and privilege.

And that is something that there is a split of authority, not really a decision here in Florida, but guiding decisions from elsewhere, including the Southern District of Georgia, that do say that you're entitled to get that information.

What is clear, Your Honor, is also that if I don't bring that up at this point before we even start to comply with the subpoenas, that I waive the opportunity to recover any fees.

THE COURT:  So you brought it up.

MR. GUTTMAN:  So I brought that up.

THE COURT:  We're going to defer resolution of that issue.  Let us find out how much work is involved.

MR. GUTTMAN:  I'm about to tell you.  I'm about to tell you.

THE COURT:  Okay.

MR. GUTTMAN:  So we ran searches, based not on any narrow language, but the language that we had from the omnibus order, because, again, they haven't agreed to narrow anything.

So we got back 120 --

       THE COURT:  Well, what did you propose that --

       MR. GUTTMAN:  I brought it up from the very first --

       THE COURT:  What was your exact words that you used in the proposal to narrow it?

       MR. GUTTMAN:  Well, I first needed to understand what they wanted, and I raised the question, what is it that you want, in terms of an organizational chart, an employee --

       THE COURT:  And what did they say?

       MR. GUTTMAN:  And I got nothing other than an e-mail -- self-serving e-mail saying that I took issue with that particular request.

       THE COURT:  What?  That you what?

       MR. GUTTMAN:  That I took issue with that particular request.  So we --

       THE COURT:  Excuse me, hold right there.  Who is handling this on your side?

       MR. TRACEY:  Mr. Michaeli was.

       THE COURT:  Mr. Michaeli, was that the way you responded?

       MR. MICHAELI:  No, Your Honor, and I appreciate the question.  The first meet-and-confer conversation that we had with opposing counsel collectively, the only specific objection that they raised to the discovery authorized by Your Honor's order related to the requests for organizational documents.

And we asked for information about what sorts of organizational documents they have, organizational charts, so that we could explore the narrowest possible way to get at the information that we're looking for and that Your Honor authorized.

We still have not received a response to that question, but what we've made clear, repeatedly, is that we would like to have as much information as possible from opposing counsel on the type of information these parties actually possess, the amount of information that they possess, how it is stored, if we're talking about e-mails or stacks of paper documents, so that we can figure out together the easiest and most efficient process for gathering that information.

THE COURT:  Are you saying, Mr. Guttman, that he never said that; he's only saying that to me now?

MR. GUTTMAN:  Not in the way that he's saying it right now.  There was also some other conversation.

THE COURT:  But he did say it?

MR. GUTTMAN:  He said that he wanted to understand what we had, of course -- let me tell you what we had, Your Honor.

THE COURT:  Isn't that a reasonable request, if you're trying to --

MR. GUTTMAN:  That's not an unreasonable request, Your Honor.

THE COURT:  Okay.

MR. GUTTMAN:  But we had the threshold issue of --
because, from the get-go, they told me, I'll get back to you on
that.  They got back to me on that, saying, we'll bear the cost
of production, not the cost of review.  Okay, so that's --

THE COURT:  So what are your billable rates?

MR. GUTTMAN:  My billable rate is $515 an hour,
Your Honor.

THE COURT:  You're not going to be reviewing the
documents on your own?

MR. GUTTMAN:  Well, Your Honor, I would have to be
involved at some level because I know the issues and I know the
parties.  I agree with Your Honor, that the first level of
review would be done by somebody with a cheaper rate.

We haven't even gotten to that point, Your Honor.

THE COURT:  What about a paralegal?

MR. GUTTMAN:  Because we haven't even gotten to that
point, Your Honor, because they refuse to even entertain the
idea of bearing the cost of our review.

But, Your Honor --

THE COURT:  Okay.

MR. GUTTMAN:  Please just let me get through the actual
amount of data, which will shed some light to this issue,
Your Honor.

THE COURT:  Okay.  Can you do it in one minute?

MR. GUTTMAN:  I can try.

THE COURT:  Okay, go for it.

MR. GUTTMAN:  We ran four searches.  I provided the opposing counsel with the search terms.

THE COURT:  What were the search terms that you used?

MR. GUTTMAN:  See, I'm taking longer than a minute because you're asking me questions, Your Honor.

But the amount of data is 120 gigs so far.  One gigabyte of data is about a thousand e-mails or about a hundred thousand pages.  So we're talking about 120 times that, Your Honor.

THE COURT:  What was the search term that you used that revealed that 120 gigs?

MR. GUTTMAN:  Based on the omnibus order, we ran four individual searches.  The first search is "corporate structure," or "organizational chart," or "org chart," or "organization chart," or "officer list," or "officers," or "employee list," or "annual meeting."

And these searches were ran in the domains of those companies that I represent that have their own domains.

The second one -- because the two first requests in the omnibus order do not have any limitations with respect to Warren Steel.  They're only with respect to our -- my clients' internal organization and employee charts and structure.

THE COURT:  But usually an organizational chart doesn't -- it's just one document; is it not?

MR. GUTTMAN:  Yes, Your Honor, but that's not what the request says.

THE COURT:  How did that search produce 120 gigabytes of data?

MR. GUTTMAN:  Not just that search.  We ran additional searches.  I don't have the breakdown by search.

THE COURT:  Okay.

MR. GUTTMAN:  But the first request here, which is -- actually, it's part of the subpoena -- the first request in the subpoena is:

"All documents and communications concerning the discovery subject's corporate structure, including corporate organization chart" -- so it's including it, but it's not just that -- "as well as all the communications regarding the" --

THE COURT:  Okay -- Mr. Guttman, put on your problem-solving hat.

MR. GUTTMAN:  Your Honor, I offered to do that.  I got subpoenas yesterday with the exact same verbiage here.

THE COURT:  Okay.

MR. GUTTMAN:  I've offered to narrow -- they haven't -- I told Mr. Michaeli, give me search terms.  He hasn't done that, so I had to run my own search terms based on your order.

And what I'm telling you, Your Honor, is that all documents and communications, unfortunately, it's not workable, because I get -- then we get three other searches that --

THE COURT:  Mr. Guttman, I'm going to bring out my violin and play it for you.  I am so sorry that you are being so frustrated.

MR. MARKS:  Your Honor, could I make a practical solution?

THE COURT:  No, thank you, Mr. Marks.  I'm sure you would.

MR. MARKS:  Suggestion, I mean?

THE COURT:  But let me finish with Mr. Guttman to try and find out what he has -- what is the scope of --

MR. MARKS:  Fair enough.

MR. GUTTMAN:  So, Your Honor, in your omnibus order, you spoke about three permitted areas of scope.

The first one is testimony, which we take issue with, but we can address that because we got to do depositions.

The second one is documents between the discovery subjects -- that's us -- and Warren Steel.

And three, documents between the discovery subject and a lengthy list of lenders and individuals related to Shulman, Bogolubov, Kolomoisky, and Korf.

Unfortunately, Exhibit A to the omnibus order doesn't translate exactly with these three limited areas, because we have those first two areas that have absolutely no limitation; and if they told me, all I want is an employee list and an org chart, then I agree with Your Honor that that's two documents.

But they haven't told me that.

THE COURT:  But did you ask them?

MR. GUTTMAN:  Yes, Your Honor, that was the first question that I asked Mr. Michaeli.

THE COURT:  What did you ask them?

MR. GUTTMAN:  I asked them, what do you want?

THE COURT:  Okay.  Mr. Michaeli, what do you need in the way of organizational charts?

MR. MICHAELI:  Your Honor, what we've said and --

THE COURT:  What do you need in the way of organizational charts?

MR. MICHAELI:  I think that we need two things.  We need actual organizational charts, if there are any.

THE COURT:  Okay.

MR. MICHAELI:  We also need documents sufficient to show the relationships between these parties, and with the foreign parties, that would be the parties in the form of --

THE COURT:  What type of relationship?  You need to narrow the scope.

MR. MICHAELI:  Absolutely.  And part of that, I think, will have to be driven by what they actually have.

But one of the key issues in the case is, what is the relationship between these parties that made loans, for example, in which the same parties on both sides of the loan, and the foreign oligarchs that we understand have some

relationship with them.

We know there's a history here, and so, on this exact issue of the relationship between Mr. Kolomoisky, Mr. Bogolubov, and these subpoena respondents, other federal courts have found that these parties have been extremely evasive in explaining who owns and controls what.

And the issue of control is particularly important, and so we need documents sufficient to show those two issues, who owns what and who controls what.

That may be simply in the form of a formational document that explains the membership interests of each of these entities.  These are primarily LLCs, for example.

It may be in the form of financial documents from the companies that show who is receiving what proceeds from these companies.  It may be in the form of internal organizational documents showing who has a right to control these documents.

We certainly don't need the sun and the moon. Organizational charts, for example, is something that we asked the subpoena recipients to simply produce.  Those are clearly easy to obtain, if they have them, and we would ask that they be produced, and we're still waiting for those.

And so, we're happy to work with these parties to find out what they possess and what the least invasive way is to obtain this information.  But we are concerned that they are not prepared to do so, and we know that they have been

unwilling to do so in other cases.

THE COURT:  Mr. Marks, what was your practical solution?

MR. MARKS:  Your Honor, it seems to me that there are really three issues that have significance.

One is, let's not forget, the original allegations were that there were fake loans, that loans were papered, but there was never money in consideration for the loans.

If they believe that there were fake loans, it seems simple enough that they should narrow their request to the documents related to the loans of the related parties.

THE COURT:  So draft it for them, what they should be asking for.

MR. MARKS:  Fair enough.

Second, Your Honor, there would appear to be commercial transactions that took place between Warren Steel and some other related parties.  Presumably, there's a contract, or something along those lines, that would provide for the purchase or sale of whatever the materials were.

I guess you're going to tell me to draft that, so I could draft that.

THE COURT:  Thank you very much.

MR. MARKS:  That would be the second point.

The third point is -- it doesn't seem to me that what they're interested in is an organizational chart as to who is

the president, vice president, employee bottle washer, or whatever.  It seems to me that their point is that the -- Mr. Bogolubov and Mr. Kolomoisky may have ownership interest in some of these companies.

So again, I can't speak for Mr. Guttman, but you would seem to think that there would be a document that would seem to evidence who the owners of the limited liability companies are. I can draft that request, if Your Honor asked me to do that.

It seems to me, if we're talking about a good faith effort to determine whether they want to file a new action in BVI, taking into account, Your Honor, that Hornbeam already filed that same type of action in Ohio, without the discovery, and Shulman filed that same type of action in London, without that discovery.

THE COURT:  And it was unsuccessful.

MR. MARKS:  It was unsuccessful because, Your Honor, they didn't have jurisdiction over Mr. Bogolubov.

THE COURT:  Well, that's as to why the London proceeding --

MR. MARKS:  The case in Ohio was not dismissed on the merits either, Your Honor.  It was dismissed -- I could explain it, but for two reasons.

It was, essentially, a derivative action, as Hornbeam is a shareholder of Halliwel.  Under BVI law, you need to have the permission of the Court and the BVI in order to bring a

derivative action.  They didn't comply with that.

The second reason it was dismissed in Ohio was, under forum non convenes, because the Ohio Court determined that that action should have been brought in BVI.

I suggested three things, Your Honor.

If I could just make one more suggestion, Your Honor, on a practical perspective, which won't, I hope, involve me drafting anything.

THE COURT:  Uh-huh.

MR. MARKS:  We don't think it's appropriate -- I know Your Honor has looked at this, and I know Your Honor denied our motion for reconsideration, but we don't believe that it's appropriate to take prefiling depositions.

And, Your Honor, that's really come home since last night, because in the draft protective order that was agreed to, they added language from the order in New York -- Your Honor, if you have that filing in front of Your Honor -- if you look on page two, definition's on --

THE COURT:  Hold on, let me get it.

MR. MARKS:  I'm sorry.  1D, this is on the ECF, Your Honor.  It was filed this morning.  I don't know where to find the ECF number.

THE COURT:  It's 218.

MR. MARKS:  218, Your Honor.  218.

THE COURT:  Yes.

MR. MARKS:  If Your Honor looks at 1E, if Your Honor has that in front of you -- "permitted litigations."

They added the language at the end after -- their application says they're planning to sue Mr. Symeou, Halliwel, Marigold Trust.

Symeou and Marigold Trust are the other two shareholders of Halliwel; and Halliwel, which, of course, is the BVI company.

And, Your Honor, then they added the language -- fair enough, this is what they want to do -- "and/or successors, agents, or affiliates."

That sends to us, Your Honor, a clear message that they're likely to bring Mr. Korf and the companies that are the subpoenaed recipients here in the United States into the BVI action.  The BVI does not have the same concept of personal jurisdiction as we do.

If they have an anchor defendant, as they tried to do in London, Mr. Bogolubov was a resident of England for some period of time, if you nail the anchor defendant, then you can bring in other people even if they don't have contact with the jurisdiction.

So, clearly, Halliwel, Symeou, and Marigold Trust are anchor defendants.  This signifies that they're looking to bring in Mr. Korf and other American entities into that action.

So, Your Honor, practically, if we could put the

depositions off the table until they file their BVI action, I actually think that we might be in a situation where we can resolve this dispute and not have to deal with motions for stay and not have to deal with appeals.

It's an important point for us that they should not be permitted to depose people that they're planning to sue, particularly when they clearly don't satisfy what we say the Rule 27 standards for prefiling depositions.

And as Your Honor knows, under Section 782, unless the Court orders otherwise -- that's up to Your Honor -- that the Federal Rules of Civil Procedure govern.

And there's a specific rule, Rule 27, for prefiling depositions, and we suggest that they don't meet the standard for that; plus, it's just unfair to be deposing people if there's some reasonable anticipation that they're going to be sued.  Just one second.

(Brief pause in the proceedings.)

MR. TRACEY:  May I respond, Your Honor?

MR. MARKS:  Again, Your Honor, I don't want to be -- you know, criticized by the Court again, and I know that we raised this --

THE COURT:  I prefer to think of it as a suggestion for optimum performance.  It's a culture of learning and growth.

MR. MARKS:  Well, I definitely learned at least twice in the course of Your Honor's recent opinions.

But this is what Magistrate Turnoff had suggested as well, Your Honor.  He suggested, let's get the documents out, let them take a look at the documents; once they get the documents, then we can decide the issue of deposition.

So that's a very important practical consideration and, Mr. Tracey, then after Magistrate Turnoff spoke, on page 51 of the transcript of that hearing --

THE COURT:  Wait, wait.  That's water under the bridge.  Judge Turnoff is no longer here.

MR. MARKS:  I understand.

THE COURT:  We've got new folks that are dealing with this.

MR. MARKS:  Fine.  So anyhow, that's my fourth practical suggestion, Your Honor, on -- and I'm going to -- I've learned, I'm going to stop.

THE COURT:  Okay.  Let's take care of these.

MR. MULLINS:  Your Honor, I apologize.  One more practical point.

THE COURT:  Do you think that Mr. Marks can't speak for you, Mr. Mullins?

MR. MULLINS:  He does a wonderful job.

THE COURT:  Well, write him a little note.

MR. MULLINS:  No problem.

MR. GUTTMAN:  If the notes were narrowed, as Mr. Marks suggested, I can tell you, for example, for the loan files, we

have them in physical form.  We're talking about three,

three-inch binders on the org charts, and the -- who owns what,

I'm sure that we can come up with a reasonable amount of

documents.

And on the agreements, if that is what we are talking

about, it's much more -- we can accomplish this in a fairly

quick and efficient manner.  The problem is, again, the

recalcitrants are not agreeing to narrow anything to something

that is workable.

And I understand that Your Honor's order was recent and

we haven't fully met-and-conferred, but with today's guidance,

assuming that this is agreeable to them, I'm pretty confident

that we can --

THE COURT:  Let's ask them right now.

MR. TRACEY:  As I said before, I'm anxious to come to a

conclusion on this, get to a narrowed request.  This is a good

start.  I'm willing to consider anything that Mr. Marks

suggests.

The thing that I need to emphasize -- and on org

charts, that should be pretty easy to figure out.

THE COURT:  On what?

MR. TRACEY:  Org charts, organizational charts.

THE COURT:  Oh.  Oh.

MR. TRACEY:  I mean, all we need is to really

understand the relationships with all of these entities.

THE COURT:  It sounds to me if you all have a meet-and-confer now that we've had this discussion, we can probably work forward.  So let's take care of the protective order here today, so that that's done.

