UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 14-24887-MC-SEITZ/LOUIS

IN RE APPLICATION OF
HORNBEAM CORPORATION

REQUEST FOR DISCOVERY PURSUANT
TO 28 U.S.C. § 1782

_____/

**SUBPOENA RESPONDENTS' AND INTERVENORS' CONSOLIDATED MOTION
FOR ENTRY OF AN ORDER REQUIRING HORNBEAM CORPORATION TO
PROVIDE SUBPOENA RESPONDENTS CERTIFICATIONS OF RECIPIENTS OF
CONFIDENTIAL INFORMATION AND FOR AN ORDER SETTING A FINAL
DISCOVERY CUTOFF DATE OF DECEMBER 18, 2018**

Non-party Subpoena Respondents, CC Metals and Alloys, LLC, Felman Production,
LLC, Felman Trading, Inc., Georgian American Alloys, Inc., Mordechai Korf, Optima
Acquisitions, LLC, Optima Group, LLC, Optima Fixed Income, LLC, Optima Ventures, LLC,
Optima International of Miami, Inc., and 5251 36ST, LLC ("Subpoena Respondents"), and
Panikos Symeou and Halliwel Assets, Inc. ("Intervenors"), pursuant to the Court's Order dated
November 5, 2018 [DE 293],[1] file this consolidated motion seeking, *inter alia*: (1) an order
requiring Applicant Hornbeam Corporation ("Hornbeam") to provide to Subpoena Respondents
copies of all Certifications to the Stipulated Protective Order [*see* DE 224 ¶ 6; DE 288 ¶¶1-3 and
Ex. A] executed by persons with whom Hornbeam has shared or will be sharing Subpoena
Respondents' Confidential Information and Attorneys' Eyes Only Information ("AEO") (as
those terms are defined in the Stipulated Protective Order [DE 224]) produced by Subpoena
Respondents in this matter ("Certifications"); and (2) an order establishing December 18, 2018,
as the final cutoff for completion of all discovery in this case.

---

[1]   Subpoena Respondents' motion and Intervenors' motion are unrelated.   The Order of
November 5, 2018 [DE 297] states that "Movants may file a motion, not to exceed ten pages in
length . . . ."   Subpoena Respondents and Intervenors are therefore filing a single, ten page brief,
addressing the separate disputes.

I.   **SUBPOENA RESPONDENTS' MOTION TO REQUIRE HORNBEAM TO DISCLOSE WHO IS RECEIVING RESPONDENTS' CONFIDENTIAL INFORMATION**

   **A. Background**

   Subpoena Respondents produced 1,600 pages of Confidential Information on August 1, 2018, and another 5,239 pages of Confidential Information on September 27 through September 29, 2018, pursuant to the Court's Omnibus Order on Discovery Disputes dated September 21, 2018 [DE 267] ("September 21 Order").  In accordance with the Stipulated Protective Order [DE 224], the entire production constitutes and was designated "Confidential Information."  Some information and, later, deposition testimony, has been designated as AEO Information.

   During the depositions of Subpoena Respondents taken by Hornbeam on October 23, it became clear that counsel for Hornbeam had shared confidential information with at least one Ukrainian attorney, who appeared at the depositions to assist counsel for Hornbeam during the depositions.  Counsel for Hornbeam represented that the lawyer was a U.K.-licensed lawyer (a *British solicitor*) when, in fact, she is not.  *See* 10-23-2018 Depo. Tr. at 5.[2]  The Ukrainian lawyer identified herself as a *Ukrainian attorney* and "legal consultant," but indicated that she was not giving legal advice to any client in this matter.[3]  *See* 10-25-2018 Depo. Tr. at 6-7.