And the only disputes that were on the copy that was filed in 218 are on -- suggested language -- page 11 and page 12.  I was surprised that the intervenors would not like that, because I think we need to put some kind of pressure on the applicant here to make sure that they do what they do -- what they promised to do.  So what is the concern?

MR. MARKS:  Your Honor, the highlighting is what we objected to.

THE COURT:  Yeah, that's what I didn't understand, why you were objecting to it.

MR. MARKS:  One year to file the BVI action -- that's it, no tolling, the last sentence -- if they can't file in one year, come back to the Court and ask to have it extended.

They want the tolling of the one year, if they can't complete the discovery, for whatever reason, which might not be our fault, by October 7th.

So we think the tolling, Your Honor, should be stricken.  The Court's going to always have the power to extend the one-year period if they can show cause.

So that's our objection to that -- what looks to me like it's highlighted in yellow, or something, for the Court.

THE COURT:  So you propose -- instead of what you're offering then -- is that instead of the language they're proposing, you simply say, within one year --

MR. MARKS:  After "amended protective order," it should be a period, and then the rest of that sentence.

THE COURT:  It's, "unless they show good cause for an extension."

MR. MARKS:  Right, which is the last sentence, which we have agreed to.  That's the -- I'm sorry, the last sentence of that paragraph says, "Any party may request an extension of this one-year deadline by letter motion to this Court and non-requesting party can object by letter within three business days."  That's part of what we agreed to.

It's the one clause that's underlined, Your Honor, that we don't agree to, the automatic tolling.

THE COURT:  Mr. Massey -- or Tracey?  I'm sorry.

MR. TRACEY:  I'm fine with that, Your Honor.

THE COURT:  So we can just take that out, since it's covered by the last two sentences.

MR. TRACEY:  Yes.

MR. MARKS:  It should say, "stipulated protective order."  We just missed that change when we copied this from the order.

THE COURT:  Where are you?

MR. MARKS:  No, it says -- the first sentence, "One

year of the date of the issuance of this" -- it says --
"amended protective order."

It should say, "stipulated protective order."

This was based on a New York order, Your Honor.

THE COURT:  Okay, got it.  Terrific.  So everyone's
happy with that?

MR. TRACEY:  Yes, Your Honor.

THE COURT:  Both sides?

MR. MARKS:  And then the last paragraph, Your Honor --

THE COURT:  I didn't hear a yes.

MR. MARKS:  Oh, yes, Judge, yes.

THE COURT:  On the backside, paragraph 18, on page 12,
the last sentence.

MR. MARKS:  Right.  Our position is, Your Honor, I
mean, this is the first that we've heard that opposing counsel
has had no contact at all with the liquidator, Hornbeam, and
there's some type of power of attorney issue, who knows when,
under which he's taking instructions.

So, Your Honor, we ask that that be produced to the
Court, and to us, so we can understand why they think they have
the power to do what they're doing.

But, more importantly, we believe that whoever this
liquidator may be; and counsel, apparently, doesn't know if
they should have to sign a notarized attornment to the
jurisdiction of this Court, so we know we actually have

something if there is a violation of the protective order that
it's going to be enforceable.

We don't want a situation where somebody says, gee
whiz, I'm the liquidator, I didn't know anything about this.
Goodness grief, I can't believe that Mr. Shulman, you know, has
been doing all these things under this power of attorney.

THE COURT:  Don't you want Mr. Shulman to be the one
that is responsible, since he is the one that has the deep
pocket, whereas, the liquidator probably doesn't?

MR. MARKS:  Your Honor, there's two issues here.

One is that this agreement does provide Mr. Shulman,
himself, is responsible; but number two, we want to be able to
have the right to go with Hornbeam, but don't forget, Hornbeam
has shares in Halliwel.

There may be one way to resolve this dispute, is
there's some type of a violation and we would have a claim
against Hornbeam, and we would pursue that claim and then
execute it against Hornbeam's shares.

That's the only way that we got paid the
800-some-thousand -- hundred thousand dollars in the past, was
the threat of executing on Hornbeam's shares.  That's why
Mr. Shulman paid that -- I don't know -- about a year ago.

So we think this is important.

But, you know, Your Honor, just from the transparency
viewpoint, it's really --

THE COURT:  I see the point that you're making.

MR. TRACEY:  Your Honor, we have agreed that
Mr. Shulman, who is our client, will be responsible for
violations of this stipulated protective order.

Hornbeam is subject to the jurisdiction of this Court.
Hornbeam has brought this action.  We have brought it on
Hornbeam's behalf, through the power of attorney, but Hornbeam
itself is the plaintiff and so the Court has personal
jurisdiction.

And we've also provided in this agreement -- in this
stipulated protective order that the Court will have continuing
jurisdiction after the agreement is over for enforcement of
this.  So there's no question that the Court has the power over
Hornbeam.

My concern about the request that there be a
notarized attornment is I don't -- personally, I don't know
what that is, I don't know if we can get it, because I don't
know if the liquidator is permitted to issue something like
that without a court approving it.  I don't know what procedure
you'd have to go through.

I suspect it's going to be impossible, practically.

THE COURT:  Okay.  For the purposes of getting this
done -- although I understand the point that you're making,
Mr. Marks -- is that I'm going to strike that last sentence.

MR. MARKS:  Your Honor, how do we know that the

liquidator has authorized this?

THE COURT:  I am going to -- he's going to file the power of attorney in the court record so that you know the person that is directing this suit is Mr. Shulman.

MR. MARKS:  Just, Your Honor, if I --

THE COURT:  And he is not going to have any actual custody of the documents.  That's really what you need, is that the liquidator has no custody of the documents.

MR. MARKS:  But, Your Honor, there is nothing of record here that would indicate -- and it would appear to be undisputed -- that the liquidator has any idea of what is going on here in Florida.

And the fact that the liquidator four years ago -- who might not even be the same liquidator -- may have issued a power of attorney to Mr. Shulman doesn't satisfy that the current liquidator should be authorizing this action.

That's a -- I mean, Your Honor, this is a fundamental -- and it may be that, Your Honor, that the liquidator won't do it because the liquidator knows that he can't bring a newspaper action.  As a matter --

THE COURT:  So why -- isn't that sort of superfluous and --

MR. MARKS:  No, because, Your Honor, if it -- how --

THE COURT:  That's your position.  Isn't that inconsistent with your position?

MR. MARKS:  How can we have a proceeding here in the United States, where you have a corporation which is in liquidation in Panama, and Your Honor doesn't have any comfort that the person -- whoever the liquidator is today -- has authorized this action to take place?

That's all we're asking for, is --

MR. TRACEY:  If I can make a suggestion, Your Honor, I will --

MR. GUTTMAN:  I think if you've got that issue, you need to bring it in a different forum.  I'm going to issue this protective order without that sentence.  That's going to bog us down and -- because right now the only people that are going to see these documents are the attorneys.

MR. MARKS:  Your Honor, it's a more fundamental point. The fundamental point is --

THE COURT:  I've ruled.  Thank you very much, Mr. Marks.

And if you would please e-mail a version of the protective order to my chambers, the e-file, I would appreciate it, so we can simply use it.

One of the things that I wanted to ask the parties to consider, besides the meet-and-confer, is if you would consent to the magistrate judge to handle all of this; and then you can take any appeals directly from any magistrate's decision, and that eliminates another third -- I mean another step.

Would you all be interested in doing that?  That's why I wanted Judge Louis here, so you can see who you're getting.

MR. GUTTMAN:  Your Honor, can I ask a question, slightly unrelated, but it pertains to a statement that you just made before we went into the referring everything to the magistrate, which was that at this point only the attorneys would be looking at the documents.

THE COURT:  That's the way that the "eyes only" -- "attorneys eyes only," as I read the protective order.

MR. MARKS:  Your Honor, that's only some documents.

MR. GUTTMAN:  So that gives us the ability to designate documents as attorneys eyes only, but if the Court is instructing us to designate all the production as "attorneys eyes only," we can do that as well.

MR. TRACEY:  Your Honor, that's not workable.  We need to be able to give these documents to accountants who can read them, and to our client.  We're not planning to provide them to anybody at Hornbeam.  We're planning to provide them to the agents who are going to review them.

MR. GUTTMAN:  I'm asking just because Your Honor said that, and I wanted to make sure --

THE COURT:  Just wait a minute, Mr. Guttman.

Let me read the order over this new issue.  What's the difference between "eyes only" and "confidential" information?

MR. GUTTMAN:  May I, Your Honor?  As I understand it,

the stipulated protective order gives the parties -- as
defined -- "the ability to designate information either
confidential or attorneys eyes only."

It's, essentially, two layers of protection.

One is for a certain type of information that should
simply remain "confidential," that means that it cannot be
disclosed to third parties or used in opening proceedings.

And then "attorneys eyes only," which is information
that is so sensitive that by its very nature cannot be
disclosed even to the parties.

THE COURT:  What would that be?

MR. GUTTMAN:  In this context, Your Honor, I'm not
certain.  Usually -- I can tell you in another context, it is
reserved for trade secret information, secret sauces, for
example.

THE COURT:  I doubt if there are any trade secret
issues here.

MR. GUTTMAN:  I doubt -- I don't think that we have any
here.  I am just bringing it up because you --

THE COURT:  I referred to "attorneys eyes only" to
mean, all of this is going to be treated confidentiality.  I
presume that the lawyers here are very conscious of their
responsibility, as officers of the Court, to protect anything
that is designated as "confidential" that is shared and that
the only people that it's going to be shared with are people

within the office or the consultants that they hire to help
them interpret any -- particularly financial documents.

MR. GUTTMAN:  I understand, Your Honor.  I just wanted
clarity for purposes of Your Honor's ruling, that's the only
reason why I asked.

THE COURT:  Is there still a question as to -- I'm lost
as to why we've gone down this pig trail.

MR. GUTTMAN:  Your Honor said before you went down the
road of referring this order to the magistrate, that the
information that would be produced, in any event, would only be
seen by the attorneys, and that is what raised the question in
my head.  So apologize if I sidetracked Your Honor.

THE COURT:  I'm sorry, I will take the blame here,
Mr. Guttman, but I misspoke.

MR. GUTTMAN:  Not trying to create a problem, just
wanted clarity.

THE COURT:  I apologize.  It's -- I presume, like any
type of discovery, everyone would treat these documents with
the utmost respect and that they will be kept -- that's the
whole purpose of the protective order.

MR. TRACEY:  Yes, Your Honor.

THE COURT:  You don't share it with the world, and you
don't share it with anyone who's not specifically related to
this case, and that you keep careful tabs on where it is.

And once the litigation is over with, I see that you

just simply say destroy it.  Some people want to make sure they get their copies back.  But you all have elected and you have confidence, I guess, in Hornbeam's counsel, that they will destroy it in a thorough and complete manner.

Does that take care of your concern, Mr. Guttman?

MR. GUTTMAN:  Yes, Your Honor.

THE COURT:  Okay.  So getting back to the consent.

MR. MARKS:  We're agreeable, Your Honor.

MR. KRUPPA:  Your Honor, we're agreeable, Specialty Steel Works, Your Honor.

MR. GUTTMAN:  Same.

THE COURT:  Okay, great.  I think they have to put that in writing; if you all could provide a joint agreement, and then --

MR. MARKS:  We'll move that forward quickly, Your Honor.

THE COURT:  God bless you and the horse you rode in on.

MR. MARKS:  Thank you.

MR. GUTTMAN:  Thank you, Your Honor.

THE COURT:  I think that that takes care of us as to what we're going to do.

MR. MARKS:  Your Honor, not to delay my getting on my horse -- since I need to get to the airport -- we still have issues that we'll then negotiate with the other side on good faith on the discovery plan.

THE COURT:  And that's what I propose -- shall we have a date by which you all have a meet-and-confer?

What works with you all's schedule?

I'm really serious about keeping this focused to the jugular as to what is really necessary and to keep the costs reasonable; and I have extremely bright lawyers in front of me, I'd like to save some trees, and I'd like to use the brain power so that everyone can resolve the problem.

MR. MARKS:  Your Honor, if I could just clarify one thing.  I know that Your Honor's going to rule quickly on our motion for stay.

If Your Honor denies the motion for stay, it's not clear to me where we are on the issue of depositions, whether Your Honor is allowing those to go forward now that we know that the --

THE COURT:  Discovery has to occur first.

MR. MARKS:  You mean paper document discovery?

THE COURT:  Paper.

MR. MARKS:  And then from there --

THE COURT:  And then from there, we'll see whether or not they need to take any depositions.

MR. GUTTMAN:  So, for now, with the subpoenas that we received yesterday that had specific dates for deposition, those --

THE COURT:  What are the specific dates for the

depositions?

      MR. GUTTMAN:  They start -- I don't have them all in my head, or in front of me, Your Honor, but they start some time in September.  They even cover some Sundays and, I'm sure, a Saturday in September.

      THE COURT:  I anticipate that the document discovery should be over with by August 1st.

      MR. GUTTMAN:  If we're talking about these narrow categories of documents that we discussed here today, Your Honor, I'm fairly confident that we can do that by that date.

      THE COURT:  That's all in your hands, Mr. Guttman.

      MR. GUTTMAN:  Well --

      THE COURT:  You can make this as simple and straightforward as possible or you can make it as complicated as you want.

      MR. GUTTMAN:  I'm 110 percent for making it simple, Your Honor.  It just takes Hornbeam's counsels' agreement to make it as simple as Your Honor envisions it.

      THE COURT:  I have confidence that if there's a will, there's a way.

      You are all extraordinarily gifted as lawyers.  The only drawback to that is that I have high expectations of what you all can do.

      Don't disappoint me.

MR. GUTTMAN:  Fair enough, Your Honor.

MR. MARKS:  Thank you, Your Honor.

THE COURT:  You all -- I want to give you credit.  I also want to thank Mr. Marks -- or was it Mr. Mullins that drafted the motion to stay?

MR. MULLINS:  Your Honor, that was Mrs. Herrera of my office and Mr. Marks' people.

THE COURT:  It was -- my compliments, it was very well done, with no typos.

MR. MULLINS:  It certainly was not us, Your Honor.

MR. MARKS:  Then it wasn't me either, Your Honor.

THE COURT:  And Judge Louis is asking that you set a status conference the week of July 23rd and as a place-holder of hearing any disputes, if any, and five minutes to update, if no disputes, how about that.  What time?

The week is open, and those -- let me read you those dates in case some will jump out, because they're an anniversary or a birthday that you need to remember -- it's the 23rd, 24th, 25th, 26th and 27th of July -- or a vacation.

MR. MARKS:  Is this in person or by telephone, Judge Louis?

MAGISTRATE LOUIS:  If there's a dispute, in person; if it's just a status conference just to update, then it can be telephonic.

MR. TRACEY:  We're available on either the 23rd or the

25th at any time.

MAGISTRATE LOUIS:  You're also welcome to confer and contact my chambers with a mutually agreeable date and time.

MR. TRACEY:  We can do that.

MR. MULLINS:  Your Honor, if I could appear in person and Mr. Marks by telephone.  He's embarrassed to say that he has a trial in the middle of July and he doesn't want to have to leave in the middle of that.

MAGISTRATE LOUIS:  I won't hold it against him.

MR. MULLINS:  I won't be able to take any --

MAGISTRATE LOUIS:  I can only do that with Mr. Marks.

THE COURT:  I'm glad Mr. Mullins got a chance to speak. Mr. Mullins and I used to practice law together if you didn't know, and it's nice to have you here, Mr. Mullins.

MR. MULLINS:  Thank you, Your Honor, it's always a pleasure to be with you as well.

THE COURT:  Sorry I didn't let you talk.  There is the old rule, unless one specifically is called on, otherwise it makes it look like you don't feel that your co-counsel could handle it.

MR. MULLINS:  No, it wasn't that, Your Honor.  I wanted to make sure -- my handwriting is atrocious, it has not improved over time.

THE COURT:  Well, point well made.  I'm sorry, I thought we could do this in a half an hour, but I was wrong.

MR. TRACEY:  Thank you, Your Honor.

THE COURT:  Hopefully, as you go forward and -- oh, when will you file that transfer?  I mean, the agreement to the consent to the magistrate, by next Monday, Tuesday?

MR. MULLINS:  No problem, Your Honor.

THE COURT:  Or if you can get it there by tomorrow, God bless you and the horse that Mr. Marks is going to be riding on.

I'm glad that you kept your Russian up.

I did not keep my Russian up, Mr. Marks.