   Upon learning that counsel for Hornbeam had shared Confidential Information, the undersigned inquired regarding whether the required Certification referenced in the Stipulated Protective Order was provided to the Court, and requested a copy of same.  *See* 10-23-2018 Depo. Tr. at 153-54.  Carol Bruce, counsel for Hornbeam, stated that she and her colleagues were "officers of the court" and that they had submitted the Certification to the Court.  *Id*.[4]  To inquire further about the Certification for the Ukrainian attorney, the undersigned asked how it was submitted to the Court, given the lack of any CM/ECF or other notification from opposing

---

[2]   All excerpts of deposition transcripts cited herein are contained in **Composite Exhibit A**, which Subpoena Respondents seek to file under seal pursuant to a motion requesting same, filed concurrently with this Motion.

[3]   In Hornbeam's *ex parte* email communication with the Court, discussed *infra*, counsel for Hornbeam represented that the Certifications were signed by two client representatives and lawyers for Hornbeam and Vadim Shulman.  This *ex parte* statement was inconsistent with Ukrainian attorney's representation that she is acting only as a consultant.

[4]   Despite being an officer of this Court – on a *pro hac* basis – Ms. Bruce failed to disclose that she had also shared confidential information with at least one other person.  *See infra*.

counsel, and Ms. Bruce explained that it was submitted by email to the magistrate *ex parte*.  *Id*. at 154-55.  When the undersigned inquired as to when the *ex parte* email was sent, Ms. Bruce stated that the Certification of the Ukrainian attorney was sent in August or early September 2018.  *Id*. at 155.

On October 24, 2018, after renewed request from the undersigned and argument with Ms. Bruce on the record (10-24-2018 Depo. Tr. at 6-7), counsel for Hornbeam provided the Certification purportedly signed by the Ukrainian attorney, dated September 27, 2018, but counsel for Hornbeam did not provide the *ex parte* email communication regarding same (and omitted any mention about the second individual with whom counsel for Hornbeam had shared confidential information).[5]  The same day, the undersigned reiterated his request for the *ex parte* email communication, but Ms. Bruce refused, saying that Subpoena Respondents could get the communication from the Court.  *Id*. at 147-149.

Later that day, the Court issued two Orders: (a) Order Amending Stipulated Protective Order (ECF No. 224) [DE 286]; and (b) Order Directing Clerk to File Under Seal *Ex Parte* Email Communication Received Pursuant to Stipulated Protective Order (ECF No. 224) [DE 287]. Following the entry of the first Order [DE 286], but prior to the entry of the second Order [DE 287], while the parties were still in depositions, the undersigned once again requested a copy of Hornbeam's *ex parte* email correspondence, and Ms. Bruce finally agreed to provide the *ex parte* email correspondence to the undersigned.  *Id*. at 278-80.

When the undersigned finally had access to Hornbeam's *ex parte* email communication, it became apparent why Ms. Bruce had resisted providing it.  Although she insisted that counsel for Hornbeam should rely on her representations, the *ex parte* email demonstrates that several misrepresentations had been made.  First, contrary to the representation that the Certification of the Ukrainian Attorney had been submitted to the Court in August or early September, the email was sent on October 2, 2018.  Second, the *ex parte* email contained two Certifications, thereby revealing, for the first time, that Confidential Information had been shared with a second

---

[5] On the morning of October 24, the legal assistant to the undersigned left a voicemail requesting a copy of the *ex parte* communication, and later that day counsel for Subpoena Respondents followed up by phone to request same, at which time the Judicial Clerk stated that he was aware of the request.

individual, continually omitted from all discussions about the "Certification" (*i.e.*, singular).[6] Third, the *ex parte* email also represented to the Court that both the Ukrainian attorney and the British solicitor are representatives *and lawyers* for Hornbeam and its ultimate beneficiary, Vadim Shulman.[7]