MR. MARKS:  Did you study it, Your Honor?

THE COURT:  Yes.

MR. MARKS:  Did you ever spend much time in the Soviet Union?

THE COURT:  No, that was back in the '60s --

MR. MARKS:  Right.

THE COURT:  -- and it was not a popular place for Americans.

MR. MARKS:  Well, it wasn't either the first time that I was there was in 1980.  I studied at the Pushkin Institute in Moscow.  I was there for the last reelection of Leonid Brezhnev.

THE COURT:  Wow, what an incredible experience.

My professor that influenced me to pursue Russian studies was a guy that had -- oh, he's just dropped out of my

head, who is the head -- Kerensky -- the head of the first

provisional Government --

        MR. MARKS:  Oh, sure.

        THE COURT:  -- in February 2017 -- I mean in 1917

Revolution.

        MR. MARKS:  Aleksandr Kerensky.  Wait, that was -- he

was your professor?

        THE COURT:  No, my major professor had been his

protégé.

        MR. MARKS:  Oh, wow.

        THE COURT:  Yeah, so it was exciting to go in '68 when

I was there, to be able to walk all of the streets and see all

the places that I studied, and to try out my Russian, which

was -- they always asked what part of Russia I was from because

of the accent.

        MR. MARKS:  In Leningrad, you were in Leningrad?

        THE COURT:  Yes.

        MR. MARKS:  Wow.

        THE COURT:  It was back when it was Leningrad then.

        So, have a nice summer, you all.

        MR. TRACEY:  Thank you, Your Honor.

        (Proceedings concluded at 11:57 a.m.)

C E R T I F I C A T E


   I hereby certify that the foregoing is an

accurate transcription of the proceedings in the

above-entitled matter.



July 12th, 2018        /s/Glenda M. Powers
DATE                   GLENDA M. POWERS, RPR, CRR, FPR
                       United States District Court
                       400 North Miami Avenue, 08S33
                       Miami, Florida 33128

### $

**$515** [1] - 35:6
**$846,000** [1] - 20:15

### '

**'60s** [1] - 63:15
**'68** [1] - 64:11

### /

**/s/Glenda** [1] - 65:6

### 0

**08S33** [2] - 2:20, 65:8

### 1

**1** [1] - 1:9
**1001** [1] - 2:4
**10022** [1] - 1:23
**10:30** [2] - 1:8, 1:8
**11** [5] - 1:6, 10:25, 11:1, 11:2, 48:6
**110** [1] - 60:17
**11:57** [2] - 1:8, 64:22
**12** [2] - 48:7, 50:12
**120** [5] - 33:1, 36:7, 36:9, 36:12, 37:3
**12th** [1] - 65:6
**14-Civil-24887** [1] - 3:5
**1782** [1] - 1:6
**18** [1] - 50:12
**1835** [1] - 2:7
**19103** [1] - 2:2
**1917** [1] - 64:4
**1980** [1] - 63:20
**1:14-CV-24887-PAS** [1] - 1:3
**1D** [1] - 43:20
**1E** [1] - 44:1
**1st** [1] - 60:7

### 2

**200** [1] - 2:15
**2014** [5] - 4:20, 5:17, 5:19, 23:5, 27:10
**2015** [1] - 7:6
**2016** [2] - 7:18, 9:8
**2017** [1] - 64:4
**2018** [2] - 1:6, 65:6
**218** [4] - 43:23, 43:24, 48:6
**22** [2] - 10:9, 10:21
**23rd** [3] - 61:13, 61:19, 61:25

**24th** [1] - 61:19
**25th** [4] - 9:13, 9:16, 61:19, 62:1
**26th** [2] - 1:22, 61:19
**27** [2] - 45:8, 45:12
**27th** [1] - 61:19
**28** [1] - 1:6
**29th** [1] - 16:19
**2:25** [2] - 10:10, 10:22

### 3

**30** [3] - 22:17, 22:23, 29:8
**33128** [2] - 2:20, 65:8
**33131** [2] - 2:5, 2:12
**33131-2398** [1] - 2:16
**3500** [1] - 2:11
**36th** [1] - 11:22
**3:22** [1] - 10:18

### 4

**40** [2] - 22:17, 22:23
**400** [2] - 2:19, 65:8
**45** [1] - 15:24
**4700** [1] - 2:15

### 5

**51** [1] - 46:6
**5251** [1] - 11:22

### 6

**600** [1] - 2:11

### 7

**76** [1] - 1:9
**782** [1] - 45:9
**7th** [1] - 48:20

### 8

**800-some-thousand** [1] - 51:20
**875** [1] - 1:22

### 9

**900** [1] - 2:5

### A

**a.m** [4] - 1:8, 1:8, 64:22
**ability** [2] - 55:11, 56:2
**able** [6] - 22:25, 31:6, 51:12, 55:16, 62:10, 64:12

**above-board** [1] - 23:14
**above-entitled** [1] - 65:4
**absolutely** [5] - 20:1, 28:2, 31:1, 38:23, 39:20
**accent** [1] - 64:15
**accept** [1] - 10:16
**accommodate** [1] - 31:9
**accomplish** [1] - 47:6
**accordance** [1] - 9:17
**account** [1] - 42:11
**accountants** [1] - 55:16
**accounting** [1] - 5:17
**accurate** [3] - 8:7, 20:11, 65:3
**acquired** [1] - 22:20
**Acquisitions** [1] - 11:20
**action** [16] - 7:19, 12:4, 42:10, 42:12, 42:13, 42:23, 43:1, 43:4, 44:15, 44:24, 45:1, 48:15, 52:6, 53:16, 53:20, 54:5
**activity** [2] - 6:19, 9:13
**actual** [4] - 13:12, 35:21, 39:13, 53:6
**add** [2] - 10:14, 30:22
**added** [3] - 43:16, 44:3, 44:9
**additional** [3] - 5:17, 8:10, 37:5
**address** [5] - 15:20, 17:4, 18:17, 31:19, 38:15
**administration** [1] - 23:13
**adverse** [2] - 13:5, 13:7
**affairs** [1] - 27:11
**affect** [1] - 17:23
**affected** [1] - 13:23
**affiliates** [1] - 44:11
**affirmed** [3] - 6:13, 6:14, 19:9
**afternoon** [1] - 10:10
**agents** [2] - 44:11, 55:19
**ago** [4] - 6:24, 25:20, 51:22, 53:13
**agree** [5] - 19:4, 19:6, 35:12, 38:25, 49:15
**agreeable** [1] - 47:12, 58:8, 58:9, 62:3
**agreed** [9] - 10:16, 19:1, 19:11, 19:18,

32:25, 43:15, 49:9, 49:13, 52:2
**agreeing** [1] - 47:8
**agreement** [8] - 29:21, 29:25, 51:11, 52:10, 52:12, 58:13, 60:18, 63:3
**agreements** [1] - 47:5
**airport** [1] - 58:23
**Alabama** [9] - 5:2, 6:9, 6:19, 6:23, 8:9, 8:17, 18:25, 19:11, 19:18
**Aleksandr** [1] - 64:6
**all's** [1] - 59:3
**allegations** [1] - 41:6
**allowed** [1] - 5:21
**allowing** [1] - 59:14
**Alloys** [6] - 11:3, 11:9, 11:12, 11:18, 11:20
**amended** [2] - 49:4, 50:2
**American** [3] - 11:9, 11:19, 44:24
**Americans** [1] - 63:18
**amount** [5] - 31:25, 34:10, 35:22, 36:7, 47:3
**an-hour-and-a-half** [1] - 15:16
**analysis** [1] - 29:13
**analyzing** [1] - 8:21
**anchor** [3] - 44:17, 44:19, 44:23
**AND** [1] - 1:15
**ANDREW** [1] - 2:14
**Andy** [1] - 4:5
**anniversary** [1] - 61:18
**annual** [1] - 36:17
**answer** [4] - 15:3, 23:3, 23:4, 23:18
**answered** [1] - 8:2
**anticipate** [1] - 60:6
**anticipation** [1] - 45:15
**anxious** [2] - 31:9, 47:15
**anyhow** [1] - 46:13
**apologies** [1] - 11:16
**apologize** [3] - 46:17, 57:12, 57:17
**appeal** [4] - 4:24, 6:12, 26:20, 31:14
**appeals** [2] - 45:4, 54:24
**Appeals** [3] - 4:21, 26:21, 31:13
**appear** [3] - 41:15, 53:10, 62:5
**appearance** [1] - 3:7

**APPEARANCES** [2] - 1:18, 2:1
**appellate** [1] - 26:23
**applicant** [2] - 3:9, 7:20, 48:9
**APPLICANTS** [1] - 1:19
**application** [4] - 20:12, 20:23, 21:8, 44:4
**APPLICATION** [1] - 1:5
**appraisal** [2] - 21:20, 22:1
**appraised** [1] - 21:22
**appreciate** [2] - 19:19, 33:21, 54:19
**approach** [1] - 10:1
**appropriate** [4] - 29:18, 31:2, 43:10, 43:13
**approving** [1] - 52:19
**Arabic** [1] - 25:11
**area** [1] - 25:25
**areas** [3] - 38:13, 38:22, 38:23
**argument** [4] - 17:20, 18:6, 18:23, 19:1
**articles** [3] - 20:6, 21:9, 21:16
**Assets** [1] - 3:25
**assets** [1] - 27:14
**assuming** [1] - 47:12
**atrocious** [1] - 62:22
**attached** [1] - 14:5
**attitudes** [1] - 14:20
**attorney** [8] - 27:25, 28:3, 28:4, 50:17, 51:6, 52:7, 53:3, 53:15
**attorneys** [10] - 32:5, 54:13, 55:6, 55:9, 55:12, 55:13, 56:3, 56:8, 56:20, 57:11
**attornment** [2] - 50:24, 52:16
**August** [1] - 60:7
**authority** [2] - 5:16, 32:8
**authorized** [7] - 6:6, 7:7, 16:23, 33:24, 34:5, 53:1, 54:5
**authorizing** [1] - 53:16
**automatic** [1] - 49:15
**available** [1] - 61:25
**Avenue** [4] - 1:22, 2:11, 2:19, 65:8
**avenues** [1] - 28:25
**aware** [1] - 5:13

## B

**backside** [1] - 50:12
**bank** [4] - 6:5, 6:16, 8:15, 19:14
**Bank** [2] - 6:11, 8:18
**banks** [2] - 5:10, 5:12
**based** [10] - 17:11, 17:15, 19:8, 22:3, 28:20, 31:21, 32:23, 36:13, 37:22, 50:4
**basis** [1] - 29:23
**Bay** [1] - 2:4
**bear** [1] - 35:3
**bearing** [1] - 35:18
**befall** [1] - 13:13
**BEFORE** [2] - 1:13, 1:16
**begin** [2] - 12:19, 31:15
**behalf** [4] - 3:20, 7:19, 10:16, 52:7
**beings** [1] - 26:5
**bell** [1] - 13:15
**beneficiary** [1] - 23:15
**best** [2] - 21:25, 26:7
**between** [11] - 23:1, 24:3, 24:6, 25:4, 38:16, 38:18, 39:16, 39:23, 40:3, 41:16, 55:24
**beyond** [2] - 29:23, 30:14
**billable** [2] - 35:5, 35:6
**binders** [1] - 47:2
**birthday** [1] - 61:18
**Biscayne** [1] - 2:15
**bit** [3] - 24:16, 25:5, 32:2
**blame** [1] - 57:13
**bless** [2] - 58:17, 63:7
**blindside** [1] - 24:6
**blindsided** [1] - 23:9
**blue** [1] - 23:5
**board** [1] - 23:14
**bog** [1] - 54:11
**Boggs** [1] - 2:14
**Bogolubov** [10] - 21:15, 24:4, 29:22, 30:4, 30:5, 38:20, 40:4, 42:3, 42:17, 44:18
**bottle** [1] - 42:1
**Boulevard** [1] - 2:15
**Bracha** [8] - 6:15, 6:17, 7:20, 18:25, 19:25, 20:8, 20:12, 21:17
**brain** [1] - 59:7

**breadth** [1] - 19:14
**breakdown** [1] - 37:6
**breath** [1] - 21:1
**Brezhnev** [1] - 63:22
**Brickell** [2] - 2:4, 2:11
**bridge** [1] - 46:8
**Brief** [1] - 45:17
**bright** [2] - 18:13, 59:6
**bring** [17] - 7:2, 10:2, 11:4, 18:6, 20:23, 21:4, 28:19, 29:18, 30:8, 32:13, 38:1, 42:25, 44:13, 44:20, 44:24, 53:20, 54:10
**bringing** [1] - 56:19
**brings** [1] - 12:20
**British** [2] - 23:6, 24:7
**broader** [1] - 29:25
**brought** [11] - 9:10, 16:20, 17:11, 29:24, 30:1, 32:16, 32:17, 33:3, 43:4, 52:6
**Bruce** [5] - 3:24, 5:3, 18:22, 19:12, 20:9
**BRUCE** [1] - 2:7
**burden** [3] - 12:12, 31:7, 31:8
**burdened** [3] - 12:7, 12:10, 12:14
**burdensome** [2] - 26:18, 31:4
**business** [2] - 28:11, 49:12
**BVI** [19] - 5:22, 7:16, 8:22, 12:24, 20:13, 20:15, 28:20, 28:24, 29:19, 30:20, 42:11, 42:24, 42:25, 43:4, 44:8, 44:14, 44:15, 45:1, 48:15
**BY** [7] - 1:21, 1:21, 2:4, 2:7, 2:10, 2:14, 2:18

## C

**candid** [1] - 30:16
**cannot** [3] - 13:15, 56:6, 56:9
**care** [6] - 4:24, 13:8, 46:16, 48:3, 58:5, 58:20
**careful** [1] - 57:24
**case** [9] - 6:18, 7:16, 8:13, 12:3, 30:19, 39:22, 42:20, 57:24, 61:17
**CASE** [1] - 1:3
**Case** [1] - 3:5
**cases** [1] - 41:1

**catalyst** [1] - 13:14
**categories** [1] - 60:9
**CC** [4] - 11:2, 11:8, 11:12, 11:18
**certain** [3] - 30:17, 56:5, 56:13
**certainly** [4] - 29:15, 30:8, 40:17, 61:10
**certify** [1] - 65:2
**chambers** [2] - 54:19, 62:3
**chance** [3] - 4:23, 9:24, 62:12
**change** [1] - 49:22
**changes** [1] - 6:22
**charged** [1] - 25:4
**chart** [8] - 33:8, 36:15, 36:16, 36:24, 37:13, 38:25, 41:25
**charts** [10] - 34:2, 36:23, 39:8, 39:11, 39:13, 40:18, 47:2, 47:20, 47:22
**cheaper** [1] - 35:13
**cheat** [1] - 3:12
**cheat-sheet** [1] - 3:12
**Chinese** [1] - 25:11
**choice** [1] - 20:22
**chooses** [1] - 7:3
**Circuit** [7] - 4:24, 6:10, 6:13, 18:24, 19:1, 19:9
**Civil** [1] - 45:11
**claim** [2] - 51:16, 51:17
**clarify** [1] - 59:9
**clarity** [2] - 57:4, 57:16
**clause** [1] - 49:14
**clear** [5] - 5:25, 32:12, 34:7, 44:12, 59:13
**clearly** [4] - 40:19, 44:22, 45:7
**client** [5] - 14:21, 19:23, 30:8, 52:3, 55:17
**client's** [1] - 29:2
**clients** [4] - 13:2, 13:4, 13:24, 13:25
**clients'** [1] - 36:22
**clock** [1] - 18:5
**close** [1] - 5:6
**co** [3] - 4:3, 16:6, 62:19
**co-counsel** [3] - 4:3, 16:6, 62:19
**collectively** [1] - 33:23
**colorful** [2] - 24:12, 26:3
**comfort** [1] - 54:3
**coming** [1] - 18:2