### B. Memorandum of Law

The identity of the people with whom Hornbeam has shared and will share Subpoena Respondents' Confidential Information and, perhaps more critically, AEO Information, is essential to the continued validity and enforceability of the Stipulated Protective Order. Subpoena Respondents and the Court have taken the necessary steps to protect against the improper disclosure, dissemination, and use of Confidential Information and AEO Information in this matter.  Without knowing with whom Hornbeam has shared Confidential Information and AEO Information, Subpoena Respondents can neither assess whether a violation of the Stipulated Order has occurred (or will occur), nor seek to enforce the terms of same.  There is no valid reason for withholding the Certifications.  No proceedings have been filed anywhere, and there is no conceivable prejudice to Hornbeam in providing copies of the Certifications.  But Hornbeam, which begrudgingly produced copies of two obsolete Certifications,[8] refuses to provide any of the updated Certifications on the basis that: (1) the Stipulated Protective Order (as originally entered or as amended) does not require Hornbeam to furnish copies of the Certifications to Subpoena Respondents; and (2) according to Hornbeam, by way of analogy,

---

[6]  A cursory review of the Certifications raises several, additional, troubling issues, including but not limited to: (a) neither of the Certifications contains a standard signature, as both of them, instead, contain handwritten printed names; (b) neither of the people referenced in the respective Certifications lists an affiliation with any law firm or consulting company; and (c) the handwriting for both Certifications—purportedly filled out and signed by two different people— appears to be strikingly similar, *e.g.*, the September 27 date contained in both Certifications contains the same unique styles for the numbers and letters.

[7]  *See supra*, footnote 3.

[8]  On October 24, 2018, as more fully discussed *infra* (and as precipitated by Hornbeam's *ex parte* email communication with the Court), the Court, *sua sponte*, entered an order prohibiting email communications with chambers and amending the Stipulated Protective Order in two ways.  *See* [DE 286].  First, the Court struck the paragraph that required that Certifications be filed with the Court and produced to a requesting party upon application and a showing of good cause.  *Id.*  Second, the Court required execution of a form Certification (attached as Exhibit A to the Order) by any recipient of Confidential Information.  *Id.*

4

parties are not required under Rule 26 to disclose non-testifying experts.  *See* correspondence between Jorge Guttman and Carol Bruce, attached as **Exhibit B**.   Neither argument is valid.

The fact that the Stipulated Protective Order does not currently require Hornbeam to provide copies of the Certifications is of no moment.   Prior to its amendment, the Stipulated Protective Order required that the Certifications be kept by the Court and would be provided to the requesting party for good cause.[9]   Subpoena Respondents, thus, had both the assurance that the Court had the Certifications and the assurance that Subpoena Respondents had a way to obtain them.[10]   Accordingly, the Court's amendment of the Stipulated Protective Order cannot be read as Hornbeam proposes.   Doing so would mean that Hornbeam does not have to account to the Court or to Subpoena Respondents for the disclosure or dissemination of Subpoena Respondents' private and confidential information.   Hornbeam's proposed reading would lead to the absurd result of putting Hornbeam above the Court in terms of controlling and enforcing the Stipulated Protective Order.   Rather, it  appears that the Court simply does not want to be the recipient and custodian of *ex parte* communications.

Hornbeam's second argument, that this issue should be likened to a party's ability to withhold information about non-testifying experts, is completely inapt.   This 1782 proceeding *is **not** a litigation (i.e.*, there is no trial and there will be no judgment entered here) but, rather, a discovery mechanism.   There are no "experts," testifying or otherwise, in ***these*** proceedings.   But even assuming *arguendo* that Rule 26(b)(4)(D) applied—and it does not—Subpoena Respondents are still entitled to know the identities of any such "consulting experts."   The relevant portion of Rule 26 provides:

> Ordinarily, a party may not, by interrogatories or deposition, discover ***facts known or opinions held*** by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only . . . (ii) on showing exceptional circumstances under which it is impracticable

---

[9]   The Stipulated Protective Order entered here was identical to the one entered in the 1782 proceedings brought by Hornbeam in New York.   Presumably, the New York Court, the parties to that matter, or both, had a reason for that requirement.   But Hornbeam, here, insisted that it would stipulate to the entry of an identical order.   At the time, Subpoena Respondents could not envision that the Court would amend the Stipulated Protective Order as it did.