**comments** [1] - 16:7
**commercial** [1] - 41:15
**common** [2] - 11:15, 13:11
**communications** [3] - 37:11, 37:14, 37:24
**companies** [6] - 36:19, 40:14, 40:15, 42:4, 42:7, 44:13
**company** [1] - 44:8
**complain** [2] - 12:2, 12:4
**complaining** [1] - 17:17
**complete** [3] - 28:19, 48:19, 58:4
**completed** [6] - 5:14, 6:5, 8:9, 8:16, 8:17, 28:16
**completes** [1] - 27:14
**compliance** [7] - 12:13, 13:24, 17:7, 17:11, 31:23, 32:3, 32:4
**complicated** [2] - 22:12, 60:15
**compliments** [1] - 61:8
**comply** [2] - 32:13, 43:1
**concept** [1] - 44:15
**concern** [4] - 26:16, 48:10, 52:15, 58:5
**concerned** [6] - 17:5, 18:13, 27:5, 27:6, 27:22, 40:24
**concerning** [2] - 30:18, 37:11
**concerns** [1] - 18:15
**concluded** [1] - 64:22
**conclusion** [1] - 47:16
**confer** [5] - 33:22, 48:2, 54:22, 59:2, 62:2
**conference** [7] - 15:17, 15:20, 15:22, 15:24, 15:25, 61:13, 61:23
**conferred** [1] - 47:11
**conferring** [1] - 16:16
**confers** [1] - 16:16
**confidence** [2] - 58:3, 60:20
**confident** [2] - 47:12, 60:10
**confidential** [4] - 55:24, 56:3, 56:6, 56:24
**confidentiality** [2] -

**31:16, 56:21
**conscious** [1] - 56:22
**consent** [3] - 54:22, 58:7, 63:4
**consider** [2] - 47:17, 54:22
**consideration** [2] - 41:8, 46:5
**consultants** [1] - 57:1
**contact** [3] - 44:20, 50:16, 62:3
**context** [2] - 56:12, 56:13
**continue** [1] - 28:21
**CONTINUED** [1] - 2:1
**continues** [2] - 28:15, 28:18
**continuing** [1] - 52:11
**contract** [1] - 41:17
**control** [2] - 40:7, 40:16
**controls** [2] - 40:6, 40:9
**convenes** [1] - 43:3
**conversation** [3] - 32:3, 33:22, 34:17
**copied** [2] - 16:15, 49:22
**copies** [1] - 58:2
**copy** [1] - 48:5
**corporate** [3] - 36:14, 37:12
**CORPORATION** [1] - 1:5
**corporation** [1] - 54:2
**correct** [1] - 10:13
**correspondence** [1] - 16:16
**cost** [7] - 12:13, 17:11, 32:3, 32:4, 35:3, 35:4, 35:18
**costs** [3] - 17:13, 17:18, 59:5
**counsel** [16] - 3:7, 4:3, 8:13, 9:7, 13:9, 14:7, 15:19, 16:6, 18:14, 33:23, 34:8, 36:3, 50:15, 50:23, 58:3, 62:19
**counselors** [1] - 18:10
**counsels'** [1] - 60:18
**couple** [1] - 10:2
**course** [3] - 34:20, 44:7, 45:25
**court** [5] - 11:14, 19:11, 30:20, 52:19, 53:3
**Court** [27] - 2:18, 2:19, 3:1, 3:3, 4:21, 19:19, 26:21, 28:6, 30:3,

31:2, 31:13, 42:25, 43:3, 45:10, 45:20, 48:17, 48:25, 49:11, 50:20, 50:25, 52:5, 52:8, 52:11, 52:13, 55:12, 56:23, 65:7
**COURT** [218] - 1:1, 3:11, 3:16, 3:21, 3:23, 4:1, 4:4, 4:8, 4:11, 4:14, 4:16, 5:5, 5:11, 5:15, 6:8, 6:25, 7:4, 7:8, 7:11, 7:23, 8:5, 8:10, 8:20, 8:25, 9:2, 9:19, 9:21, 9:24, 10:7, 10:15, 10:20, 10:25, 11:2, 11:6, 11:14, 11:17, 11:25, 12:6, 12:9, 12:16, 13:3, 13:11, 14:1, 14:4, 14:11, 14:14, 14:17, 14:20, 14:25, 15:5, 15:8, 15:10, 15:12, 15:14, 16:2, 16:8, 16:12, 16:25, 17:6, 17:13, 17:17, 17:21, 17:25, 18:20, 19:2, 19:4, 19:6, 19:15, 19:21, 20:3, 20:5, 20:16, 20:18, 20:24, 21:1, 21:3, 21:5, 21:11, 21:22, 21:24, 22:9, 22:11, 22:24, 23:12, 23:17, 23:19, 23:21, 24:8, 24:10, 24:14, 24:17, 25:8, 25:17, 26:4, 27:12, 27:17, 27:20, 28:4, 28:8, 28:23, 29:2, 29:8, 29:12, 30:12, 30:23, 31:12, 31:24, 32:16, 32:18, 32:22, 33:2, 33:4, 33:9, 33:13, 33:16, 33:19, 34:14, 34:18, 34:21, 34:25, 35:5, 35:8, 35:15, 35:20, 35:24, 36:1, 36:4, 36:11, 36:24, 37:3, 37:7, 37:15, 37:19, 38:1, 38:6, 38:9, 39:2, 39:5, 39:7, 39:10, 39:14, 39:18, 41:2, 41:12, 41:22, 42:15, 42:18, 43:9, 43:19, 43:23, 43:25, 45:22, 46:8, 46:11, 46:16, 46:19, 46:22, 47:14, 47:21, 47:23, 48:1, 48:13, 49:1, 49:6, 49:16, 49:18, 49:24, 50:5, 50:8,

**court's** [1] - 18:25
**Court's** [2] - 30:25, 48:22
**COURTROOM** [1] - 3:2
**courts** [1] - 40:5
**cover** [1] - 60:4
**covered** [2] - 31:24, 49:19
**create** [2] - 12:10, 57:15
**credit** [2] - 22:17, 61:3
**criticized** [1] - 45:20
**CRR** [2] - 2:18, 65:7
**culture** [2] - 25:10, 45:23
**current** [3] - 28:9, 28:10, 53:16
**custody** [2] - 53:7, 53:8

**D**

**data** [4] - 35:22, 36:7, 36:8, 37:4
**date** [7] - 7:2, 31:22, 50:1, 59:2, 60:11, 62:3, 65:7
**dates** [5] - 17:7, 17:8, 59:23, 59:25, 61:17
**DAVID** [2] - 1:21, 2:10
**david** [1] - 3:10
**David** [1] - 3:17
**day-to-day** [1] - 23:23
**days** [1] - 49:13
**deadline** [2] - 27:2, 49:11
**deal** [3] - 23:11, 45:3, 45:4
**dealing** [2] - 23:14, 46:11
**December** [1] - 5:16
**decide** [1] - 46:4

**decided** [1] - 6:17
**decision** [5] - 8:22, 18:25, 19:10, 32:8, 54:24
**decisions** [1] - 32:9
**declarations** [1] - 28:13
**deep** [2] - 21:1, 51:8
**defendant** [2] - 44:17, 44:19
**defendants** [1] - 44:23
**defer** [1] - 32:18
**defined** [1] - 56:2
**definitely** [1] - 45:24
**definition's** [1] - 43:18
**definitions** [1] - 14:12
**Delaware** [2] - 7:6, 7:10
**delay** [3] - 12:11, 18:11, 58:22
**denied** [1] - 43:11
**denies** [1] - 59:12
**DENNIS** [1] - 1:21
**Dennis** [2] - 3:8, 3:14
**deny** [1] - 31:12
**depose** [1] - 45:6
**deposing** [1] - 45:14
**deposition** [4] - 10:18, 10:23, 46:4, 59:23
**depositions** [11] - 9:22, 13:1, 17:8, 38:15, 43:13, 45:1, 45:8, 45:13, 59:13, 59:21, 60:1
**DEPUTY** [1] - 3:2
**derivative** [2] - 42:23, 43:1
**described** [1] - 29:6
**description** [1] - 8:7
**designate** [3] - 55:11, 55:13, 56:2
**designated** [1] - 56:24
**destroy** [2] - 58:1, 58:4
**determine** [1] - 42:10
**determined** [2] - 8:14, 43:3
**difference** [1] - 55:24
**different** [3] - 8:2, 8:3, 54:10
**difficult** [2] - 23:11, 25:12
**directed** [1] - 14:23
**directing** [1] - 53:4
**directly** [1] - 54:24
**disappoint** [1] - 60:25
**disclosed** [3] - 13:7, 56:7, 56:10
**discovery** [35] - 5:2,

6:5, 6:11, 6:14, 6:17, 8:8, 8:17, 9:1, 9:14, 12:19, 13:22, 14:22, 15:4, 15:11, 16:4, 16:24, 18:6, 19:10, 19:12, 30:18, 30:25, 31:3, 31:23, 33:24, 37:12, 38:16, 38:18, 42:12, 42:14, 48:19, 57:18, 58:25, 59:16, 59:17, 60:6
**DISCOVERY** [2] - 1:6, 1:12
**discussed** [1] - 60:9
**discussion** [1] - 48:2
**dismissed** [5] - 6:18, 30:21, 42:20, 42:21, 43:2
**dispute** [9] - 23:1, 25:4, 29:20, 30:11, 31:1, 45:3, 51:15, 61:22
**disputed** [2] - 19:23, 20:2
**disputes** [6] - 29:4, 29:5, 30:6, 48:5, 61:14, 61:15
**dissolution** [3] - 18:4, 27:9, 27:10
**DISTRICT** [3] - 1:1, 1:1, 1:14
**District** [6] - 2:19, 3:3, 19:18, 32:9, 65:7
**DIVISION** [1] - 1:2
**document** [5] - 36:25, 40:11, 42:6, 59:17, 60:6
**documents** [39] - 6:21, 8:16, 8:24, 9:11, 10:24, 12:15, 12:17, 29:17, 31:9, 32:6, 33:25, 34:2, 34:11, 35:9, 37:11, 37:24, 38:16, 38:18, 38:25, 39:15, 40:8, 40:13, 40:16, 41:11, 46:2, 46:3, 46:4, 47:4, 53:7, 53:8, 54:13, 55:7, 55:10, 55:12, 55:16, 57:2, 57:18, 60:9
**dog** [1] - 17:21
**dollars** [3] - 22:17, 22:23, 51:20
**domains** [2] - 36:18, 36:19
**done** [12] - 7:21, 8:25, 17:9, 19:19, 23:8, 29:12, 31:25, 35:13, 37:21, 48:4, 52:23,

61:9
**doubt** [2] - 56:16, 56:18
**down** [7] - 5:5, 11:15, 14:13, 21:1, 54:12, 57:7, 57:8
**dozen** [1] - 25:20
**draft** [5] - 41:12, 41:20, 41:21, 42:8, 43:15
**drafted** [2] - 16:4, 61:5
**drafting** [1] - 43:8
**drawback** [1] - 60:23
**Drive** [1] - 2:4
**driven** [1] - 39:21
**dropped** [1] - 63:25
**during** [1] - 16:21

**E**

**e-file** [1] - 54:19
**e-mail** [4] - 15:19, 33:10, 33:11, 54:18
**e-mails** [2] - 34:11, 36:8
**early** [1] - 7:18
**easier** [1] - 26:6
**easiest** [1] - 34:12
**easy** [2] - 40:20, 47:20
**ECF** [2] - 43:20, 43:22
**Ed** [2] - 4:2, 16:6
**EDWARD** [1] - 2:4
**effectively** [1] - 6:18
**efficient** [4] - 26:23, 26:24, 34:12, 47:7
**efficiently** [1] - 4:18
**effort** [2] - 18:1, 42:10
**eight** [1] - 15:15
**either** [5] - 42:21, 56:2, 61:11, 61:25, 63:19
**elected** [1] - 58:2
**elephants** [1] - 25:7
**Eleventh** [7] - 4:24, 6:10, 6:13, 18:24, 19:1, 19:9
**eliminate** [1] - 26:22
**eliminates** [1] - 54:25
**Elmo** [1] - 10:7
**elsewhere** [2] - 29:19, 32:9
**embarrassed** [1] - 62:6
**emphasize** [1] - 47:19
**employee** [5] - 33:8, 36:17, 36:23, 38:24, 42:1
**end** [1] - 44:3
**enforceable** [1] - 51:2
**enforcement** [1] -

52:12
**engaged** [1] - 30:21
**engagement** [1] - 30:15
**England** [3] - 29:24, 30:1, 44:18
**entered** [1] - 15:18
**entertain** [1] - 35:17
**entities** [4] - 11:23, 40:12, 44:24, 47:25
**entitled** [6] - 12:18, 13:17, 13:21, 14:21, 32:10, 65:4
**envisions** [1] - 60:19
**equity** [2] - 22:6, 22:9
**ESQ** [6] - 1:21, 1:21, 2:4, 2:7, 2:10, 2:14
**essence** [1] - 3:1
**essentially** [3] - 23:23, 42:23, 56:4
**evasive** [1] - 40:6
**event** [2] - 24:6, 57:10
**evidence** [2] - 28:20, 42:7
**ex** [4] - 5:10, 7:5, 7:13, 23:6
**exact** [3] - 33:4, 37:18, 40:2
**exactly** [1] - 38:22
**example** [5] - 39:24, 40:12, 40:18, 46:25, 56:15
**exceed** [1] - 22:6
**except** [3] - 12:10, 13:6, 17:22
**exciting** [1] - 64:11
**excuse** [5] - 3:11, 19:3, 20:17, 20:24, 33:16
**execute** [1] - 51:18
**executing** [1] - 51:21
**Exhibit** [1] - 38:21
**exhibits** [1] - 14:4
**existence** [2] - 19:9, 28:15
**expectations** [1] - 60:23
**expedition** [1] - 27:3
**experience** [2] - 26:1, 63:23
**expert's** [1] - 28:14
**expired** [1] - 6:1
**explain** [1] - 42:21
**explaining** [1] - 40:6
**explains** [1] - 40:11
**explore** [1] - 34:3
**extend** [2] - 6:2, 48:22
**extended** [2] - 5:23, 48:17
**extending** [1] - 5:25

**extension** [2] - 49:7, 49:10
**extent** [2] - 12:15, 27:23
**extraordinarily** [1] - 60:22
**extremely** [2] - 40:5, 59:6
**eyes** [8] - 55:8, 55:9, 55:12, 55:14, 55:24, 56:3, 56:8, 56:20
**eyewitness** [1] - 26:12

**F**

**face** [1] - 3:12
**fact** [2] - 13:18, 53:13
**facts** [2] - 19:8, 26:21
**fair** [8] - 5:7, 23:14, 26:20, 29:10, 38:11, 41:14, 44:9, 61:1
**fairly** [2] - 47:6, 60:10
**faith** [2] - 42:9, 58:25
**fake** [2] - 41:7, 41:9
**familiar** [2] - 7:8, 8:1
**family** [1] - 23:1
**far** [6] - 12:11, 14:5, 18:12, 27:5, 27:21, 36:7
**fault** [1] - 48:20
**February** [1] - 64:4
**federal** [1] - 40:4
**Federal** [1] - 45:11
**fees** [2] - 32:5, 32:15
**Felman** [3] - 11:12, 11:18, 11:19
**felt** [1] - 20:10
**fight** [1] - 17:22
**fighting** [1] - 4:22, 9:12
**fights** [1] - 9:12
**figure** [3] - 26:13, 34:12, 47:20
**file** [9] - 5:21, 20:12, 42:10, 45:1, 48:15, 48:16, 53:2, 54:19, 63:3
**filed** [9] - 13:18, 21:8, 24:21, 30:20, 42:12, 42:13, 43:21, 48:6
**files** [1] - 46:25
**filing** [1] - 43:17
**financial** [3] - 12:12, 40:13, 57:2
**fine** [3] - 19:16, 46:13, 49:17
**finish** [1] - 38:9
**firm** [3] - 5:18, 15:9, 16:5
**firms** [1] - 5:17