[10]   The analysis set forth in this Motion undoubtedly constitutes good cause to obtain copies of the Certifications.

> for the party to obtain facts or opinions on the same subject by
> other means.

Fed. R. Civ. P. 26(b)(4)(D)(ii) (emphasis added).  Thus, by its very terms, the Rule prevents discovery of "facts known" or "opinions held" by a non-testifying expert, ***not*** his or her identity. In a similar context, where a party sought the identity of non-testifying experts who had received AEO Information, this Court (Magistrate Goodman) explained:

> The Undersigned does not accept Wreal's argument that the requested provision would violate its right to keep the identities of its consultants secret.  Rule 26(b)(3)(B) does not prevent disclosure of the *identity* of a non-testifying expert-it prohibits only the disclosure of "mental impressions, conclusions, opinions, or legal theories."  *See generally Ibrahim v. Dep't of Homeland Sec.,* 669 F.3d 983, 999 (9th Cir.2012) ("the rule does not prevent disclosure of the identity of a nontestifying expert, but only 'facts known or opinions held' by such an expert") (quoting Rule 26). *See also Baki v. B.F. Diamond Constr. Co.,* 71 F.R.D. 179 (D.Md.1976) (names and addresses and other identifying information of non-testifying experts may be obtained through interrogatories without any special showing of exceptional circumstances, in the absence of specific facts peculiar to the case).
>
> Not only have several courts concluded that the identity of a non-testifying expert is not automatically off limits, but a very recent article in the ABA's Litigation News, entitled "Your Opponent Can Discover Your Experts," noted the case law permitting the discovery and provided a practice tip-be more circumspect about what one tells consultants.
>
> The Undersigned need not determine whether the rule in *Baki* or in *Ager* should govern generally. Instead, like the Court in *In re Welding Fume Products Liability Litigation,* "even if the rule announced in *Ager* adheres, exceptional circumstances exist in this case to support disclosure." 534 F.Supp.2d at 768. Because Amazon has demonstrated good cause for the requested provision, the Undersigned will be entering a protective order containing the expert identification clause-albeit one with slightly compressed deadlines for objecting.

*Wreal LLC v. Amazon.Com, Inc.*, 14-21385-CIV, 2014 WL 7273852, at *4 (S.D. Fla. Dec. 19, 2014) (Goodman, J.).

Good cause exists here for requiring Hornbeam to turn over the Certifications.  It is against a backdrop of misinformation, contradictions, omissions, and other troubling facts

surrounding the Certifications that Hornbeam takes the position that it can conceal (from Subpoena Respondents and from the Court) the identities of those who have or will be receiving Subpoena Respondents' Confidential Information and AEO Information.  Subpoena Respondents seek the Certifications to protect their confidential materials, assess risk, and prevent improper disclosure—not to obtain a litigation advantage.

Hornbeam also takes the position that it should not have to share Certifications with Subpoena Respondents because Hornbeam would not ask Subpoena Respondents for its Certifications, but this is a false equivalency.  This matter is not a litigation in which both parties have sought discovery from each other, so Subpoena Respondents are not receiving confidential information from Hornbeam.   And Subpoena Respondents do not need permission from Hornbeam to share *their own* Confidential Information with others.  Hornbeam's equivalency argument is baseless.

Here, Subpoena Respondents have a right to protect their confidential information but are handicapped from doing so if they are not made aware of the people in possession of that confidential information.  Subpoena Respondents should not be relegated to sitting-duck status, and should not be forced to rely on Hornbeam's assurances that Subpoena Respondents' Confidential and AEO Information is being treated as it is supposed to be.

### C.  Conclusion

Based on the foregoing, Subpoena Respondents respectfully request that the Court enter an order requiring Hornbeam to provide copies of all existing and prospective Certifications, and granting Subpoena Respondents any such other and further relief that the Court deems just and proper.