**first** [23] - 16:20, 17:2, 17:4, 17:10, 21:10, 21:11, 21:20, 33:3, 33:6, 33:22, 35:12, 36:14, 36:20, 37:8, 37:9, 38:14, 38:23, 39:3, 49:25, 50:15, 59:16, 63:19, 64:1
**fishing** [1] - 27:3
**five** [1] - 61:14
**Fixed** [1] - 11:21
**fixed** [1] - 18:2
**FL** [1] - 2:16
**FLEISCHER** [1] - 1:16
**Floor** [1] - 1:22
**FLORIDA** [1] - 1:1
**Florida** [9] - 1:5, 2:5, 2:12, 2:20, 3:4, 6:3, 32:8, 53:12, 65:8
**flurry** [1] - 6:21
**focused** [3] - 14:7, 27:4, 59:4
**folks** [1] - 46:11
**follow** [1] - 21:19
**FOR** [5] - 1:6, 1:19, 2:3, 2:9, 2:13
**foregoing** [1] - 65:2
**foreign** [2] - 39:17, 39:25
**forget** [2] - 41:6, 51:13
**form** [5] - 39:17, 40:10, 40:13, 40:15, 47:1
**formational** [1] - 40:10
**former** [1] - 25:22
**formerly** [1] - 4:6
**fortunately** [1] - 25:19
**forum** [2] - 43:3, 54:10
**forward** [6] - 26:7, 31:15, 48:3, 58:15, 59:14, 63:2
**Foundation** [1] - 21:18
**four** [4] - 6:6, 36:2, 36:13, 53:13
**fourth** [1] - 46:13
**FPR** [2] - 2:18, 65:7
**frankly** [1] - 26:19
**front** [4] - 43:17, 44:2, 59:6, 60:3
**frustrated** [1] - 38:3
**frustrating** [4] - 19:24, 20:4, 20:9, 20:21
**frustration** [2] - 30:9, 30:25
**fully** [2] - 23:14, 47:11
**functions** [1] - 28:11
**fundamental** [3] - 53:18, 54:14, 54:15

**G**

**gathered** [1] - 4:17
**gathering** [2] - 27:14, 34:13
**gee** [1] - 51:3
**generally** [1] - 8:8
**Gennady** [1] - 21:15
**gentlemen** [1] - 25:5
**Georgia** [1] - 32:10
**Georgian** [2] - 11:9, 11:19
**get-go** [3] - 16:17, 16:20, 35:2
**gifted** [1] - 60:22
**gigabyte** [1] - 36:8
**gigabytes** [1] - 37:3
**gigs** [2] - 36:7, 36:12
**given** [4] - 5:16, 12:17, 14:20, 22:17
**glad** [2] - 62:12, 63:9
**GLENDA** [2] - 2:18, 65:7
**goal** [3] - 26:8, 29:2, 29:3
**God** [2] - 58:17, 63:6
**goodness** [1] - 51:5
**govern** [2] - 20:7, 45:11
**Government** [1] - 64:2
**grade** [1] - 25:6
**grant** [1] - 31:14
**granted** [1] - 4:20
**granting** [2] - 6:10, 19:10
**great** [1] - 58:12
**grief** [1] - 51:5
**Group** [1] - 11:21
**growth** [1] - 45:23
**guess** [3] - 6:19, 41:20, 58:3
**guidance** [1] - 47:11
**guiding** [1] - 32:8
**Gunster** [1] - 2:10
**Guttman** [20] - 3:19, 3:21, 3:23, 4:11, 8:3, 10:20, 13:3, 16:12, 16:25, 18:14, 19:22, 34:14, 37:15, 38:1, 38:9, 42:5, 55:22, 57:14, 58:5, 60:12
**GUTTMAN** [83] - 2:10, 3:19, 3:21, 3:22, 4:13, 4:15, 10:1, 10:4, 10:9, 10:21, 11:1, 11:4, 11:7, 11:11, 11:16, 11:18, 12:3, 12:7, 12:12, 12:17, 13:9, 13:12, 14:2, 14:9, 14:12,

14:15, 14:19, 14:23, 16:15, 17:2, 17:7, 17:14, 17:19, 17:24, 31:17, 32:2, 32:17, 32:20, 32:23, 33:3, 33:6, 33:10, 33:14, 34:16, 34:19, 34:23, 35:1, 35:6, 35:10, 35:16, 35:21, 35:25, 36:2, 36:5, 36:13, 37:1, 37:5, 37:8, 37:17, 37:20, 38:12, 39:3, 39:6, 46:24, 54:9, 55:3, 55:11, 55:20, 55:25, 56:12, 56:18, 57:3, 57:8, 57:15, 58:6, 58:11, 58:19, 59:22, 60:2, 60:8, 60:13, 60:17, 61:1
**guy** [1] - 63:25

**H**

**half** [6] - 6:20, 6:24, 15:16, 15:25, 20:23, 62:25
**Halliwel** [17] - 3:25, 9:11, 19:25, 20:7, 21:9, 21:16, 21:23, 22:1, 22:11, 22:15, 23:7, 42:24, 44:4, 44:7, 44:22, 51:14
**Halliwel's** [1] - 22:2
**handle** [3] - 30:19, 54:23, 62:20
**handled** [1] - 27:24
**handling** [1] - 33:17
**hands** [1] - 60:12
**handwriting** [1] - 62:22
**handy** [1] - 29:15
**happy** [7] - 14:3, 15:2, 23:3, 24:12, 30:15, 40:22, 50:6
**hard** [1] - 21:13
**harm** [1] - 13:13
**harmed** [1] - 12:19
**hat** [1] - 37:16
**head** [5] - 57:12, 60:3, 64:1
**hear** [3] - 13:5, 18:23, 50:10
**heard** [3] - 13:3, 16:19, 50:15
**hearing** [2] - 46:7, 61:14
**HEARING** [1] - 1:12
**hearings** [1] - 16:14
**help** [4] - 14:16, 17:21,

candidate

17:24, 57:1
**helpful** [1] - 5:6
**hereby** [1] - 65:2
**Herrera** [1] - 61:6
**high** [1] - 60:23
**highlighted** [1] - 48:25
**highlighting** [1] - 48:11
**himself** [1] - 51:12
**hire** [1] - 57:1
**hired** [1] - 30:16
**history** [1] - 40:2
**Hogan** [5] - 1:20, 3:8, 3:10, 3:14, 3:17
**hold** [4] - 21:7, 33:16, 43:19, 62:9
**holder** [1] - 61:13
**holding** [1] - 23:24
**holds** [3] - 21:13, 21:14, 21:15
**home** [2] - 25:22, 43:14
**Honeywell** [1] - 21:22
**Honor** [191] - 3:19, 3:22, 3:24, 4:2, 4:5, 4:10, 5:3, 5:9, 6:9, 6:19, 7:2, 7:5, 7:12, 7:18, 7:25, 8:1, 8:12, 9:6, 9:23, 10:1, 10:14, 10:21, 11:7, 11:23, 12:8, 13:2, 13:9, 13:12, 14:2, 14:10, 14:16, 14:19, 14:24, 15:2, 15:3, 15:15, 15:23, 16:13, 16:21, 16:23, 17:2, 17:11, 17:15, 17:19, 17:24, 18:17, 18:21, 18:23, 19:9, 19:17, 19:19, 20:1, 20:8, 20:13, 20:20, 21:8, 21:12, 21:25, 22:3, 22:8, 22:12, 22:22, 23:3, 23:16, 23:20, 24:2, 24:12, 24:18, 24:23, 25:2, 25:9, 25:18, 26:2, 27:9, 27:19, 27:23, 28:13, 29:11, 30:7, 30:14, 30:16, 30:22, 31:17, 32:2, 32:12, 33:21, 34:4, 34:20, 34:24, 35:7, 35:10, 35:12, 35:14, 35:17, 35:19, 35:23, 36:6, 36:10, 37:1, 37:17, 37:23, 38:4, 38:12, 38:25, 39:3, 39:9, 41:4, 41:15, 42:8, 42:11, 42:16, 42:21, 43:5,

43:6, 43:11, 43:14, 43:17, 43:21, 43:24, 44:1, 44:9, 44:12, 44:25, 45:9, 45:10, 45:18, 45:19, 46:2, 46:14, 46:17, 48:11, 48:21, 49:14, 49:17, 50:4, 50:7, 50:9, 50:14, 50:19, 51:10, 51:24, 52:2, 52:25, 53:5, 53:9, 53:17, 53:18, 53:23, 54:3, 54:7, 54:14, 55:3, 55:10, 55:15, 55:20, 55:25, 56:12, 57:3, 57:8, 57:12, 57:21, 58:6, 58:8, 58:9, 58:10, 58:16, 58:19, 58:22, 59:9, 59:12, 59:14, 60:3, 60:10, 60:18, 60:19, 61:1, 61:2, 61:6, 61:10, 61:11, 62:5, 62:15, 62:21, 63:1, 63:5, 63:11, 64:21
**Honor's** [11] - 9:17, 15:4, 15:6, 15:7, 15:18, 30:9, 33:24, 45:25, 47:10, 57:4, 59:10
**HONORABLE** [2] - 1:13, 1:16
**Honorable** [2] - 3:4, 3:5
**hope** [1] - 43:7
**hoped** [1] - 14:7
**hopefully** [1] - 63:2
**HORNBEAM** [1] - 1:5
**Hornbeam** [40] - 3:15, 3:18, 5:16, 5:18, 5:21, 6:14, 6:17, 7:19, 12:18, 12:22, 13:17, 16:19, 19:4, 19:7, 19:10, 19:12, 19:25, 20:11, 21:10, 21:17, 23:6, 23:10, 27:5, 27:7, 27:9, 27:21, 27:24, 28:1, 28:15, 42:11, 42:23, 50:16, 51:13, 51:17, 52:5, 52:6, 52:7, 52:14, 55:18
**Hornbeam's** [9] - 18:4, 22:9, 23:14, 28:2, 51:18, 51:21, 52:7, 58:3, 60:18
**horse** [3] - 58:17, 58:23, 63:7
**hour** [7] - 14:22, 15:4, 15:16, 15:24, 16:1,

35:6, 62:25
**hours** [3] - 15:15, 15:16, 16:5
**human** [1] - 26:5
**hundred** [2] - 36:8, 51:20

---

**I**

**idea** [2] - 35:18, 53:11
**identical** [1] - 10:5
**Igor** [1] - 21:14
**III** [1] - 1:21
**immigrated** [1] - 25:25
**impact** [1] - 13:5
**important** [5] - 18:22, 40:7, 45:5, 46:5, 51:23
**importantly** [1] - 50:22
**impossible** [2] - 25:11, 52:21
**improved** [1] - 62:23
**Inc** [4] - 3:25, 11:19, 11:20, 11:22
**inch** [1] - 47:2
**inclined** [1] - 31:12
**include** [1] - 32:4
**including** [3] - 32:9, 37:12, 37:13
**Income** [1] - 11:21
**inconsistent** [1] - 53:25
**incorporation** [3] - 20:6, 21:9, 21:16
**incredible** [1] - 63:23
**indicate** [1] - 53:10
**individual** [1] - 36:14
**individuals** [3] - 11:24, 12:1, 38:19
**industry** [1] - 22:5
**inflammatory** [1] - 24:11
**influenced** [1] - 63:24
**information** [25] - 8:18, 8:20, 8:21, 8:22, 13:16, 22:3, 24:20, 30:15, 31:6, 31:21, 32:11, 34:1, 34:4, 34:8, 34:9, 34:10, 34:13, 40:24, 55:24, 56:2, 56:5, 56:8, 56:14, 57:10
**initial** [2] - 18:3, 32:3
**initiated** [3] - 15:17, 16:18, 27:24
**instead** [2] - 49:1, 49:2
**Institute** [1] - 63:20
**instructing** [1] - 55:13
**instructions** [2] -

14:12, 50:18
**interaction** [1] - 28:2
**interest** [6] - 22:2, 27:21, 29:9, 29:10, 30:13, 42:3
**interested** [2] - 41:25, 55:1
**interesting** [1] - 26:1
**interests** [2] - 27:5, 40:11
**internal** [2] - 36:23, 40:15
**International** [1] - 11:22
**internecine** [1] - 23:1
**interpret** [1] - 57:2
**interrupt** [1] - 31:17
**intervened** [1] - 7:15
**intervenor** [1] - 18:14
**INTERVENORS** [1] - 2:3
**intervenors** [7] - 3:25, 4:3, 4:22, 12:4, 12:9, 13:5, 48:7
**intervenors'** [2] - 13:20, 14:20
**intractable** [1] - 19:13
**invasive** [1] - 40:23
**invest** [1] - 22:11
**investment** [5] - 22:18, 29:5, 29:6, 29:16, 29:18
**invited** [1] - 4:16
**involve** [1] - 43:7
**involved** [5] - 8:13, 16:10, 16:13, 32:19, 35:11
**Islands** [2] - 23:7, 24:7
**issuance** [1] - 50:1
**issue** [23] - 15:6, 17:10, 18:3, 18:4, 24:25, 26:17, 31:19, 31:20, 32:19, 33:11, 33:14, 35:1, 35:22, 38:14, 40:3, 40:7, 46:4, 50:17, 52:18, 54:9, 54:10, 55:23, 59:13
**issued** [3] - 9:4, 9:6, 53:14
**issues** [11] - 15:20, 22:21, 27:4, 27:16, 35:11, 39:22, 40:8, 41:5, 51:10, 56:17, 58:24
**itself** [1] - 52:8

---

**J**

**job** [1] - 46:21

**join** [1] - 4:16
**joint** [5] - 14:22, 15:4, 15:11, 29:21, 58:13
**JORGE** [1] - 2:10
**Jorge** [4] - 3:19, 11:10, 16:6, 16:12
**JUDGE** [2] - 1:14, 1:16
**judge** [6] - 5:21, 5:23, 6:2, 7:16, 19:11, 54:23
**Judge** [10] - 3:4, 4:16, 16:14, 17:23, 26:9, 46:9, 50:11, 55:2, 61:12, 61:21
**judgment** [4] - 7:17, 20:15, 20:22, 21:6
**judicial** [1] - 17:23, 18:12
**jugular** [1] - 59:5
**July** [5] - 1:6, 61:13, 61:19, 62:7, 65:6
**jump** [1] - 61:17
**June** [3] - 9:13, 9:16, 16:18
**jurisdiction** [10] - 8:23, 8:24, 30:3, 42:17, 44:16, 44:21, 50:25, 52:5, 52:9, 52:12
**justice** [4] - 18:15, 18:18, 19:18, 24:16

---

**K**

**keep** [4] - 18:2, 57:24, 59:5, 63:10
**keeping** [1] - 59:4
**kept** [2] - 57:19, 63:9
**Kerensky** [2] - 64:1, 64:6
**key** [3] - 8:16, 8:22, 39:22
**kind** [4] - 9:10, 11:17, 29:9, 48:8
**knowledgeable** [1] - 18:10
**known** [1] - 4:7
**knows** [4] - 28:13, 45:9, 50:17, 53:19
**Kolomoisky** [10] - 21:14, 23:24, 24:4, 24:22, 25:20, 29:22, 30:2, 38:20, 40:3, 42:3
**Korf** [6] - 11:20, 12:22, 24:1, 38:20, 44:13, 44:24
**Kruppa** [5] - 4:5, 10:11, 10:15, 11:25, 18:15

**KRUPPA** [6] - 2:14, 4:5, 4:9, 10:13, 10:16, 58:9

---

# L

**lack** [1] - 30:24
**language** [11] - 12:21, 25:11, 25:14, 26:3, 32:24, 43:16, 44:3, 44:9, 48:6, 49:2
**last** [12] - 5:25, 6:5, 15:22, 43:14, 48:16, 49:8, 49:9, 49:19, 50:9, 50:13, 52:24, 63:21
**LAUREN** [1] - 1:16
**Lauren** [1] - 3:4
**law** [5] - 5:18, 12:3, 28:14, 42:24, 62:13
**lawsuits** [1] - 13:1
**lawyer** [1] - 26:3
**lawyer-type** [1] - 26:3
**lawyers** [4] - 26:4, 56:22, 59:6, 60:22
**layers** [1] - 56:4
**lead** [1] - 7:24
**learn** [1] - 25:8
**learned** [3] - 7:15, 45:24, 46:15
**learning** [1] - 45:23
**least** [8] - 6:20, 15:15, 15:16, 18:23, 25:3, 28:19, 40:23, 45:24
**leave** [1] - 62:8
**lenders** [1] - 38:19
**lengthy** [1] - 38:19
**Leningrad** [3] - 64:16, 64:19
**Leonid** [1] - 63:21
**less** [1] - 24:12
**letter** [2] - 49:11, 49:12
**level** [3] - 29:10, 35:11, 35:12
**liability** [1] - 42:7
**lies** [1] - 31:7
**light** [1] - 35:22
**likelihood** [1] - 22:6
**likely** [1] - 44:13
**limitation** [1] - 38:23
**limitations** [1] - 36:21
**limited** [3] - 30:21, 38:22, 42:7
**lines** [1] - 41:18
**liquidate** [1] - 23:7
**liquidation** [1] - 54:3
**liquidator** [19] - 23:7, 27:7, 27:13, 27:17, 28:3, 50:16, 50:23,