## II.   INTERVENORS' MOTION TO SET FINAL DISCOVERY CUTOFF

### A.  The Court Should Set a Final December 18, 2018 Discovery Cutoff

Intervenors seek a final cutoff for completion of the single remaining discovery authorized by the June 25, 2018 Omnibus Order – the Specialty Steel Works Rule 30(b)(6) deposition.   Despite the October 7, 2018 discovery cutoff, the Court permitted extending completion of the Korf Subpoena Respondents' depositions until October 26, 2018, *see* October 1, 2018 Hearing Transcript at 70, ECF 291, **Ex. 1**, and allowed the parties to agree to a slightly later date for the Specialty Steel deposition, which was set for November 8.  **Ex. 2**, Email corr. October 2-3, 2018.   Nonetheless, despite already have been provided a month extension,

Specialty Steel demanded the deposition be rescheduled to December 18 in Chicago.  Intervenors agreed, but requested that this be the final cutoff.    Hornbeam and Specialty Steel refused, asserting a blizzard or some other Act of God may prevent the deposition.   The Court should not permit the deposition beyond December 18.

*First*, this matter has been delayed long-enough.  It is nearing its four-year anniversary. Since the February 11, 2015 *Ex Parte* Order authorized discovery, Hornbeam repeatedly has delayed proceedings, belying its intention to file new BVI claims. Here, Hornbeam delayed serving subpoenas until March 2016.  Thereafter, the Court briefly stayed proceedings while the Eleventh Circuit considered an appeal in the related Alabama action, finding "Hornbeam is responsible for its own delay",   July 13, 2016 Order, ECF 54, and, then, after the Eleventh Circuit ruled in September, 2016, Hornbeam moved to continue the stay, Motion, ECF 68, and then to extend the stay again, Report and Motion, ECF 71,   while Shulman was secretly preparing to file the claims in London based on the *same* allegations and seeking the *same* damages as Hornbeam promised to file in the in BVI.   Thereafter, the Court vacated the order granting discovery to Shulman after his English claims were dismissed, April 27, 2018 Order, ECF 196, and granted in part, denied in part Intervenors' Objections to the discovery granted to Hornbeam, Omnibus Order, ECF 209.  Since then, Intervenors and Korf Subpoena Respondents promptly moved to complete proceedings, contacting Hornbeam to prepare the Rule 26 discovery plan, *see* Discovery Plan, ECF 215, and meeting and conferring on discovery disputes, which resulted in the September 21, 2018 Omnibus Order, ECF 267, which limited the duration of the Korf Subpoena Respondents' depositions and document production.

*Second*, as in all cases, there should be a discovery cutoff so this matter can be closed.[11] As this Court well knows, all cases filed in this District carry a discovery cut-off that is rigorously enforced.  This case should be treated no differently and certainly not given more latitude than a case pending in this Court. Despite the Court's expectation at the October 1, 2018 hearing that the Specialty Steel deposition would be concluded "in the early weeks of

---

[11] In addition to the Specialty Steel issue, Intervenors' motion to dismiss Hornbeam, ECF 237 and motion to dismiss Bracha and Shulman, ECF 253, have been fully briefed since August 24 and  September 19, 2018, respectively.   The September 21, 2016 POA, ECF 222-1, authorizing counsel to represent Hornbeam until September 21, 2018 has long expired.   Hornbeam cannot issue a new POA because it has been dissolved and Panama authorities will not register a POA from a dissolved corporation.  *See* Fourth Vlieg Dec., ECF 250-1, ¶10-12, 17.

November", *see* October 1, 2018 Transcript, **Ex. 1**, at 72, Specialty Steel refused to produce its Rule 30(b)(6) witness before December 18 because it was inconvenient for its counsel and witness.  Hornbeam and Specialty Steel should not be permitted to keep these proceedings open indefinitely, especially given that this is the last bit of discovery outstanding. The December 18 date should be enforced.