51:4, 51:9, 52:18, 53:1, 53:8, 53:11, 53:13, 53:14, 53:16, 53:19, 54:4
**list** [4] - 36:16, 36:17, 38:19, 38:24
**listen** [1] - 23:16
**listing** [1] - 11:8
**literature** [2] - 25:13, 25:14
**litigation** [6] - 23:10, 25:1, 26:22, 27:15, 27:24, 57:25
**litigations** [2] - 28:16, 44:2
**LLC** [10] - 2:6, 11:12, 11:13, 11:18, 11:19, 11:20, 11:21, 11:22, 11:23
**LLCs** [1] - 40:12
**LLP** [3] - 1:20, 2:3, 2:14
**loan** [2] - 39:24, 46:25
**loans** [8] - 22:4, 22:5, 39:23, 41:7, 41:8, 41:9, 41:11
**logic** [1] - 13:11
**London** [3] - 24:22, 42:13, 42:18, 44:18
**look** [6] - 9:24, 14:18, 28:4, 43:18, 46:3, 62:19
**looked** [1] - 43:11
**looking** [5] - 14:25, 31:16, 34:4, 44:23, 55:7
**looks** [2] - 44:1, 48:24
**lost** [2] - 23:10, 57:6
**Louis** [7] - 3:4, 4:16, 17:23, 26:9, 55:2, 61:12, 61:21
**LOUIS** [5] - 1:16, 61:22, 62:2, 62:9, 62:11
**Lovells** [5] - 1:20, 3:8, 3:10, 3:14, 3:17

---

# M

**Magistrate** [3] - 3:4, 46:1, 46:6
**MAGISTRATE** [5] - 1:16, 61:22, 62:2, 62:9, 62:11
**magistrate** [5] - 16:14, 54:23, 55:6, 57:9, 63:4
**magistrate's** [1] - 54:24
**mail** [4] - 15:19, 33:10,

33:11, 54:18
**mails** [2] - 34:11, 36:8
**major** [1] - 64:8
**majored** [1] - 25:14
**managed** [2] - 23:25
**management** [1] - 23:23
**managing** [1] - 27:7
**manner** [2] - 47:7, 58:4
**Marigold** [4] - 21:14, 44:5, 44:6, 44:22
**Market** [1] - 2:7
**Marks** [29] - 2:6, 3:24, 5:3, 5:5, 7:23, 14:25, 16:17, 18:22, 19:12, 19:15, 19:22, 20:9, 20:18, 20:24, 22:24, 29:6, 31:24, 38:6, 41:2, 46:19, 46:24, 47:17, 52:24, 54:17, 61:4, 62:6, 62:11, 63:7, 63:10
**MARKS** [108] - 2:7, 3:24, 5:3, 5:7, 5:12, 5:16, 6:9, 7:1, 7:5, 7:9, 7:12, 7:25, 10:14, 11:10, 15:2, 15:6, 15:9, 15:11, 15:13, 15:15, 16:3, 16:11, 16:13, 18:17, 18:21, 19:3, 19:5, 19:8, 19:16, 20:1, 20:4, 20:6, 20:17, 20:20, 20:25, 21:2, 21:4, 21:7, 21:12, 21:23, 21:25, 22:10, 22:12, 23:3, 23:16, 23:18, 23:20, 23:22, 24:9, 24:12, 24:15, 24:18, 25:9, 25:18, 30:4, 30:14, 38:4, 38:8, 38:11, 41:4, 41:14, 41:23, 42:16, 42:20, 43:10, 43:20, 43:24, 44:1, 45:19, 45:24, 46:10, 46:13, 48:11, 48:15, 49:4, 49:8, 49:21, 49:25, 50:9, 50:11, 50:14, 51:10, 52:25, 53:5, 53:9, 53:23, 54:1, 54:14, 55:10, 58:8, 58:15, 58:18, 58:22, 59:9, 59:17, 59:19, 61:2, 61:11, 61:20, 63:11, 63:13, 63:16, 63:19, 64:3, 64:6, 64:10, 64:16, 64:18
**Marks'** [2] - 13:25,

61:7
**Massey** [1] - 49:16
**materials** [1] - 41:19
**matter** [3] - 6:11, 53:20, 65:4
**matters** [1] - 17:9
**mean** [13] - 9:2, 19:22, 27:20, 30:16, 38:8, 47:24, 50:15, 53:17, 54:25, 56:21, 59:17, 63:3, 64:4
**means** [1] - 56:6
**meant** [1] - 20:22
**mediation** [1] - 30:7
**mediator** [1] - 22:25
**meet** [6] - 16:16, 33:22, 45:13, 48:2, 54:22, 59:2
**meet-and-confer** [4] - 33:22, 48:2, 54:22, 59:2
**meet-and-confers** [1] - 16:16
**meeting** [2] - 16:18, 36:17
**meeting-and-confering** [1] - 16:18
**membership** [1] - 40:11
**merit** [1] - 26:15
**merits** [1] - 42:21
**message** [1] - 44:12
**met** [2] - 25:20, 47:11
**met-and-conferred** [1] - 47:11
**Metals** [4] - 11:2, 11:8, 11:12, 11:18
**MIAMI** [1] - 1:2
**Miami** [9] - 1:5, 2:5, 2:12, 2:16, 2:19, 2:20, 11:22, 65:8, 65:8
**mICHAELI** [1] - 3:10
**MICHAELI** [7] - 1:21, 3:17, 33:21, 39:9, 39:12, 39:15, 39:20
**Michaeli** [7] - 3:10, 3:17, 15:17, 15:25, 16:3, 17:4, 33:18, 33:19, 37:21, 39:4, 39:7
**microphone** [1] - 5:6
**middle** [2] - 62:7, 62:8
**might** [5] - 5:3, 22:22, 45:2, 48:19, 53:14
**million** [3] - 22:17, 22:23, 29:8
**minority** [1] - 23:2
**minute** [3] - 35:24,

36:5, 55:22
**minutes** [2] - 15:24, 61:14
**misappropriated** [1] - 29:18
**misappropriations** [1] - 29:25
**misinterpretation** [1] - 26:11
**missed** [1] - 49:22
**misspoke** [1] - 57:14
**Monaco** [1] - 25:22
**Monday** [2] - 16:1, 63:4
**money** [1] - 41:8
**moon** [1] - 40:17
**Mordechai** [1] - 11:20
**morning** [5] - 3:19, 4:2, 4:4, 4:5, 43:21
**Moscow** [2] - 25:18, 63:21
**most** [2] - 8:1, 34:12
**motion** [4] - 4:23, 26:15, 31:13, 43:12, 49:11, 59:11, 59:12, 61:5
**motions** [2] - 9:9, 45:3
**mouse** [1] - 25:7
**move** [2] - 31:15, 58:15
**moved** [2] - 18:4, 30:2
**MR** [250] - 3:8, 3:10, 3:14, 3:17, 3:19, 3:22, 3:24, 4:2, 4:5, 4:9, 4:13, 4:15, 5:3, 5:7, 5:12, 5:16, 6:9, 7:1, 7:5, 7:9, 7:12, 7:25, 8:7, 8:12, 8:21, 9:1, 9:6, 9:20, 9:23, 10:1, 10:3, 10:4, 10:6, 10:9, 10:13, 10:14, 10:16, 10:21, 11:1, 11:4, 11:7, 11:10, 11:11, 11:16, 11:18, 12:3, 12:7, 12:12, 12:17, 13:9, 13:12, 14:2, 14:9, 14:12, 14:15, 14:19, 14:23, 15:2, 15:6, 15:9, 15:11, 15:13, 15:15, 16:3, 16:11, 16:13, 16:15, 17:2, 17:7, 17:14, 17:19, 17:24, 18:17, 18:21, 19:3, 19:5, 19:8, 19:16, 20:1, 20:4, 20:6, 20:17, 20:20, 20:25, 21:2, 21:4, 21:7, 21:12, 21:23, 21:25, 22:10, 22:12,

23:3, 23:16, 23:18, 23:20, 23:22, 24:9, 24:12, 24:15, 24:18, 25:9, 25:18, 27:9, 27:13, 27:18, 27:23, 28:6, 28:9, 28:25, 29:3, 29:10, 29:14, 30:4, 30:5, 30:14, 30:22, 30:24, 31:17, 32:2, 32:17, 32:20, 32:23, 33:3, 33:6, 33:10, 33:14, 33:18, 33:21, 34:16, 34:19, 34:23, 35:1, 35:6, 35:10, 35:16, 35:21, 35:25, 36:2, 36:5, 36:13, 37:1, 37:5, 37:8, 37:17, 37:20, 38:4, 38:8, 38:11, 38:12, 39:3, 39:6, 39:9, 39:12, 39:15, 39:20, 41:4, 41:14, 41:23, 42:16, 42:20, 43:10, 43:20, 43:24, 44:1, 45:18, 45:19, 45:24, 46:10, 46:13, 46:17, 46:21, 46:23, 46:24, 47:15, 47:22, 47:24, 48:11, 48:15, 49:4, 49:8, 49:17, 49:20, 49:21, 49:25, 50:7, 50:9, 50:11, 50:14, 51:10, 52:2, 52:25, 53:5, 53:9, 53:23, 54:1, 54:7, 54:9, 54:14, 55:3, 55:10, 55:11, 55:15, 55:20, 55:25, 56:12, 56:18, 57:3, 57:8, 57:15, 57:21, 58:6, 58:8, 58:9, 58:11, 58:15, 58:18, 58:19, 58:22, 59:9, 59:17, 59:19, 59:22, 60:2, 60:8, 60:13, 60:17, 61:1, 61:2, 61:6, 61:10, 61:11, 61:20, 61:25, 62:4, 62:5, 62:15, 62:21, 63:1, 63:5, 63:11, 63:13, 63:16, 63:19, 64:3, 64:6, 64:10, 64:16, 64:18, 64:21
**MULLINS** [12] - 2:4, 4:2, 46:17, 46:21, 46:23, 61:6, 61:10, 62:5, 62:10, 62:15, 62:21, 63:5
**Mullins** [8] - 4:2, 4:4, 15:1, 46:20, 61:4, 62:12, 62:13, 62:14

**mutually** [1] - 62:3

## N

**nail** [2] - 4:22, 44:19
**name** [3] - 3:12, 21:13, 27:18
**narrow** [9] - 31:2, 32:24, 32:25, 33:5, 37:20, 39:19, 41:10, 47:8, 60:8
**narrowed** [3] - 14:13, 46:24, 47:16
**narrowest** [1] - 34:3
**narrowing** [1] - 19:20
**nature** [1] - 56:9
**necessary** [2] - 8:15, 59:5
**need** [22] - 14:16, 26:22, 27:6, 31:11, 39:7, 39:10, 39:12, 39:13, 39:15, 39:18, 40:8, 40:17, 42:24, 47:19, 47:24, 48:8, 53:7, 54:10, 55:15, 58:23, 59:21, 61:18
**needed** [2] - 27:3, 33:6
**needs** [1] - 27:4
**negotiate** [1] - 58:24
**negotiations** [7] - 24:3, 24:6, 24:19, 24:21, 24:24, 24:25
**net** [1] - 22:7
**never** [7] - 5:18, 7:10, 13:18, 19:23, 34:14, 41:8
**New** [11] - 1:23, 5:2, 5:9, 5:19, 5:20, 5:21, 6:4, 8:8, 43:16, 50:4
**new** [5] - 5:22, 9:16, 18:3, 18:5, 42:10, 46:11, 55:23
**newspaper** [1] - 53:20
**next** [1] - 63:14
**nice** [2] - 62:14, 64:20
**night** [1] - 43:15
**NO** [1] - 1:3
**non** [2] - 43:3, 49:12
**non-requesting** [1] - 49:12
**North** [2] - 2:19, 65:8
**notarized** [2] - 50:24, 52:16
**note** [2] - 18:23, 46:22
**notes** [1] - 46:24
**nothing** [5] - 7:21, 14:21, 23:13, 33:10, 53:9
**notice** [1] - 23:8

**Number** [1] - 3:5
**number** [8] - 3:20, 7:9, 17:15, 17:18, 23:10, 29:15, 43:22, 51:12
**numbers** [1] - 22:22

## O

**obfuscate** [1] - 18:11
**object** [1] - 49:12
**objected** [1] - 48:12
**objecting** [1] - 48:14
**objection** [2] - 33:23, 48:24
**obtain** [2] - 40:20, 40:24
**obtained** [1] - 7:5
**obtaining** [1] - 45:23
**Obviously** [1] - 5:22
**occur** [1] - 59:16
**occurred** [2] - 5:23, 26:11
**October** [1] - 48:20
**odds** [1] - 16:22
**OF** [2] - 1:1, 1:5
**offered** [2] - 37:17, 37:20
**offering** [1] - 49:2
**office** [3] - 25:18, 57:1, 61:7
**officer** [1] - 36:16
**officers** [2] - 36:16, 56:23
**Official** [1] - 2:18
**Ohio** [9] - 7:12, 7:16, 7:22, 30:19, 30:20, 42:12, 42:20, 43:2, 43:3
**old** [1] - 62:18
**oligarchs** [1] - 39:25
**omnibus** [6] - 14:10, 32:24, 36:13, 36:21, 38:12, 38:21
**once** [5] - 9:4, 15:17, 25:23, 46:3, 57:25
**one** [50] - 4:8, 4:9, 7:8, 7:11, 7:14, 8:1, 10:23, 11:4, 11:9, 17:1, 18:9, 19:5, 19:22, 19:24, 20:8, 20:14, 22:20, 23:4, 23:10, 29:5, 30:22, 35:24, 36:7, 36:20, 36:25, 38:14, 38:16, 39:22, 41:6, 43:6, 45:16, 46:17, 48:15, 48:16, 48:18, 48:23, 49:3, 49:11, 49:14, 51:7, 51:8, 51:11, 51:15, 54:21, 56:5,

59:9, 62:18
**One** [1] - 49:25
**one-year** [2] - 48:23, 49:11
**ones** [4] - 12:6, 12:7, 15:18, 16:17
**open** [2] - 23:14, 61:16
**opening** [1] - 56:7
**opinions** [1] - 45:25
**opportunity** [1] - 32:14
**opposing** [5] - 15:19, 33:23, 34:8, 36:3, 50:15
**Optima** [6] - 4:7, 11:20, 11:21, 11:22
**optimum** [1] - 45:23
**order** [46] - 3:1, 5:25, 6:10, 6:22, 7:5, 7:13, 9:13, 9:17, 11:10, 12:21, 14:6, 14:10, 14:18, 15:18, 15:21, 23:8, 23:9, 31:16, 32:25, 33:25, 36:13, 36:21, 37:22, 38:12, 38:21, 42:25, 43:15, 43:16, 47:10, 48:4, 49:4, 49:22, 49:23, 50:2, 50:3, 50:4, 51:1, 52:4, 52:11, 54:11, 54:19, 55:9, 55:23, 56:1, 57:9, 57:20
**ordered** [1] - 15:7
**orders** [1] - 45:10
**org** [4] - 36:15, 38:24, 47:2, 47:19
**Org** [1] - 47:22
**organization** [3] - 36:16, 36:23, 37:13
**organizational** [13] - 33:8, 33:25, 34:2, 36:15, 36:24, 39:8, 39:11, 39:13, 40:15, 40:18, 41:25, 47:22
**original** [1] - 41:6
**originally** [5] - 6:10, 22:13, 22:18, 22:19, 22:20
**otherwise** [3] - 13:7, 45:10, 62:18
**outstanding** [1] - 27:15
**overall** [1] - 25:4
**overlap** [1] - 29:4
**own** [5] - 6:18, 20:22, 35:9, 36:19, 37:22
**owners** [1] - 42:7
**ownership** [3] - 22:2,