*Third*, there are real consequences to further delay.  The July 12, 2018 Stipulated Protective Order, ¶15, ECF 224 sets a one-year deadline for destruction of discovery if new BVI proceedings are not filed.  In the related New York §1782 proceeding, the Court sanctioned Hornbeam for serving subpoenas without notice in violation of Rule 45, and initially required the destruction of highly confidential banking records of Warren Steel, Halliwel, and related persons, such as Messrs. Kolomoisky and Bogolyubov, if Hornbeam's promised BVI proceedings were not filed within one year.  *See* New York Amended Protective Order dated February 1, 2016, ¶15, **Ex. 3**.   In July 2017, the New York court refused to enforce the deadline in response to Hornbeam's arguments that the Florida discovery had not been completed and Shulman's London proceeding was pending.  Hornbeam should not be permitted to avoid destroying discovery obtained in New York indefinitely by extending these Florida proceedings – particularly given it obviously does not need discovery to file new BVI proceedings, as evidenced by its own claims filed in Ohio state court in June 2015 and Shulman's claims filed in England in May 2017.  Once the Specialty Steel deposition is concluded, Symeou intends to seek a final deadline for destroying the highly intrusive discovery of personal bank records taken in New York.

### B.  Conclusion

Based on the foregoing, Intervenors respectfully request that the Court enter an order setting a final discovery cutoff date of December 18, 2018; and granting Intervenors any such other and further relief that the Court deems just and proper.

Respectfully submitted,

## <u>CERTIFICATE OF CONFERENCE PURSUANT TO S.D. FLA. L.R. 7.1</u>

I HEREBY CERTIFY that Jorge D. Guttman, Esq., counsel for Subpoena Respondents, met and conferred with Carol E. Bruce, Esq., counsel for Hornbeam, regarding the substance and relief sought by Subpoena Respondents this Motion in a good faith attempt at resolving the issues raised herein, and Ms. Bruce represented that Hornbeam does not agree to relief requested herein.  The undersigned also conferred with Bruce Marks, Esq., counsel for Intervenors, and Andrew R. Kruppa, Esq., counsel for Specialty Steel Works Incorporated f/k/a Optima Specialty Steel, Inc., regarding the substance and relief sought by this motion in a good-faith attempt at resolving the issues raised herein, and both counsel for Intervenors and counsel for Specialty Steel Works Incorporated represented that they do not oppose the relief requested herein.

**GUNSTER**
600 Brickell Avenue, Suite 3500
Miami, Florida 33131
Telephone: (305) 376-6000
Facsimile:  (305) 376-6010

By:   */s/ Jorge D. Guttman*
William K. Hill, Esq.
Florida Bar No. 747180
whill@gunster.com
Jorge D. Guttman, Esq.
Florida Bar No. 015319
jguttman@gunster.com
Joshua A. Levine, Esq.
Florida Bar No. 106072
jlevine@gunster.com

*Attorneys for Subpoena Respondents*
*Counsel for CC Metals and Alloys, LLC;*
*Felman Production, LLC; Felman Trading, Inc.;*
*Georgian American Alloys, Inc.;Mordechai Korf;*
*Optima Acquisitions, LLC;Optima Group, LLC;*
*Optima Fixed Income, LLC; Optima Ventures, LLC;*
*Optima International of Miami, Inc.; and*
*5251 36ST, LLC*

## <u>CERTIFICATE OF CONFERENCE PURSUANT TO S.D. FLA. L.R. 7.1</u>

I HEREBY CERTIFY that Bruce Marks, Esq., counsel for Intervenors, met and conferred with Carol E. Bruce, Esq., counsel for Hornbeam, regarding the substance and relief sought by Intervenors in this Motion in a good faith attempt at resolving the issues raised herein, but she represented that Hornbeam does not agree to the relief sought herein.  The undersigned also met and conferred with Jorge D. Guttman, Esq., counsel for Subpoena Respondents, and Andrew R. Kruppa, Esq., counsel for Specialty Steel Works Incorporated f/k/a Optima Specialty Steel, Inc., regarding the substance and relief sought by this motion in a good-faith attempt at resolving the issues raised herein.  Counsel for Subpoena Respondents represented that they do not object to the relief sought herein.  Counsel for Specialty Steel Works Incorporated represented that it does not agree to the relief sought herein.