22:14, 42:3
**owns** [3] - 40:6, 40:9, 47:2

## P

**p.m** [3] - 10:10, 10:18, 10:22
**page** [5] - 43:18, 46:6, 48:6, 48:7, 50:12
**pages** [2] - 31:6, 36:9
**Pages** [1] - 1:9
**paid** [8] - 7:17, 20:18, 21:6, 22:21, 22:22, 51:19, 51:22
**Panama** [3] - 3:6, 28:13, 54:3
**paper** [3] - 34:11, 59:17, 59:18
**papered** [1] - 41:7
**papers** [1] - 18:1
**paragraph** [3] - 49:10, 50:9, 50:12
**paralegal** [1] - 35:15
**part** [7] - 6:13, 6:14, 32:3, 37:9, 39:20, 49:13, 64:14
**parte** [4] - 5:10, 7:5, 7:13, 23:6
**participated** [1] - 16:16
**particular** [2] - 33:12, 33:14
**particularly** [5] - 13:23, 14:4, 40:7, 45:7, 57:2
**parties** [18] - 12:24, 17:22, 22:24, 34:9, 35:12, 39:16, 39:17, 39:23, 39:24, 40:5, 40:22, 41:11, 41:17, 54:21, 56:1, 56:7, 56:10
**parties'** [1] - 17:25
**party** [4] - 13:13, 27:21, 49:10, 49:12
**pass** [1] - 30:15
**passed** [1] - 27:10
**past** [1] - 51:20
**PATRICIA** [1] - 1:13
**Patricia** [1] - 3:5
**Patton** [1] - 2:14
**pause** [1] - 45:17
**pay** [3] - 20:14, 20:22, 25:6
**paying** [1] - 12:13
**pending** [2] - 4:24, 6:3
**Penn** [1] - 25:14
**Pennsylvania** [2] - 2:8, 25:10

**people** [12] - 8:2, 12:1, 24:5, 26:5, 44:20, 45:6, 45:14, 54:12, 56:25, 58:1, 61:7
**per** [1] - 22:1
**percent** [1] - 60:17
**performance** [1] - 45:23
**performing** [1] - 28:11
**period** [7] - 5:24, 5:25, 6:1, 6:2, 44:19, 48:23, 49:5
**permission** [1] - 42:25
**permitted** [4] - 38:13, 44:2, 45:6, 52:18
**person** [8] - 20:8, 23:24, 27:20, 53:4, 54:4, 61:20, 61:22, 62:5
**personal** [2] - 44:15, 52:8
**personally** [2] - 25:21, 52:16
**perspective** [1] - 43:7
**pertains** [1] - 55:4
**Philadelphia** [1] - 2:8
**physical** [1] - 47:1
**pick** [1] - 25:17
**piecemeal** [1] - 26:23
**pig** [1] - 57:7
**pinpoint** [1] - 31:8
**place** [6] - 7:22, 24:7, 41:16, 54:5, 61:13, 63:17
**place-holder** [1] - 61:13
**places** [1] - 64:13
**plaintiff** [1] - 52:8
**plan** [5] - 14:22, 15:4, 15:11, 16:4, 58:25
**planning** [4] - 44:4, 45:6, 55:17, 55:18
**plant** [3] - 22:19, 23:25
**play** [1] - 38:2
**playing** [1] - 8:4
**pleading** [1] - 24:21
**pleasure** [1] - 62:16
**plus** [1] - 45:14
**pocket** [1] - 51:9
**point** [25] - 4:19, 12:20, 12:25, 13:20, 16:20, 16:22, 17:14, 22:8, 24:2, 27:21, 31:21, 32:13, 35:14, 35:17, 41:23, 41:24, 42:2, 45:5, 46:18, 52:1, 52:23, 54:14, 54:15, 55:6, 62:24
**popular** [1] - 63:17

**position** [10] - 13:20, 13:21, 18:2, 18:9, 19:19, 20:10, 23:12, 50:14, 53:24, 53:25
**possess** [3] - 34:9, 34:10, 40:23
**possession** [1] - 8:18
**possible** [5] - 14:8, 26:23, 34:3, 34:8, 60:15
**potential** [1] - 32:5
**potentially** [2] - 13:1, 13:4
**power** [13] - 25:11, 27:25, 28:3, 28:4, 48:22, 50:17, 50:21, 51:6, 52:7, 52:13, 53:3, 53:15, 59:8
**POWERS** [2] - 2:18, 65:7
**Powers** [1] - 65:6
**practical** [7] - 26:7, 38:4, 41:2, 43:7, 46:5, 46:14, 46:18
**practically** [3] - 6:2, 44:25, 52:21
**practice** [3] - 5:23, 21:14, 62:13
**prefer** [1] - 45:22
**prefiling** [5] - 12:25, 13:1, 43:13, 45:8, 45:12
**prepared** [2] - 9:16, 40:25
**presence** [1] - 16:18
**present** [1] - 14:15
**president** [2] - 42:1
**presiding** [1] - 3:5
**pressure** [1] - 48:8
**presumably** [4] - 13:7, 29:12, 29:14, 41:17
**presume** [5] - 10:10, 14:21, 31:25, 56:22, 57:17
**pretty** [2] - 47:12, 47:20
**prevent** [1] - 9:11
**primarily** [2] - 7:23, 40:12
**principals** [2] - 24:3, 29:22
**privilege** [1] - 32:6
**problem** [10] - 18:1, 18:8, 18:12, 21:2, 37:16, 46:23, 47:7, 57:15, 59:8, 63:5
**problem-solve** [1] - 18:1
**problem-solving** [2] - 18:12, 37:16

**problems** [2] - 23:5, 26:18
**Procedure** [1] - 45:11
**procedure** [2] - 21:18, 52:19
**proceed** [1] - 18:7
**proceeding** [10] - 5:13, 5:20, 28:17, 28:19, 28:20, 29:19, 29:24, 30:1, 42:19, 54:1
**proceedings** [12] - 4:23, 5:22, 6:3, 7:1, 12:24, 27:25, 30:10, 45:17, 56:7, 64:22, 65:3
**proceeds** [1] - 40:14
**process** [6] - 10:17, 21:21, 27:11, 27:14, 27:15, 34:13
**produce** [2] - 37:3, 40:19
**produced** [7] - 5:12, 6:16, 6:22, 8:18, 40:21, 50:19, 57:10
**production** [8] - 9:22, 10:18, 10:23, 12:25, 14:5, 17:8, 35:4, 55:13
**Production** [2] - 11:12, 11:19
**productive** [2] - 30:10, 30:11
**productivity** [1] - 30:24
**professor** [3] - 63:24, 64:7, 64:8
**promised** [1] - 48:10
**pronounce** [1] - 21:13
**proposal** [1] - 33:5
**propose** [4] - 16:25, 33:2, 49:1, 59:1
**proposed** [3] - 12:22, 16:4, 31:16
**proposing** [1] - 49:3
**prosecution** [1] - 27:25
**protect** [1] - 56:23
**protection** [1] - 56:4
**protective** [17] - 6:22, 11:10, 12:21, 43:15, 48:3, 49:4, 49:21, 50:2, 50:3, 51:1, 52:4, 52:11, 54:11, 54:19, 55:9, 56:1, 57:20
**protégé** [1] - 64:9
**provide** [7] - 28:6, 29:15, 41:18, 51:11, 55:17, 55:18, 58:13

**provided** [2] - 36:2, 52:10
**provisional** [1] - 64:2
**purchase** [1] - 41:19
**purpose** [3] - 28:16, 28:18, 57:20
**purposes** [5] - 52:22, 57:4
**PURSUANT** [1] - 1:6
**pursue** [7] - 6:17, 8:10, 8:14, 28:24, 28:25, 51:17, 63:24
**push** [2] - 8:25, 9:1
**Pushkin** [1] - 63:20
**put** [9] - 3:12, 10:7, 23:7, 27:2, 31:20, 37:15, 44:25, 48:8, 58:12

# Q

**questions** [1] - 36:6
**quick** [1] - 47:7
**quickly** [3] - 4:23, 58:15, 59:10
**quite** [1] - 26:19
**quote** [1] - 31:25

# R

**raised** [4] - 33:7, 33:24, 45:21, 57:11
**ran** [5] - 32:23, 36:2, 36:13, 36:18, 37:5
**rate** [2] - 35:6, 35:13
**rates** [1] - 35:5
**re** [1] - 3:6
**read** [4] - 55:9, 55:16, 55:23, 61:16
**ready** [1] - 9:4
**realize** [1] - 5:7
**really** [14] - 8:25, 12:9, 26:16, 26:17, 26:20, 27:20, 32:8, 41:5, 43:14, 47:24, 51:25, 53:7, 59:4, 59:5
**reason** [7] - 8:14, 13:19, 20:14, 26:9, 43:2, 48:19, 57:5
**reasonable** [4] - 34:21, 45:15, 47:3, 59:6
**reasons** [1] - 42:22
**recalcitrants** [1] - 47:8
**received** [6] - 7:12, 10:17, 10:21, 16:9, 34:6, 59:23
**receiving** [1] - 40:14
**recent** [2] - 45:25, 47:10

**recipient** [1] - 7:14
**recipients** [4] - 7:9, 9:10, 40:19, 44:14
**recognize** [2] - 4:21, 24:5
**recommendation** [1] - 30:8
**reconsideration** [1] - 43:12
**record** [3] - 3:7, 53:3, 53:9
**records** [5] - 5:12, 6:17, 8:15, 10:19, 19:14
**recover** [1] - 29:5, 29:24, 32:14
**Reed** [2] - 2:3, 4:3
**reelection** [1] - 63:21
**referred** [1] - 56:20
**referring** [3] - 26:9, 55:5, 57:9
**refusal** [2] - 21:10, 21:11, 21:20
**refuse** [1] - 35:17
**regard** [1] - 18:25
**regarding** [1] - 37:14
**Regent's** [2] - 6:11, 8:17
**regurgitation** [1] - 14:9
**related** [6] - 33:25, 38:19, 41:11, 41:17, 57:23
**relationship** [4] - 39:18, 39:23, 40:1, 40:3
**relationships** [2] - 39:16, 47:25
**relatives** [1] - 25:23
**relief** [1] - 7:21
**remain** [1] - 56:6
**remainder** [1] - 4:13
**remand** [1] - 6:16
**remedy** [1] - 29:1
**remember** [2] - 11:14, 61:18
**repeatedly** [1] - 34:7
**REPORTED** [1] - 2:18
**reporter** [1] - 11:14
**Reporter** [1] - 2:18
**reporting** [1] - 28:1
**represent** [5] - 3:24, 11:23, 13:13, 24:1, 36:19
**representing** [3] - 4:6, 5:4, 12:1
**represents** [1] - 4:11
**request** [12] - 33:12, 33:15, 34:21, 34:23, 37:2, 37:8, 37:9,

41:10, 42:8, 47:16, 49:10, 52:15
**REQUEST** [1] - 1:6
**requested** [1] - 31:9
**requesting** [1] - 49:12
**requests** [7] - 16:21, 17:3, 17:12, 19:13, 31:3, 33:25, 36:20
**required** [1] - 21:19
**research** [1] - 32:4
**reserved** [1] - 56:14
**resident** [1] - 44:18
**resolution** [4] - 6:3, 27:10, 30:11, 32:18
**resolve** [4] - 22:25, 45:3, 51:15, 59:8
**resolved** [3] - 4:18, 13:18, 28:22
**resolves** [1] - 27:15
**resolving** [1] - 25:4
**resources** [2] - 17:23, 18:13
**respect** [3] - 36:21, 36:22, 57:19
**respond** [2] - 15:2, 45:18
**responded** [1] - 33:20
**RESPONDENT** [1] - 2:13
**respondents** [6] - 3:20, 4:9, 10:23, 11:8, 12:23, 40:4
**RESPONDENTS** [1] - 2:9
**response** [2] - 8:5, 34:6
**responsibilities** [1] - 23:23
**responsibility** [1] - 56:23
**responsible** [3] - 51:8, 51:12, 52:3
**responsive** [3] - 6:16, 32:5, 32:6
**responsiveness** [1] - 32:6
**rest** [2] - 31:20, 49:5
**restrictive** [1] - 23:9
**revealed** [1] - 36:12
**reversed** [3] - 6:13, 6:14, 18:25
**review** [4] - 35:4, 35:13, 35:18, 55:19
**reviewing** [3] - 16:5, 32:5, 35:8
**Revolution** [1] - 64:5
**riding** [1] - 63:7
**rights** [2] - 21:9, 21:11
**rise** [1] - 3:2
**risk** [1] - 13:4

**road** [1] - 57:9
**rode** [1] - 58:17
**role** [1] - 8:4
**Room** [1] - 2:20
**room** [1] - 30:12
**rough** [1] - 22:22
**roughly** [1] - 22:17
**RPR** [2] - 2:18, 65:7
**Rule** [2] - 45:8, 45:12
**rule** [3] - 45:12, 59:10, 62:18
**ruled** [1] - 54:16
**Rules** [1] - 45:11
**rules** [1] - 18:11
**ruling** [1] - 57:4
**run** [1] - 37:22
**rung** [1] - 13:15
**RUSSELL** [1] - 2:14
**Russia** [1] - 64:14
**Russian** [8] - 25:6, 25:8, 25:13, 25:14, 63:9, 63:10, 63:24, 64:13

**S**

**sale** [1] - 41:19
**samples** [1] - 10:5
**satisfy** [2] - 45:7, 53:15
**Saturday** [1] - 60:5
**sauces** [1] - 56:14
**save** [1] - 59:7
**scenario** [1] - 13:15
**schedule** [1] - 59:3
**Scheduled** [1] - 1:8
**scheduling** [2] - 17:4, 17:6
**scope** [9] - 16:23, 19:12, 19:15, 19:20, 28:8, 30:14, 38:10, 38:13, 39:19
**se** [1] - 22:1
**search** [9] - 36:3, 36:4, 36:11, 36:14, 37:3, 37:5, 37:6, 37:21, 37:22
**searches** [6] - 32:23, 36:2, 36:14, 36:18, 37:6, 37:25
**seat** [1] - 4:14
**second** [9] - 15:24, 19:5, 24:2, 36:20, 38:16, 41:15, 41:23, 43:2, 45:16
**secret** [3] - 56:14, 56:16
**Section** [1] - 45:9
**see** [18] - 4:18, 9:3, 9:24, 10:8, 14:2,

14:4, 26:2, 26:10, 26:13, 26:17, 26:19, 36:5, 52:1, 54:13, 55:2, 57:25, 59:20, 64:12
**seek** [1] - 7:21
**seeking** [3] - 8:23, 12:25, 13:22
**seem** [3] - 41:24, 42:6
**SEITZ** [1] - 1:13
**Seitz** [1] - 3:5
**self** [1] - 33:11
**self-serving** [1] - 33:11
**sends** [1] - 44:12
**sense** [2] - 13:11, 17:25
**sensitive** [1] - 56:9
**sent** [1] - 15:18
**sentence** [8] - 48:16, 49:5, 49:8, 49:9, 49:25, 50:13, 52:24, 54:11
**sentences** [1] - 49:19
**separate** [4] - 29:4, 29:20, 30:6
**September** [2] - 60:4, 60:5
**series** [1] - 9:9
**serious** [1] - 59:4
**serve** [4] - 5:17, 7:7, 7:13, 9:7
**served** [14] - 5:9, 5:18, 6:6, 7:10, 9:5, 9:7, 9:8, 9:18, 9:19, 9:20, 9:21, 10:8, 10:9, 10:11
**service** [2] - 10:16, 10:17
**serving** [1] - 33:11
**set** [1] - 61:12
**several** [1] - 16:5
**shall** [1] - 59:1
**share** [2] - 57:22, 57:23
**shared** [2] - 56:24, 56:25
**shareholder** [2] - 23:2, 42:24
**shareholders** [6] - 21:12, 21:19, 22:10, 22:11, 23:2, 44:7
**shares** [10] - 19:25, 20:7, 20:11, 20:21, 21:5, 21:17, 23:24, 51:14, 51:18, 51:21
**shed** [1] - 35:22
**sheet** [1] - 3:12
**show** [6] - 29:17, 39:16, 40:8, 40:14,