MARKS & SOKOLOV, LLC
1835 Market Street, 17th Floor
Philadelphia, PA 19103
Tel: (215) 569-8901

By: */s/ Bruce Marks*
Bruce Marks
Email: marks@mslegal.com
Thomas Sullivan
Email: tsullivan@mslegal.com

*Counsel for Intervenors, Panikos Symeou and Halliwel Assets Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 30, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _/s/ *Jorge D. Guttman*_
                Jorge D. Guttman

**<u>SERVICE LIST</u>**

Edward Maurice Mullins
emullins@reedsmith.com
Sujey Scarlett Herrera
sherrera@reedsmith.com
REED SMITH LLP
*Counsel for Intervenors, Halliwel Assets,
Inc., Panikos Symeou, AND Igor
Kolomoisky*
1001 Brickell Bay Drive
9th Floor
Miami, FL 33131-2847
Tel:  (786) 747-0200
Fax:  (786) 747-0299

Thomas Sullivan *[admitted pro hac vice]*
Tsullivan@mslegal.com
Bruce Marks *[admitted pro hac vice]*
marks@mslegal.com
MARKS & SOKOLOV, LLC
*Counsel for Intervenors, Igor Kolomoisky,
Halliwel Assts, Inc., Panikos Symeou,
Warren Steel Holdings, LLC, and Gennadiy
Bogolyubov*
1835 Market Street, 17th Floor
Philadelphia, PA  19103
Tel:  (215) 569-8901
Fax:  (215) 569-8912

Arnoldo B. Lacayo
alacayo@sequorlaw.com
SEQUOR LAW, P.A.
*Counsel for Intervenors, Halliwel Assets,
Inc., and Panikos Symeou*
1001 Brickell Bay Drive, 9th Floor
Miami, FL 33131-2847
Tel:  (305) 372-8282
Fax:  (305) 372-8202

Andrew R. Kruppa, Esq.
Florida Bar No. 63958
Andrew.kruppa@squirepb.com
Squire Patton Boggs (US) LLP
*Counsel for Respondent, Specialty Steel
Works Incorporated
f/k/a Optima Specialty Steel, Inc.*
200 South Biscayne Blvd., Suite 4700
Miami, FL  33131
Tel:  (305) 577-7712

Carol Elder Bruce *[admitted pro hac vice]*
cbruce@mmlawus.com
MURPHY & MCGONIGLE
Robert P. Howard, Jr. *[admitted pro hac
vice]*
rhoward@mmlawus.com
Alexandra Marinzel *[admitted pro hac vice]*
alexandra.marinzel@mmlawus.com
*Counsel for Applicant Hornbeam Corp.
and Intervenors Bracha Foundation and
Vadim Shulman*
1001 G Street, N.W.
Seventh Floor
Washington, DC 20001
Telephone: (202) 220-1924

James K. Goldfarb *[admitted pro hac vice]*
jgoldfarb@mmlawus.com
MURPHY & MCGONIGLE
1185 Avenue of the Americas, 21st Fl
New York, NY 10036
Telephone: (212) 880-3961

Jane Wollner Moscowitz
jmoscowitz@moscowitz.com
MOSCOWITZ & MOSCOWITZ, P.A.
201 Alhambra Circle
Suite 1200
Coral Gables, FL 33134
Telephone: 305-379-6700

MIA_ACTIVE 4812789.4