48:23, 49:6
**showing** [1] - 40:16
**shows** [1] - 28:8
**Shulman** [16] - 22:16, 23:6, 24:4, 24:20, 25:21, 28:1, 29:22, 38:19, 42:13, 51:5, 51:7, 51:11, 51:22, 52:3, 53:4, 53:15
**Shulman's** [1] - 25:22
**side** [7] - 18:2, 25:3, 30:12, 31:2, 31:19, 33:17, 58:24
**side-tracked** [1] - 31:19
**sides** [3] - 27:1, 39:24, 50:8
**sidetracked** [1] - 57:12
**sign** [1] - 50:24
**significance** [1] - 41:5
**significant** [1] - 8:4
**signifies** [1] - 44:23
**simple** [4] - 41:10, 60:14, 60:17, 60:19
**simply** [9] - 14:6, 14:18, 16:22, 40:10, 40:19, 49:3, 54:20, 56:6, 58:1
**sit** [1] - 5:5
**situation** [4] - 13:16, 28:10, 45:2, 51:3
**skim** [1] - 4:23
**slightly** [1] - 55:4
**slow** [1] - 21:1
**slower** [1] - 11:16
**Smith** [2] - 2:3, 4:3
**Sokolov** [1] - 2:6
**solely** [1] - 28:12
**solution** [2] - 38:5, 41:3
**solutions** [1] - 26:7
**solve** [1] - 18:1
**solving** [2] - 18:12, 37:16
**sometimes** [1] - 26:6
**somewhat** [1] - 19:17
**soon** [3] - 15:4, 15:6, 31:7
**sorry** [12] - 10:14, 11:11, 27:18, 30:5, 31:17, 38:2, 43:20, 40:9, 49:16, 57:13, 62:17, 62:24
**sort** [4] - 24:15, 28:8, 31:18, 53:21
**sorts** [1] - 34:1
**sounds** [1] - 48:1
**Southern** [2] - 3:3, 32:9

**SOUTHERN** [1] - 1:1
**Soviet** [1] - 63:13
**Specialty** [4] - 4:6, 4:7, 10:17, 58:9
**SPECIALTY** [1] - 2:14
**specific** [6] - 14:6, 17:14, 33:23, 45:12, 59:23, 59:25
**specifically** [2] - 57:23, 62:18
**specifics** [1] - 17:3
**spend** [3] - 15:5, 15:8, 63:13
**spent** [7] - 14:22, 15:3, 15:15, 16:4, 16:5, 25:23, 31:23
**split** [1] - 32:7
**Squire** [1] - 2:14
**stacks** [1] - 34:11
**stage** [1] - 9:15
**stand** [2] - 8:8, 8:19
**standard** [1] - 45:13
**standards** [1] - 45:8
**standing** [2] - 12:2, 12:4
**start** [4] - 32:13, 47:17, 60:2, 60:3
**started** [1] - 25:9
**State** [1] - 30:20
**state** [1] - 3:7
**statement** [1] - 55:4
**STATES** [3] - 1:1, 1:14, 1:16
**States** [5] - 2:19, 30:17, 44:14, 54:2, 65:7
**status** [4] - 5:1, 5:20, 61:13, 61:23
**stay** [10] - 4:23, 7:21, 26:15, 31:13, 31:14, 45:3, 59:11, 59:12, 61:5
**stayed** [5] - 6:10, 7:16, 7:17
**Steel** [18] - 4:6, 4:7, 7:13, 10:17, 22:2, 22:4, 22:5, 22:6, 22:13, 22:14, 22:19, 23:25, 29:5, 29:23, 36:22, 38:17, 41:16, 58:10
**steel** [1] - 22:5
**STEEL** [1] - 2:14
**STENOGRAPHICALLY** [1] - 2:17
**step** [1] - 54:25
**still** [5] - 21:4, 34:6, 40:21, 57:6, 58:23
**stipulated** [6] - 12:21, 49:21, 50:3, 52:4,

52:11, 56:1
**stop** [1] - 46:15
**stopped** [1] - 9:15
**stored** [1] - 34:10
**straightforward** [1] - 60:15
**Street** [2] - 2:7, 11:22
**streets** [1] - 64:12
**stricken** [1] - 48:22
**strike** [1] - 52:24
**strongly** [1] - 18:18
**structure** [3] - 36:15, 36:23, 37:12
**structured** [1] - 22:14
**studied** [2] - 63:20, 64:13
**studies** [1] - 63:25
**study** [2] - 25:10, 63:11
**subject** [2] - 38:18, 52:5
**subject's** [1] - 37:12
**subjects** [1] - 38:17
**submitted** [2] - 19:13, 28:14
**subpoena** [12] - 3:20, 4:9, 6:7, 7:14, 9:10, 10:22, 11:8, 12:23, 37:9, 37:10, 40:4, 40:19
**SUBPOENA** [2] - 2:9, 2:13
**subpoenaed** [1] - 44:14
**subpoenas** [26] - 5:9, 5:17, 5:18, 6:5, 7:7, 7:10, 7:13, 8:11, 9:4, 9:6, 9:16, 9:21, 10:9, 10:12, 10:15, 10:21, 12:8, 12:14, 13:24, 14:3, 16:9, 32:14, 37:18, 59:22
**successful** [1] - 24:5
**successors** [1] - 44:10
**sue** [3] - 23:6, 44:4, 45:6
**sued** [1] - 45:16
**sufficient** [2] - 39:15, 40:8
**suggest** [5] - 15:16, 15:23, 22:16, 30:7, 45:13
**suggested** [6] - 20:20, 43:5, 46:1, 46:2, 46:25, 48:6
**suggesting** [1] - 12:22
**suggestion** [5] - 38:8, 43:6, 45:22, 46:14, 54:7

**suggests** [1] - 47:18
**suit** [2] - 30:19, 53:4
**Suite** [3] - 2:5, 2:11, 2:15
**summer** [1] - 64:20
**sun** [1] - 40:17
**Sundays** [1] - 60:4
**superfluous** [1] - 53:21
**support** [1] - 28:23
**supports** [1] - 28:21
**supposed** [1] - 12:18
**surprised** [2] - 9:3, 48:7
**suspect** [1] - 52:21
**Symeou** [9] - 3:25, 9:10, 19:23, 21:13, 23:12, 23:22, 44:4, 44:6, 44:22

## T

**table** [3] - 25:3, 27:1, 45:1
**tabs** [1] - 57:24
**tactics** [1] - 12:11
**tall** [1] - 5:7
**targets** [5] - 4:8, 6:7, 10:25, 11:1, 11:2
**tariffs** [1] - 22:5
**technicalities** [1] - 18:11
**telephone** [2] - 61:20, 62:6
**telephonic** [1] - 61:24
**term** [1] - 36:11
**terms** [8] - 12:12, 16:23, 30:24, 33:8, 36:3, 36:4, 37:21, 37:22
**terrific** [1] - 50:5
**testimony** [2] - 12:17, 38:14
**THE** [223] - 1:13, 1:16, 1:19, 2:3, 2:9, 2:13, 3:11, 3:16, 3:21, 3:23, 4:1, 4:4, 4:8, 4:11, 4:14, 4:16, 5:5, 5:11, 5:15, 6:8, 6:25, 7:4, 7:8, 7:11, 7:23, 8:5, 8:10, 8:20, 8:25, 9:2, 9:19, 9:21, 9:24, 10:7, 10:15, 10:20, 10:25, 11:2, 11:6, 11:14, 11:17, 11:25, 12:6, 12:9, 12:16, 13:3, 13:11, 14:1, 14:4, 14:11, 14:14, 14:17, 14:20, 14:25, 15:5, 15:8, 15:10,

15:12, 15:14, 16:2, 16:8, 16:12, 16:25, 17:6, 17:13, 17:17, 17:21, 17:25, 18:20, 19:2, 19:4, 19:6, 19:15, 19:21, 20:3, 20:5, 20:16, 20:18, 20:24, 21:1, 21:3, 21:5, 21:11, 21:22, 21:24, 22:9, 22:11, 22:24, 23:12, 23:17, 23:19, 23:21, 24:8, 24:10, 24:14, 24:17, 25:8, 25:17, 26:4, 27:12, 27:17, 27:20, 28:4, 28:8, 28:23, 29:2, 29:8, 29:12, 30:12, 30:23, 31:12, 31:24, 32:16, 32:18, 32:22, 33:2, 33:4, 33:9, 33:13, 33:16, 33:19, 34:14, 34:18, 34:21, 34:25, 35:5, 35:8, 35:15, 35:20, 35:24, 36:1, 36:4, 36:11, 36:24, 37:3, 37:7, 37:15, 37:19, 38:1, 38:6, 38:9, 39:2, 39:5, 39:7, 39:10, 39:14, 39:18, 41:2, 41:12, 41:22, 42:15, 42:18, 43:9, 43:19, 43:23, 43:25, 45:22, 46:8, 46:11, 46:16, 46:19, 46:22, 47:14, 47:21, 47:23, 48:1, 48:13, 49:1, 49:6, 49:16, 49:18, 49:24, 50:5, 50:8, 50:10, 50:12, 51:7, 52:1, 52:22, 53:2, 53:6, 53:21, 53:24, 54:16, 55:8, 55:22, 56:11, 56:16, 56:20, 57:6, 57:13, 57:17, 57:22, 58:7, 58:12, 58:17, 58:20, 59:1, 59:16, 59:18, 59:20, 59:25, 60:6, 60:12, 60:14, 60:20, 61:3, 61:8, 61:12, 62:12, 62:17, 62:24, 63:2, 63:6, 63:12, 63:15, 63:17, 63:23, 64:4, 64:8, 64:11, 64:17, 64:19
**themselves** [1] - 12:11
**thereafter** [2] - 10:22, 28:21
**they've** [4] - 7:9, 16:13, 20:16, 20:18

**third** [3] - 41:24, 54:25, 56:7
**Third** [1] - 1:22
**thorough** [1] - 58:4
**thousand** [3] - 36:8, 36:9, 51:20
**threat** [1] - 51:21
**three** [14] - 6:5, 8:10, 24:3, 25:5, 29:21, 37:25, 38:13, 38:18, 38:22, 41:5, 43:5, 47:1, 47:2, 49:12
**three-inch** [1] - 47:2
**threshold** [2] - 17:10, 35:1
**thwart** [1] - 19:17
**thwarting** [3] - 18:15, 18:18, 24:15
**TO** [1] - 1:6
**today** [5] - 4:16, 8:4, 48:4, 54:4, 60:9
**today's** [1] - 47:11
**together** [2] - 34:12, 62:13
**tolling** [4] - 48:16, 48:18, 48:21, 49:15
**tomorrow** [1] - 63:6
**took** [6] - 9:7, 24:7, 24:20, 33:11, 33:14, 41:16
**tooth** [1] - 4:22
**Tracey** [7] - 3:8, 3:13, 3:14, 8:6, 27:6, 46:6, 49:16
**TRACEY** [41] - 1:21, 3:8, 3:14, 8:7, 8:12, 8:21, 9:1, 9:6, 9:20, 9:23, 10:3, 10:6, 27:9, 27:13, 27:18, 27:23, 28:6, 28:9, 28:25, 29:3, 29:10, 29:14, 30:5, 30:22, 30:24, 33:18, 45:18, 47:15, 47:22, 47:24, 49:17, 49:20, 50:7, 52:2, 54:7, 55:15, 57:21, 61:25, 62:4, 63:1, 64:21
**Tracey's** [1] - 14:21
**track** [1] - 14:6
**tracked** [1] - 31:19
**traction** [1] - 17:3
**trade** [2] - 56:14, 56:16
**Trading** [1] - 11:19
**trail** [1] - 57:7
**transactions** [1] - 41:16
**transcript** [1] - 46:7
**transcription** [1] -

65:3
**transfer** [4] - 19:24, 20:21, 21:17, 63:3
**transferred** [4] - 20:7, 20:12, 21:5, 22:15
**translate** [1] - 38:22
**transparency** [1] - 51:24
**treat** [1] - 57:18
**treated** [1] - 56:21
**trees** [1] - 59:7
**trial** [1] - 62:7
**tried** [1] - 44:17
**triggered** [1] - 24:16
**trips** [1] - 26:23
**true** [1] - 19:6
**trust** [1] - 23:24
**Trust** [4] - 21:15, 44:5, 44:6, 44:22
**try** [4] - 23:7, 35:25, 38:9, 64:13
**trying** [5] - 11:7, 19:17, 31:5, 34:22, 57:15
**Tuesday** [2] - 15:23, 63:4
**turned** [1] - 25:1
**Turnoff** [5] - 16:14, 46:1, 46:6, 46:9
**twice** [2] - 25:23, 45:24
**two** [27] - 7:1, 7:22, 10:4, 10:11, 10:15, 10:22, 15:16, 15:17, 20:23, 21:12, 21:19, 23:4, 29:3, 29:4, 30:6, 36:20, 38:23, 38:25, 39:12, 40:8, 42:22, 43:18, 44:6, 49:19, 51:10, 51:12, 56:4
**two-and-a-half** [1] - 20:23
**type** [9] - 26:3, 34:9, 39:18, 42:12, 42:13, 50:17, 51:16, 56:5, 57:18
**typos** [1] - 61:9

## U

**Ukraine** [2] - 25:19, 25:24
**ultimately** [2] - 9:7, 13:21
**under** [10] - 12:21, 21:8, 21:16, 29:25, 42:24, 43:2, 45:9, 46:8, 50:18, 51:6
**underlined** [1] - 49:14

**undisputed** [1] - 53:11
**unduly** [1] - 31:3
**unfair** [1] - 45:14
**unfortunately** [3] -
22:4, 37:24, 38:21
**Union** [1] - 63:14
**UNITED** [3] - 1:1, 1:14,
1:16
**United** [4] - 30:17,
44:14, 54:2, 65:7
**united** [1] - 2:19
**University** [1] - 25:10
**unless** [3] - 45:9, 49:6,
62:18
**unnecessary** [1] -
31:8
**unreasonable** [1] -
34:23
**unrelated** [1] - 55:4
**unring** [1] - 13:15
**unsuccessful** [2] -
42:15, 42:16
**unwilling** [1] - 41:1
**unworkable** [2] -
16:22, 26:18
**up** [22] - 4:18, 4:21,
7:2, 16:20, 17:11,
18:6, 23:13, 25:17,
26:6, 27:11, 28:11,
28:12, 28:17, 32:13,
32:16, 32:17, 33:3,
45:10, 47:3, 56:19,
63:9, 63:10
**up-to-date** [1] - 7:2
**update** [2] - 61:14,
61:23
**US** [2] - 1:20, 2:14
**USC** [1] - 1:6
**useful** [1] - 25:16
**utmost** [1] - 57:19

---

## V

**vacation** [1] - 61:19
**value** [2] - 21:22, 22:7
**venture** [1] - 29:21
**Ventures** [1] - 11:21
**verbiage** [1] - 37:18
**version** [1] - 54:18
**vice** [1] - 42:1
**view** [2] - 28:14
**viewpoint** [1] - 51:25
**violation** [2] - 51:1,
51:16
**violations** [1] - 52:4
**violin** [1] - 38:2
**Virgin** [2] - 23:6, 24:7
**virtue** [2] - 13:17,
13:18

---

## W

**Wait** [1] - 46:8
**wait** [3] - 46:8, 55:22,
64:6
**waiting** [1] - 40:21
**waive** [1] - 32:14
**walk** [1] - 64:12
**wants** [4] - 29:8,
29:10, 29:16, 31:13
**Warren** [14] - 7:13,
22:2, 22:4, 22:5,
22:6, 22:13, 22:14,
22:19, 23:25, 29:5,
29:23, 36:22, 38:17,
41:16
**warring** [1] - 17:22
**washer** [1] - 42:1
**water** [1] - 46:8
**ways** [1] - 23:4
**Wednesday** [1] - 1:7
**week** [3] - 15:22,
61:13, 61:16
**welcome** [1] - 62:2
**whereas** [1] - 51:9
**whiz** [1] - 51:4
**whole** [1] - 57:20
**willing** [2] - 31:1,
47:17
**wind** [2] - 28:12, 28:17
**wind-up** [1] - 28:17
**winding** [1] - 27:11
**wisely** [1] - 18:13
**wonderful** [1] - 46:21
**words** [4] - 11:15,
24:10, 24:13, 33:4
**workable** [4] - 17:1,
37:24, 47:9, 55:15
**WORKS** [1] - 2:14
**works** [2] - 10:5, 59:3
**Works** [3] - 4:6, 10:17,
58:10
**world** [2] - 25:11,
57:22
**wound** [1] - 28:10
**wow** [3] - 63:23,
64:10, 64:18
**write** [1] - 46:22
**writing** [2] - 11:15,
58:13
**written** [1] - 16:21

---

## Y

**year** [13] - 5:21, 6:20,
6:24, 9:7, 18:5,
48:15, 48:17, 48:18,
48:23, 49:3, 49:11,
50:1, 51:22
**year-and-a-half** [2] -

6:20, 6:24
**years** [5] - 6:6, 7:22,
20:23, 25:20, 53:13
**yellow** [1] - 48:25
**yesterday** [4] - 10:10,
10:18, 37:18, 59:23
**York** [11] - 1:23, 5:2,
5:9, 5:19, 5:20, 5:21,
6:4, 8:8, 43:16, 50:4